COPY

Julia Azrael (Bar No. 109049)
John S. Curtis (Bar No. 50350)
**LAW OFFICES OF JULIA AZRAEL**
5200 Lankershim Boulevard, Suite 850
North Hollywood, California 91601
Telephone:  (818) 766-5177
Facsimile:  (818) 766-5047

Attorneys for Defendant
PROGRESSIVE CHOICE INSURANCE COMPANY

```
            FILED
  CLERK, U.S. DISTRICT COURT

        JAN 2 0 2011
         10:44
CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAGOP BEKHLOYAN, | CASE NO. **CV 11 00590**-DMG (PLAx) |
| Plaintiff, | Case Assigned to the Honorable _____ – Ctrm. __ |
| vs. | [Complaint Filed: July 22, 2010] |
| PROGRESSIVE CHOICE INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE DIRECT HOLDING, INC., DOES 1 through 100; | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)** |
| Defendants. | Discovery Cutoff:  None<br>Motion Cutoff:  None<br>Trial Date:  None |

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA:

    1.    On July 22, 2010, Plaintiff, HAGOP BEKHLOYAN, filed a Complaint in the above-entitled civil action, bearing case number BC442039 in the Superior Court of the State of California for the County of Los Angeles.  Defendant did not learn of this Complaint until Plaintiff served the Complaint by way of Notice and Acknowledgment of Receipt on or about July 29, 2010.

2.    At the time the State Court action was filed and up to the present time, Defendant, PROGRESSIVE CHOICE INSURANCE COMPANY, has been and is an Ohio Corporation with its principal place of business in Mayfair, Ohio.

3.    Plaintiff HAGOP BEKHLOYAN was, on July 22, 2010, a resident of Los Angeles County in the State of California and is today, a California citizen.

4.    The instant action alleges causes of action for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duties, Fraud, Negligent Misrepresentation and Concealment, Negligence, Intentional Infliction of Emotional Distress, Violation of Business & Professions Code § 17200, and Violation of Consumer Legal Remedies Act [Civil Code § 1750, et seq.  Plaintiff did not allege damages in the complaint sufficient to ascertain a measure of damages.  Accordingly, Defendant propounded a request to admit that:

> The total monetary damages you seek on all causes of action does not exceed $75,000, according to the prayer of your complaint at page 23:4-15, which states "WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, according to proof as follows: 1. For general damages; 2. For special damages; 3. Interest on compensatory damages at the legal rate from the date of injury or pursuant to Code of Civil Procedure § 3291;  4.  For other compensatory damages, emotional distress and other economic and non-economic losses; 5.  Punitive and exemplary damages; 6. Attorneys fees; 7.  Costs and expenses of suit herein, and 8.  For any other just and proper relief as allowed by statute and prevailing law."

1  On September 16, 2010, Plaintiff served a response objecting to the Request
2 for Admission.  On December 17, 2010, at a Motion to Compel Further Response, the
3 Court found that the text of the response was frivolous and not substantial and
4 awarded Defendant $954.00 in sanctions.

6  On December 21, 2010, Plaintiff provided a Supplemental Response to
7 Defendants Request for Admission as follows:

9  Deny.

11  Accordingly, as of December 21, 2010, Progressive knew that plaintiff claimed
12 damages in excess of $75,000.00.

14  5.  28 U.S.C. §1446(b) states:

16   "The notice of removal of a civil action or proceeding shall
17   be filed within thirty days after the receipt by the defendant
18   through service or otherwise, of a copy of the initial
19   pleading setting forth the claim for relief upon which such
20   action or proceeding is based, or within thirty days after the
21   service of summons upon the defendant if such initial
22   pleading has then been filed in court and is not required to
23   be served on the defendant, whichever period is shorter.  If
24   the case stated by the initial pleading is not removable, a
25   petition for removal may be filed within thirty days after
26   receipt by the defendant, through service or otherwise, of a
27   copy of an amended pleading, motion, order or other paper

1    from which it may first be ascertained that the case is one

2    which is or has become removable."

3

4    6.    This removal is timely as it is filed within 30 days of service of the

5    "other paper", to wit the Supplemental Response to Request for Admission No. One,

6    the denial, and the bases for the denial.  Defendant has been aware of the basis of the

7    jurisdiction amount based on this round of discovery for less than 30 days as of the

8    date of this removal.

9

10    7.    The grounds for removal are that complete diversity exists between

11    Plaintiff, on the one hand, and Defendant, on the other hand, as shown in paragraphs

12    2 and 3, respectively, and the controversy exceeds the sum of $75,000.00, exclusive

13    of costs, as shown in paragraph 4.  Thus, this Court has subject matter jurisdiction of

14    the instant action pursuant to 28 U.S.C. Section 1332(a).

15

16    8.    Defendant, PROGRESSIVE  CHOICE  INSURANCE  COMPANY,

17    therefore files this Notice of Removal of Civil Action to the United States District

18    Court.  Copies of all process and pleadings are attached to this Notice as Exhibit A.

19    A copy of the Request for Admission is attached as Exhibit B.   A copy of the

20    Response to the Request for Admission is attached as Exhibit C.   A copy of the

21    Supplemental Response to Request for Admission is attached as Exhibit D.

22

23    Dated:  January 19, 2011              LAW OFFICES OF JULIA AZRAEL

24

25    By:

26    JULIA AZRAEL
      Attorneys for Defendant
27    PROGRESSIVE CHOICE
      INSURANCE COMPANY

28

Progressive's Notice of Removal of Action Under 28 U.S.C. § 1441(b)
(Diversity)

**EXHIBIT 'A'**

# GARY RAND &
## SUZANNE E. RAND-LEWIS
*PROFESSIONAL LAW CORPORATIONS*   RECEIVED

AUG 03 2010

LAW DEPARTMENT

(818) 779-1720
Fax (818) 779-1730

Tri Center Plaza
**5990 SEPULVEDA BOULEVARD**
**SUITE 330**
**SHERMAN OAKS, CALIFORNIA 91411**

July 29, 2010

Progressive Choice Insurance Company
6300 Wilson Mills Road
Mayfield Village, OH 44143

Re:     Bekhloyan v. Progressive Choice Insurance Co., et al.

Ladies and Gentlemen:

You are being served with the enclosed Summons and Complaint by Notice and Acknowledgment of Receipt pursuant to <u>Code of Civil Procedure</u> §415.30.  Please date, type or print your name, and sign where indicated, including your title, and return in the enclosed self addressed envelope within 20 days of the date of this letter.

Be advised that: <u>Code of Civil Procedure</u> §415.30(d) states, in pertinent part:

> If the person to whom a copy of the summon and of the complaint are mailed pursuant to this sections **fails to complete and return the acknowledgment form...within 20 days** from the date of such mailing, the party to whom the summons was mailed <u>**shall be liable for reasonable expenses thereafter incurred**</u> in serving or attempting to serve the party by another method...the court in which the action is pending, upon motion, with or **without notice, <u>shall award the party such expenses</u>** whether or not he is otherwise entitled to recover his costs in the action.

If you fail to return the acknowledgment form, we will apply for recovery of all the expenses incurred, including attorney, process server, attorney service and legal assistant's time, if you do not accept service.  This could result in substantial cost to you.  We have no obligation to provide notice of our application for these expenses.  The Court must award these expenses as the Code states that the recovery is mandatory.

If you are insured, contact us immediately with your policy and claim information, and we may agree to extend your time in which to respond.  You may also contact us with questions regarding return of the Notice of Acknowledgment.

Very truly yours,
GARY RAND & SUZANNE E. RAND-LEWIS
PROFESSIONAL LAW CORPORATIONS

Gary Rand

GR:am

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| Gary Rand, Esq.   38184 <br> Gary Rand & Suzanne E. Rand-Lewis, PLC <br> 5990 Sepulveda Blvd., Suite 330 <br> Sherman Oaks, California 91411 <br><br> TELEPHONE NO.: (818) 779-1720       FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* Plaintiff Hagop Bekhloyan | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles |
|---|
| STREET ADDRESS: 111 North Hill Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles 90012 |
| BRANCH NAME: Central |

| PLAINTIFF/PETITIONER: Hagop Bekhloyan |
|---|
| DEFENDANT/RESPONDENT: Progressive Choice Insurance Company, et al. |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: <br> BC442039 |
|---|---|

TO *(insert name of party being served):* Progressive Choice Insurance Company, et al.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 29, 2010

Gary Rand
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐   A copy of the summons and of the complaint.
2. ☐   Other *(specify):*

*(To be completed by recipient):* ✗

Date this form is signed:

✗ _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ ✗ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, <br> §§ 415.30, 417.10 <br> www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc. <br> www.USCourtForms.com

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>Progressive Choice Insurance Company, Progressive Casualty Insurance Company, Progressive Direct Holding, Inc., Does 1 through 100;<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>Hagop Bekhloyan | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>JUL 22 2010<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____ Deputy<br>DOROTHY SWAIN |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Stanley Mosk Courthouse - Central<br><br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del Caso):*<br><br>BC 442030 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Gary Rand, Esq. for Gary Rand & Suzanne E. Rand-Lewis, Professional Law Corporations
5990 Sepulveda Blvd., Suite 330, Sherman Oaks, CA 91411   Tel. No. 818-779-172

| | | |
|---|---|---|
| DATE: July 22, 2010<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | _____ , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1   Gary Rand & Suzanne E. Rand-Lewis
    Professional Law Corporations
2   Gary Rand, Esq., State Bar No. 38184
    5990 Sepulveda Boulevard, Suite 330
3   Sherman Oaks, California 91411-2523
    (818) 779-1720
4

5   Attorney for Plaintiff, Hagop Bekhloyan

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  HAGOP BEKHLOYAN                        CASE NO.  BC442039

12           Plaintiff,                    COMPLAINT FOR DAMAGES

13  vs.                                    1.   Breach of Contract;
                                           2.   Breach of the Implied Covenant of
14  PROGRESSIVE CHOICE INSURANCE                Good Faith and Fair Dealing;
    COMPANY, PROGRESSIVE CASUALTY         3.   Breach of Fiduciary Duties;
15  INSURANCE COMPANY,                     4.   Fraud, Negligent Misrepresentation
    PROGRESSIVE DIRECT HOLDING,                 and Concealment;
16  INC., DOES 1 through 100;              5.   Negligence;
                                           6.   Intentional Infliction of Emotional
17           Defendants.                        Distress;
                                           7.   Violation of Business & Professions
18                                              Code §17200;
                                           8.   Violation of Consumer Legal
19                                              Remedies Act [Civil Code §1750, et
                                                seq];
20

21          COMES NOW Plaintiff HAGOP BEKHLOYAN, and submits his Complaint for

22  compensatory and punitive damages as follows:

23                         PRELIMINARY ALLEGATIONS

24          1. Plaintiff HAGOPP BEKHLOYAN [hereinafter referred to as "Plaintiff"], is and at all

25  times herein mentioned was a resident of the State of California.

26          2. Defendant, PROGRESSIVE CHOICE INSURANCE COMPANY [hereinafter

27  "PROGRESSIVE CHOICE"], is engaged in the business of insurance, licensed to do and

28  primarily doing business in the State of California.  Defendant, PROGRESSIVE CHOICE, is a

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 22 2010

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
DOROTHY SWAIN

1

1  business entity, exact form unknown. Defendant PROGRESSIVE CHOICE was Plaintiff's

2  insurer as Underwriter of the policy. Defendant, PROGRESSIVE CHOICE, is a company

3  owned and operated by Defendants, PROGRESSIVE DIRECT HOLDING, INC., and

4  PROGRESSIVE CASUALTY INSURANCE COMPANY. These entities shall be collectively

5  referred to hereinafter as "PROGRESSIVE." Plaintiff is informed and believes and thereon

6  alleges that the policy issued to him was a PROGRESSIVE "personal auto policy."

7       3.  The true names and capacities of Defendants, DOES 1 through 100, are unknown to

8  Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and

9  believes, and thereon alleges, that each of the Defendants designated herein as a DOE is legally

10  responsible in some manner for the events and happenings herein referred to and legally caused

11  injuries and damages to Plaintiff as herein alleged.

12       4.  At all times herein mentioned, Defendants, and each of them, were the agents,

13  principals, servants and employees of each of the remaining Defendants, and were acting with

14  the purpose and scope of said agency, service and employment. Each Defendant has authorized,

15  consented to, ratified, permitted, encouraged and approved the acts of their/its agent.

16                                   **FACTUAL ALLEGATIONS**

17       5.  On or about June 21, 2005, Plaintiff purchased a 2003 Ford Expedition, VIN#

18  1FMRU15W83LA22437 (hereinafter referred to as "the vehicle"), valued at $19,750.00, from

19  Star Ford located in Glendale, California.

20       6.  On or about July 5, 2005, Plaintiff obtained insurance on the vehicle through

21  Defendant PROGRESSIVE, policy number 62074976-0, effective from July 5, 2005 through

22  January 5, 2006.  Thereafter and through November 2009, Plaintiff maintained said insurance on

23  the vehicle through Defendant PROGRESSIVE. Plaintiff renewed his insurance coverage with

24  Defendant PROGRESSIVE and paid the premiums as they became due. Plaintiff's policy

25  included 100/300 liability, $50,000 property, and Comprehensive/Collision coverage of actual

26  cash value of the vehicle with a $1000 deductible. Plaintiff is informed and believes, and thereon

27  alleges, that the policy issued to Plaintiff was Defendant PROGRESSIVE'S "personal auto

28  policy." through Defendant PROGRESSIVE. At all times mentioned herein, Plaintiff's auto

1  insurance policy with Defendant PROGRESSIVE, covering the 2003 Ford Expedition stated

2  before, was in full force and effect.

3       7. On or about January 16, 2009, Plaintiff drove the vehicle to work. Plaintiff's place of

4  business is located at 4219 Willimet Street, Los Angeles, California 90049. Plaintiff's business

5  has a small lot which he shares with another business owner. Plaintiff, therefore, regularly parks

6  his personal vehicles on the side streets near his place of business. On this day, Plaintiff parked

7  the vehicle on Willimet Street. He ensured the windows were up and locked the vehicle. At the

8  end of the day, Plaintiff used another personal vehicle he had parked around his place of business

9  to drive home. It is was that Plaintiff leave a car or two near his place of business. During

10  business hours, Plaintiff used his business vehicle to get around. After work, he either took his

11  business vehicle home, or he used a personal vehicle that was parked near his business. Plaintiff

12  HAGOP owns and operates an auto towing service and has numerous vehicles available for his

13  use.

14       8. On or about January 20, 2009, ARAKSI BEKHLOYAN (hereinafter referred to as

15  "ARAKSI"), Plaintiff's wife, received a call from a Detective Cassais. The Detective questioned

16  ARAKSI as to the vehicle and whether Plaintiff allowed someone to drive the car across the

17  U.S.-Mexico border. ARAKSI was surprised and immediately called Plaintiff. Plaintiff was

18  unaware that the vehicle was not where he parked it days before. He went to the site where he

19  parked the vehicle on January 16, 2009 and found that the vehicle was missing. ARAKSI

20  immediately contacted Detective Cassais and explained to him that Plaintiff did not find the

21  vehicle where he parked it last. Detective Cassais explained to ARAKSI that a man was

22  apprehended on the Mexican side of the border with the vehicle. The Detective explained that

23  the suspect had produced documents showing that the vehicle was his and registered to him.

24  Upon further investigation by the authorities, Plaintiff's registration documents were found in the

25  vehicle and the suspect was arrested. Detective Cassais advised ARAKSI to call the insurance

26  company to report the loss and to contact the police department and file a police report.

27  / / /

28  / / /

9.  At approximately 4:30 p.m. on the above mentioned date, ARAKSI called Defendant PROGRESSIVE to file a claim concerning the theft of the vehicle.  Defendant PROGRESSIVE assigned Plaintiff's loss claim number 091802432.  At approximately 5:30 p.m. ARAKSI went to the California State Highway Patrol Office and filed a stolen vehicle report.  At approximately 6:00 p.m., Defendant PROGRESSIVE called Plaintiff and took his recorded statement.  Plaintiff complied with the Defendant's adjuster's request and answered her questions.  ARAKSI also provided the Defendant's adjuster with the police report number and the information that Detective Cassia gave her about the suspect and the vehicle.

10.  On or about January 21, 2009, ARAKSI called Defendant PROGRESSIVE to find out what it was doing to retrieve the vehicle.  ARAKSI previously provided the Defendant's adjuster with Detective Cassia's contact information.  Thereafter, ARAKSI contacted Detective Cassia and obtained information concerning where the vehicle was being kept.  ARAKSI called Defendant PROGRESSIVE and provided them with the information as to where the vehicle was located.  Defendant PROGRESSIVE was doing nothing to obtain information from the police concerning the vehicle nor retrieving it as was being requested. .

11.  On or about January 22, 2009, ARAKSI called Defendant PROGRESSIVE to discuss the claim.  However, there was no response, and she was only able to leave a voice message for the adjuster.  Her call was never returned so she called again and again her call was not returned.

12.  Finally, on or about January 27, 2009, ARAKSI received a call from a new adjuster, Shawn, indicating that he was the new adjuster on the file and needed more information concerning the claim.  She asked whether the vehicle had been retrieved, where it was located, what information the police had given Defendant PROGRESSIVE, only to find out that Defendant PROGRESSIVE had not retrieved the vehicle and had no information to give, nor were they willing to give her information concerning the conditions of the vehicle and what Defendant PROGRESSIVE planned to do.  Defendant's adjuster questioned ARAKSI as to the mileage of the vehicle and other aspects of the claim for which she did not have information.  ARAKSI called Plaintiff and asked him for the information Defendant's adjuster requested.

4

1    ARAKSI then called the adjuster back, however, she was unable to get a hold of him and left a

2    voice message.

3         13.  On or about January 29, 2009, ARAKSI called Defendant PROGRESSIVE as she

4    had not received any information concerning the status of her claim or what was being done to

5    recover the vehicle.  She received no response.

6         14.  On or about January 30, 2009, ARAKSI called Defendant PROGRESSIVE to speak

7    with a manager or supervisor regarding her claim.  ARAKSI was unable to get a live person on

8    the phone, however, she left a message for Chris Jarvis, Defendant PROGRESSIVE'S claims

9    supervisor, asking what was being done to retrieve the vehicle.  ARAKSI was upset and wanted

10   to talk to a supervisor or manager as nothing was being done to retrieve the vehicle, etc.

11        15.  From January 30, 2009 through February 16, 2009, ARAKSI and Plaintiff did not

12   receive a call from Defendant PROGRESSIVE concerning the claim or inquiries as to the status

13   of the vehicle.

14        16.  On or about February 17, 2009, Defendant PROGRESSIVE'S adjuster, Shawn,

15   called Plaintiff and requested a second recorded interview.  Defendant PROGRESSIVE'S

16   adjuster went over the same questions the first adjuster covered in Plaintiff's first recorded

17   interview when the claim was opened.  Plaintiff asked how many more recorded interviews

18   would be taken, to which Defendant PROGRESSIVE'S adjuster answered, "as many as there

19   needs to be."  At this point, Plaintiff was frustrated with Defendant PROGRESSIVE'S efforts to

20   assist him with the claim.  Plaintiff felt as if he was being interrogated by Defendant

21   PROGRESSIVE while Defendant PROGRESSIVE did not provide him with information

22   concerning PROGRESSIVE'S steps to retrieve the vehicle.

23        17.  On or about February 27, 2009, Defendant PROGRESSIVE'S adjuster, Shawn, told

24   ARAKSI that he would send them documents concerning the loss that required the Plaintiff's

25   attention.  Plaintiff did not receive the documents.

26        18.  On or about March 3, 2009, ARAKSI called Defendant PROGRESSIVE, however,

27   she received no response.

28   ///

19. On or about March 5, 2009, ARAKSI called Defendant PROGRESSIVE and was told that Shawn was no longer handling the claim and that the claim was now being handled by Chris Jarvis.  Up to this point, there had been three different adjusters assigned to Plaintiffs' claim, and Plaintiff had given two recorded statements concerning the loss.

20. On or about March 17, 2009, ARAKSI logged on to Defendant PROGRESSIVE'S website and made an on-line payment for her insurance coverage.  She used the on-line claims assistance to send Defendant PROGRESSIVE a message concerning the documents the prior adjuster, Shawn, promised to send Plaintiff.

21. On or about March 18, 2009, Defendant PROGRESSIVE'S adjuster, Regina Degidio, called and spoke with ARAKSI.  Defendant PROGRESSIVE'S adjuster told ARAKSI that the forms had been sent several days before and that if ARAKSI did not receive them to call and provide Defendant PROGRESSIVE with a new address.  ARAKSI questioned Defendant PROGRESSIVE's adjuster as to when the vehicle would be retrieved.  Defendant's adjuster answered that, "it can take as long as it needs to, from a month to a year, as the file is under special investigation."  Shortly thereafter, ARAKSI received a letter from Defendant PROGRESSIVE, dated March 16, 2009, concerning the documents she requested.  The letter also indicated that more information and more time would be required to determine the outcome of the claim.  By this point, it had been two months since Plaintiff's vehicle was stolen. Defendant PROGRESSIVE had taken two recorded statements of Plaintiff and had four different adjusters on the claim.  At this point, the vehicle still had not been retrieved nor had Plaintiff been advised of the vehicle's condition, or been given any other information from Defendant PROGRESSIVE.  In fact, Defendant PROGRESSIVE refused to give any further information, stating the claim was under investigation.

22. On or about March 24, 2009, ARAKSI received a called from the California Highway Patrol advising her that the vehicle was being transferred to a tow yard in San Diego. ARAKSI immediately called Defendant PROGRESSIVE and provided them with the tow yard's information.  ARAKSI further advised Defendant PROGRESSIVE that there were charges that would be incurred.

6

23. On or about March 25, 2009, ARAKSI emailed Defendant PROGRESSIVE'S adjuster, Regina Degidio, requesting information concerning the retrieval of the vehicle, who would pay the tow yards storage fee, and why an adjuster could not be sent the next day to view the vehicle. Defendant PROGRESSIVE'S adjuster responded that an adjuster still needed to be assigned and that the inspection would not occur until the adjuster was assigned. Defendant's ADJUSTER also indicated that responsibility for the storage fees could not be determined until after the inspection of the vehicle.

24. On or about April 6, 2009, the vehicle was inspected by Defendant PROGRESSIVE'S adjuster in San Diego.

25. On or about April 9, 2009, Defendant PROGRESSIVE'S adjuster, Regina Degidio, called Plaintiff and took a third recorded statement from him, asking the same questions the prior two adjusters asked him in their recorded statements. Defendant's adjuster advised Plaintiff that the vehicle needed to be picked up and removed from the storage yard by no later than close of business the next day. Plaintiff was shocked. Defendant PROGRESSIVE refused to pay any accumulated towing or storage charges. The vehicle was in San Diego and Plaintiff was in Los Angeles. Plaintiff was advised that the vehicle would not be released without payment of approximately $1,000 and that if payment was not made there could be a lien sale. Defendant PROGRESSIVE refused to pay any of the charges, refused to have the vehicle towed to Plaintiff's business location or anywhere else, and refused to do anything to stop the continuing charges. Later that day, Defendant's adjuster sent ARAKSI an email requesting that ARAKSI take pictures of the two sets of keys she had and email them to her.

26. On or about April 10, 2009, ARAKSI took pictures of the keys and emailed them to Defendant's adjuster. ARAKSI complained in the email as to the delay and lack of proper handling of the claim.

27. On or about April 14, 2009, ARAKSI emailed Defendant's adjuster and requested they take responsibility for the claim. In response, Defendant PROGRESSIVE sent ARAKSI a reservation of rights letter.

///

7

28. On or about April 16, 2009, Plaintiff had the vehicle towed from San Diego to his home in Burbank. Plaintiff paid $500.00 for the tow service.

29. During April/May 2009, Defendant PROGRESSIVE sent Plaintiff a proof of loss to be completed, plus releases for any and all financial documents, statements, bank records, etc. Plaintiff called Defendant PROGRESSIVE and objected to the broadness and the scope of said financial records release as same called for the release of all bank statements, records, payments to any and all individuals, all financial documents that would include personal, private, and protected records and documents. Defendant PROGRESSIVE then advised Plaintiff that everything had to be signed and returned or the claim would not proceed. Plaintiff requested that the release be modified as it was a total invasion of privacy. Plaintiff continued to request said modification, which was refused.

30. On or about May 19, 2009, Defendant PROGRESSIVE denied Plaintiff's claim. Plaintiff had no choice but to incur attorney's fees and seek legal counsel as he required assistance getting his claim paid. Thereafter, Plaintiff sought legal representation. Plaintiff's Counsel advised Defendant PROGRESSIVE that the authorization for release of financial records was too broad and was in fact a violation of Plaintiff's right of privacy. The proof of loss was returned to Defendant PROGRESSIVE, who continued to refuse to modify the financial release or pay anything on the claim. It called for disclosure of information that was privileged and Plaintiff's Counsel requested modification. Defendant PROGRESSIVE refused and continues to refuse to modify the release, which would protect Plaintiff's privacy rights. Plaintiff has not only paid any balance owing to the finance company regarding the vehicle, but has also repaired the vehicle. Defendant PROGRESSIVE has refused any payment in regards to the repairs, towing, storage, loss of use because of their delay and continuing delay. The total sum of said conduct is unreasonable and in bad faith. Defendant PROGRESSIVE had no reason or basis to immediately designate this claim as suspect and was in violation of proper claims procedures and handling.

/ / /

/ / /

1       31. On or about October 10, 2009, Plaintiff's Counsel sent Defendant PROGRESSIVE a

2   letter advising them that they were in violation of the Consumer Legal Remedies Act and

3   demanded they cure their violations.

4       32. On or about December 1, 2010, Plaintiff's Counsel requested Defendant

5   PROGRESSIVE send the documents Defendant PROGRESSIVE alleged it needed to pay on the

6   claim. Plaintiff's Counsel sent a second request on December 18th, and a third request on

7   December 22nd.

8       33. On or about December 29, 2010, Defendant PROGRESSIVE sent Plaintiff's Counsel

9   a Consent to Disclose and Release. Plaintiff's Counsel reviewed the form and determined it was

10  too broad and required Plaintiff to divulge private financial information that was irrelevant to the

11  complaint. Plaintiff's Counsel requested Defendant PROGRESSIVE modify and limit the scope

12  of the Financial Disclosure form.

13      34. On or about February 24, 2010, Defendant PROGRESSIVE said it would not

14  consider modifying the Financial disclosure Form and that Plaintiff had to sign and return the

15  form.

16      35. Because of the Defendants wrongful conduct, Plaintiff has no alternative but to

17  proceed to file this suit.

18                  **FIRST CAUSE OF ACTION**

19                  **BREACH OF CONTRACT**

20          **By Plaintiff Against All Defendants, Does**

21      36. Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates

22  said paragraphs as though set forth in full in this Cause of Action.

23      37. Plaintiff is informed and believes and thereon alleges that Defendant,

24  PROGRESSIVE'S policy provided, in pertinent part, that Defendant PROGRESSIVE, would

25  pay Plaintiff's loss or would promptly pay for the repair of Plaintiff's vehicle. The policy had

26  implied in it, by operation of law, the obligation that Defendant PROGRESSIVE, and its claims

27  agents would act with the utmost good faith and deal fairly with Plaintiff concerning any and all

28  aspects of the relationship between Plaintiff and Defendants from the date of policy procurement,

1   through the claims handling process, and throughout the process of the litigation, which would

2   not have occurred but for Defendant PROGRESSIVE'S breaches below.

3       38.  Plaintiff paid the premiums and performed each act required of him under the policy.

4   Plaintiff intended and expected thereby to be assured of peace of mind and financial and

5   economic security in the event of a loss.

6       39.  Defendants PROGRESSIVE and DOES 1 through 100 accepted premium payments

7   from Plaintiff for said policy and benefits.  Said policy was in full force and effect at all times

8   herein mentioned.

9       40.  Plaintiff had a contract with Defendant PROGRESSIVE, as stated above and below.

10  The policy provided, in pertinent part, that Defendants PROGRESSIVE, and DOES 1 through

11  100, and each of them, would pay all sums that Plaintiff herein became legally entitled to recover

12  due to the losses and damages Plaintiff sustained.

13      41.  Defendant PROGRESSIVE, did promise to procure insurance for Plaintiff and assist

14  Plaintiff with any claim.  Defendant did represent to Plaintiff and prospective insureds that

15  Defendant would promptly and fairly evaluate and process Plaintiff's and other insureds' claims.

16  Additionally, Defendant promised Plaintiff and other insureds claim support.

17      42.  Plaintiff informed Defendants PROGRESSIVE and DOES 1 through 100 that

18  Plaintiff was presenting a claim for losses and damages under the policy. By reason thereof,

19  Defendants PROGRESSIVE and DOES 1 through 100 became obligated to cover said liability

20  and/or pay benefits.

21      43.  Instead, Defendants PROGRESSIVE and DOES 1 through 100 wrongfully

22  "investigated" and denied the loss.  Defendants wrongfully refused to honor Plaintiff's policy.

23  Defendant PROGRESSIVE'S conduct through its representatives and employees relative to

24  Plaintiff's claim was discriminatory, incomplete, inaccurate, improper, unreasonable,

25  incompetent and biased.  Plaintiff is informed and believes and on said basis alleges that

26  Defendant PROGRESSIVE'S actions were for the sole purpose of denying Plaintiff's claim and

27  keeping Plaintiff's premium payments.

28  / / /

COMPLAINT FOR DAMAGES

44.  Notwithstanding their obligation to do so, Defendants PROGRESSIVE and DOES 1 through 100 failed to exercise good faith with Plaintiff and honor the owing of the benefits under the policy despite numerous demands therefore.  Said failures and delays, stated above, and refusals constitute a material and unreasonable breach of the written contract, the policy, and Defendants' written representations and agreements, and the covenants implied therein.

45.  In the absence of a reasonable basis for doing so, and with full knowledge and/or reckless disregard of the consequence, Defendant PROGRESSIVE wrongfully denied benefits to Plaintiff.

46.  Defendant PROGRESSIVE have breached the duty of good faith and fair dealing to Plaintiff, by unreasonably and wrongfully withholding said benefits and by other breaches as follows:

a.  Failure to pay benefits as provided under the policy at a time when Defendant knew that Plaintiff was entitled to said payment under the terms of the policy;

b.  Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under the policy was valid;

c.  Engaging in deceptive practices to avoid payment of benefits;

d.  Engaging in deceptive practices to avoid payment for losses by delay, and an unduly restrictive interpretation of the policy terms modified by the conduct, actions and inactions of Defendant and failing to disclose the actual facts and policy provisions supporting the claim;

e.  Failing to completely, accurately and properly evaluate Plaintiff's claim;

f.  Failing to pay Plaintiff's claim at a time when Defendant had information and documentation within their possession supporting the claim;

g.  Concealing from Plaintiff pertinent facts relating to the evaluation and appraisal of Plaintiff's loss;

h.  Failing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the claim arising under the policy now the subject of the action;

///

11

i. Failing to adopt and implement reasonable standards for the prompt, accurate and complete investigation and processing of Plaintiff's claim;

j. Failing to abide by the coverage as represented to Plaintiff by Defendant.

47. Plaintiff is informed and believes and thereon alleges that Defendants PROGRESSIVE and DOES 1 through 100, and their agents, breached their duty of good faith and fair dealing to Plaintiff by other acts, omissions or violations of standards of which Plaintiff is presently unaware. Plaintiff will seek leave of Court to amend the Complaint at such time as Plaintiff discovers the other acts, violations or omissions of said Defendants, constituting such bad faith.

48. By their conduct herein, Defendants are estopped from asserting any conditions and/or exclusions under the policy which may exist and have waived same.

49. On information and belief, Plaintiff alleges that Defendants PROGRESSIVE and DOES 1 through 100's conduct was an instance of a larger pattern of conduct involving claims of other similarly situated insureds throughout California within the past several years and up to the present. In pursuing said wrongful and unreasonable conduct, the Defendants were pursuing unfair trade practices.

50. As a proximate result of the aforementioned unreasonable and wrongful conduct of Defendant PROGRESSIVE, Plaintiff has suffered by his inability to receive the benefits pursuant to the policy, which benefits total approximately in excess of the minimum jurisdiction of this Court, and other damages set forth in the following causes of action.

51. As a further direct and proximate result of the conduct of Defendant PROGRESSIVE, Plaintiff has incurred and will incur economic detriment, including but not limited to attorneys' fees, costs and expenses of litigation, and other special damages in an amount not yet determined.

52. As a further proximate result of Defendant PROGRESSIVE'S aforementioned breach of the covenant of good faith and fair dealing, Plaintiff has suffered anxiety, worry, anger, mental and emotional distress, attorneys' fees and costs and other incidental damages and out-of-pocket expenses, all to Plaintiff's general damages for a total amount to be determined at

12

1   the time of trial.  The above course of conduct was pursued without due regard for and in

2   reckless and conscious disregard of Plaintiff's financial and emotional circumstances.

3       53.  Defendant PROGRESSIVE'S breach of the covenant of good faith and fair dealing

4   was undertaken with a conscious disregard of Plaintiff's rights, based upon the Defendant's

5   greed and superior bargaining and advertising power, and with the intent to vex, injure and annoy

6   Plaintiff, so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294.

7   Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such

8   conduct.

9                          **SECOND CAUSE OF ACTION**

10  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

11                    **By Plaintiff Against All Defendants, Does**

12      54.  Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates

13  said paragraphs as though set forth in full in this Cause of Action.

14      55.  Defendant PROGRESSIVE'S policy provided, in pertinent part, that Defendant

15  would pay Plaintiffs' loss.  The policy had implied in it, by operation of law, the obligation that

16  Defendant PROGRESSIVE and its claims agents would act with the utmost good faith and deal

17  fairly with Plaintiff concerning any and all aspects of the relationship between Plaintiff and

18  Defendant PROGRESSIVE from the date of policy procurement, through claims handling, and

19  throughout the process of the litigation, which would not have occurred but for the Defendants'

20  breaches below.

21      56.  Plaintiff paid the premiums due and performed each act required of them under the

22  policy.  Plaintiff intended and expected thereby to be assured of peace of mind and financial and

23  economic security in the event of a loss.

24      57.  Defendants PROGRESSIVE and DOES 1 through 100 accepted premium payments

25  from Plaintiff for said policy and benefits.  Said policy was in full force and effect at all times

26  herein mentioned.

27      58.  Plaintiff informed Defendant PROGRESSIVE that he was presenting a claim for

28  losses and damages under the policy.  By reason thereof, Defendants PROGRESSIVE and DOES

                                        13

1 through 100 became obligated to cover said liability and/or pay benefits.

59. Instead, Defendants PROGRESSIVE and DOES 1 through 100 wrongfully "investigated" and denied the loss. Defendant PROGRESSIVE'S conduct through its agents, counsel, representatives and employees relative to Plaintiff's claim was misleading, incomplete, inaccurate, improper, unreasonable, incompetent and biased.

60. Notwithstanding their obligation to do so, Defendants PROGRESSIVE and DOES 1 through 100 have failed to exercise good faith towards Plaintiff and refused to honor Plaintiff's claim under the policy despite numerous demands therefore. Said failures and delays, stated above, and refusals constitute a material and unreasonable breach of the written contract, the policy, and Defendant PROGRESSIVE'S written representations and agreements, and the covenants implied therein.

61. In the absence of a reasonable basis for doing so, and with full knowledge and/or reckless disregard of the consequence, Defendant PROGRESSIVE wrongfully denied benefits to Plaintiff.

62. Defendants PROGRESSIVE and DOES 1 through 100 have breached the duty of good faith and fair dealing owned to its insureds, by unreasonably and wrongfully withholding said benefits and by other breaches as follows:

a. Failure to pay benefits as provided under the policy at a time when Defendant knew that Plaintiff was entitled to said payment under the terms of the policy;

b. Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under the policy was valid;

c. Engaging in deceptive practices to avoid payment of benefits;

d. Engaging in deceptive practices to avoid payment for losses by delay, and an unduly restrictive interpretation of the policy terms modified by the conduct, actions and inactions of Defendant and failing to disclose the actual facts and policy provisions supporting the claim;

e. Failing to completely, accurately and properly evaluate Plaintiff's claim;

///

14

1    f. Failing to pay Plaintiff's claim at a time when Defendant had information and

2    documentation within their possession supporting the claim;

3    g. Concealing from Plaintiff pertinent facts relating to the evaluation and

4    appraisal of Plaintiff's loss;

5    h. Failing to acknowledge and act reasonably promptly upon communications

6    from Plaintiff with respect to the claim arising under the policy now the subject of the action;

7    i. Failing to adopt and implement reasonable standards for the prompt, accurate

8    and complete investigation and processing of Plaintiff's claim;

9    j. Failing to abide by the coverage as represented to Plaintiff by Defendant.

10   63. Plaintiff is informed and believes and thereon alleges that Defendants

11   PROGRESSIVE and DOES 1 through 100, and their agents, breached their duty of good faith

12   and fair dealing to Plaintiff by other acts, omissions or violations of standards of which Plaintiff

13   is presently unaware. Plaintiff will seek leave of Court to amend the Complaint at such time as

14   Plaintiff discovers the other acts, violations or omissions of said Defendants constituting such

15   bad faith.

16   63. By their conduct herein, Defendants are estopped from asserting any conditions

17   and/or exclusions under the policy which may exist and have waived same.

18   64. On information and belief, Plaintiff alleges that Defendant PROGRESSIVE'S

19   conduct was an instance of a larger pattern of conduct involving claims of other similarly

20   situated insureds throughout California within the past several years and up to the present. In

21   pursuing said wrongful and unreasonable conduct, Defendants were pursuing unfair trade

22   practices.

23   65. As a proximate result of the aforementioned unreasonable and wrongful conduct of

24   Defendant PROGRESSIVE, Plaintiff has suffered by his inability to receive the benefits pursuant

25   to the policy, which benefits are in excess of the minimum jurisdiction of the Court.

26   66. As a further direct and proximate result of the conduct of Defendant

27   PROGRESSIVE, Plaintiff has incurred and will incur economic detriment, including but not

28   limited to attorneys' fees, costs and expenses of litigation, and other special damages in an

15

1    amount not yet determined.

2        67.  As a further proximate result of Defendant PROGRESSIVE'S aforementioned

3    breach of the covenant of good faith and fair dealing, Plaintiff has suffered loss of earnings,

4    anxiety, worry, anger, mental and emotional distress, attorneys' fees and costs and other

5    incidental damages and out-of-pocket expenses, all to Plaintiff's general damages for a total

6    amount to be determined at the time of trial.  The above course of conduct was pursued without

7    due regard for and in reckless and conscious disregard of Plaintiff's financial and emotional

8    circumstances.

9        68.  Defendant PROGRESSIVE'S breach of the covenant of good faith and fair dealing

10   was undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendant's

11   greed and superior bargaining and advertising power, and with the intent to vex, injure and annoy

12   Plaintiff, so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294.

13   Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such

14   conduct.

15                          **THIRD CAUSE OF ACTION**

16                          **BREACH OF FIDUCIARY DUTIES**

17                       **By Plaintiff Against All Defendants, Does**

18       69.  Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates

19   said paragraphs as though set forth in full in this Cause of Action.

20       70.  By procuring for Plaintiff the subject Policy of insurance and thereby representing to

21   Plaintiff that they would procure a policy of insurance that would protect Plaintiff in the event of

22   vandalism and theft, Defendants PROGRESSIVE and DOES 1 through 100, and each of them,

23   created a fiduciary relationship between themselves and Plaintiff and said fiduciary relationship

24   existed at all relevant times.

25       71.  By issuing said insurance Policy to Plaintiff and accepting premiums therefore,

26   Defendants PROGRESSIVE and DOES 1 through 100, created a fiduciary relationship between

27   themselves and Plaintiff and said fiduciary relationship existed at all relevant times herein.

28   ///

72.  Plaintiff alleges that the Defendants, PROGRESSIVE and DOES 1 through 100, have breached their fiduciary duty owed to Plaintiff by the acts and omissions set forth herein including their patent and negligent misrepresentations.

73.  Plaintiff alleges that as a result of the breach of fiduciary duty by Defendants PROGRESSIVE and DOES 1 through 100, Plaintiff has suffered damages as set forth in Plaintiff's Second Cause of Action herein.  Said paragraphs are incorporated herein by reference.

## FOURTH CAUSE OF ACTION

### FRAUD, NEGLIGENT MISREPRESENTATION, CONCEALMENT

#### By Plaintiff Against All Defendants, Does

74.  Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

75.  At the time Defendants PROGRESSIVE and DOES 1 through 100 procured the policy for Plaintiff, said Defendants assured Plaintiff that they, as the insurer, would pay all covered losses and damages due under the policy.  Defendants concealed, failed to disclose, and thereby misrepresented to Plaintiff that Defendants PROGRESSIVE and DOES 1 through 100's true intent was to delay, limit, restrict and deny insurance coverage, and do anything to get Plaintiff, or another source, to pay.  Defendant PROGRESSIVE concealed from Plaintiff that it would delay, limit, reject and deny Plaintiff's claim based upon fabricated and improper bases.

76.  At the time Defendants PROGRESSIVE and DOES 1 through 100 procured and issued the policy for Plaintiff, they assured Plaintiff that they would promptly and fairly pay all damages due under the policy limits, and that there would be no arbitrary or random acts of refusal to do so.

77.  Defendants PROGRESSIVE and DOES 1 through 100, and each of them, knew at the time that they made their representations, or concealment and failure to disclose, as stated herein, that these representations as to policy coverage and as to the evaluation and processing of said losses was thereby false, misleading, inaccurate, and incomplete to limit Defendant PROGRESSIVE'S financial responsibility.

/ / /

1    78.  Defendants PROGRESSIVE and DOES 1 through 100 failed to completely,

2   accurately, properly and timely investigate, process, handle and evaluate said claim and

3   wrongfully claimed Plaintiff's loss was "not covered."

4    79.  As a result of the concealment, failure to disclose and false misrepresentation of

5   material terms concerning Plaintiff's insurance coverage, and of the evaluation of Plaintiff's loss,

6   same was not disclosed and concealed and thereby misrepresented by Defendants

7   PROGRESSIVE and DOES 1 through 100 to Plaintiff.

8    80.  Defendants PROGRESSIVE and DOES 1 through 100 knew at the time that they

9   failed to disclose, concealed and engaged in such representations, actions, conduct and inactions

10   described herein that same was false, misleading and untrue.

11    81.  Plaintiff justifiably relied on the conduct, actions, inactions and representations of

12   Defendants PROGRESSIVE and DOES 1 through 100, including such reliance of making full

13   payment of the insurance premiums, and that the appraisal and evaluation of Plaintiff's loss as

14   conducted would be fair.  Had Plaintiff known the truth he would not have taken such action.  As

15   a result of Plaintiff's justifiable reliance on the conduct, actions, inactions and representations

16   made by Defendants PROGRESSIVE and DOES 1 through 100, Plaintiff suffered damages in

17   that the conduct, actions, inactions and representations were fraudulent, misleading, concealed,

18   biased, not fully disclosed, and untrue.

19    82.  The above course of conduct was pursued without due regard for and in reckless and

20   conscious disregard of the financial and emotional circumstance of Plaintiff.  As a direct and

21   proximate result of the conduct of Defendants PROGRESSIVE and DOES 1 through 100,

22   Plaintiff has suffered anxiety, worry, anger, emotional and mental distress and out of pocket

23   expenses all to their general damage in an amount to be determined.

24    83.  As a further direct and proximate result of the conduct of Defendants PROGRESSIVE

25   and DOES 1 through 100, Plaintiff has incurred and will incur economic detriment, including, but

26   not limited to, lost income, attorneys fees', cost and expense of litigation, and other special damages

27   in an amount not yet determined.

28   ///

84. At all times relevant herein Defendants PROGRESSIVE and Does 1 through 100 acted fraudulently, with malice, oppression and willful disregard for Plaintiff's rights and interests as Defendants PROGRESSIVE and DOES 1 through 100 sold their insurance product with undisclosed and concealed limitations. The conduct of the Defendant, as described herein, was undertaken with a conscious disregard for Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff, so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such conduct of Defendants PROGRESSIVE and DOES 1 through 100.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

**By Plaintiff Against Defendants Progressive, Does**

85. Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

86. At all times mentioned herein, Defendants PROGRESSIVE and DOES 1 through 100, and each of them, knew that they were in a sensitive and superior economic position to the Plaintiff and had the power and ability to damage Plaintiff's interests, economic and otherwise, by failing to act reasonably and failing to locate Plaintiff's vehicle as required by the warranty.

87. Defendants PROGRESSIVE and DOES 1 through 100 had a duty to Plaintiff. Said duty was created both by the insurance policy and by the Defendants' affirmative conduct thereafter. Defendants PROGRESSIVE and DOES 1 through 100's duty, pursuant to Civil Code Section 1714, was to use ordinary care and skill in handling, investigating, and promptly paying on Plaintiff's claim. Defendants PROGRESSIVE and DOES 1 through 100 breached their duties through the conduct stated in the prior Causes of Action.

88. Defendants PROGRESSIVE and DOES 1 through 100, and each of them, further knew that failing to properly and promptly investigate and pay Plaintiff's claim would cause Plaintiff to suffer great emotional distress and economic hardship. Defendants PROGRESSIVE and DOES 1 through 100 knew that Plaintiff would be distressed upon learning that their vehicle had been stolen. Nevertheless in do ng and/or failing to do the things herein alleged, Defendants,

19

1 | and each of them, acted despicably, outrageously, fraudulently and intentionally in an attempt to

2 | deprive, and in fact depriving, Plaintiff of insurance benefits, as more specifically set forth

3 | hereinabove.  Plaintiff therefore seeks punitive damages as previously set forth herein.

4 |     89.  As a direct and proximate result of Defendants PROGRESSIVE and DOES 1

5 | through 100, and each of their conduct, Plaintiff suffered severe and continued emotional

6 | distress, anger, worry and humiliation all to Plaintiff's general damage, which damages are

7 | claimed herein.

8 | ### SIXTH CAUSE OF ACTION

9 | ### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10 | **By Plaintiff Against All Defendants, Does**

11 |     90.  Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates

12 | said paragraphs as though set forth in full in this Cause of Action.

13 |     91.  When Defendants PROGRESSIVE and DOES 1 through 100 committed the acts

14 | described in this Complaint, they did so deliberately and intentionally to cause Plaintiff to suffer

15 | humiliation, mental anguish and emotional distress.  Defendants PROGRESSIVE and DOES 1

16 | through 100 were aware that acting in the manner in which they have caused Plaintiff to suffer

17 | extreme emotional distress, and other consequential damages.

18 |     92.  Defendants PROGRESSIVE and DOES 1 through 100, and each of them, acting

19 | through their agents and employees did the acts described in this Complaint, particularly, but not

20 | limited to, promptly and timely failing to inspect, adjust and pay Plaintiff's claim, they did so

21 | deliberately and intentionally to cause emotional distress to Plaintiff.  These acts of Defendants

22 | PROGRESSIVE and DOES 1 through 100, and each of them, cannot be expected to normally

23 | occur.

24 |     93.  The above stated acts of the Defendants PROGRESSIVE and DOES 1 through 100,

25 | and each of them, constituted intentional infliction of emotional distress against Plaintiff and

26 | such conduct of Defendants was a substantial and/or determining factor in proximately causing

27 | damage and injury to Plaintiff.

28 | ///

94. As a proximate consequence of Defendants' wrongful acts against Plaintiff, Plaintiff has suffered property damage, loss of earnings, emotional distress, and other general and special damages.

95. Defendants PROGRESSIVE and DOES 1 through 100's actions were willful, reckless and exhibited a conscious disregard of the rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages, according to proof.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE §17200

### By Plaintiff Against All Defendants, Does

96. Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

97. Defendants PROGRESSIVE and DOES 1 through 100's acts, as specifically stated herein above, constitutes unfair business practices which are illegal under California Business & Professions Code §17200 which prohibits unfair competition, which includes unlawful, unfair or fraudulent business acts or practices and unfair, deceptive or untrue acts.

98. Defendants PROGRESSIVE and DOES 1 through 100 engaged in prohibited acts and/or practices by misrepresenting coverage under the policy; failing to disclose pertinent facts regarding arbitrary or random acts of refusal, limitation, restriction and denial of Plaintiff's claim; withholding the fact that decisions would be made based on pretext rather than skill or competence, as more specifically stated herein above, constitute unfair business practices which are illegal under California Business & Professions Code §17200 which prohibits unfair competition, which includes unlawful, unfair or fraudulent business acts or practices and unfair, deceptive or untrue acts.

99. As a proximate result of the Defendants' course of unfair and deceptive conduct, Plaintiff has been injured as previously alleged. Plaintiff seeks all relief allowed pursuant to statute. Plaintiff pursues this action as a private attorney general. Plaintiff seeks disgorgement of any profit gained by Defendants due to Defendants' wrongful conduct, restitution and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT

**[Civil Code §§1750 *et seq*, 1770(a)(16)]**

**By Plaintiff Against All Defendants, Does**

100.  Plaintiff repeats and realleges all the preceding paragraphs herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

101.  Plaintiff and/or his representatives notified Defendant PROGRESSIVE, in compliance with Civil Code §1782(a)(2), of the Defendant's failure to provide coverage and services as provided by the insurance and sales contracts under Civil Code §1770 *et seq.*, and demanded the Defendant immediately comply with all provisions of the insurance contract.

102.  Pursuant to the requirements of Civil Code §1780(c), Plaintiff states that this claim is filed within the County of Los Angeles, wherein Defendant PROGRESSIVE does business. Plaintiff has complied with all other applicable provisions of said statute.  This is Plaintiff's affidavit regarding venue as attested to by Plaintiff's counsel pursuant to case filing documents attached hereto and incorporated herein by reference.

103.  As a further direct and proximate result of the aforementioned breaches by Defendant PROGRESSIVE stated in the causes of action above and Defendant's failures to remedy same after being put on notice by Plaintiff of said violations of Civil Code §1770 *et seq.*, Plaintiff has suffered anxiety, worry, anger, mental and emotional distress and other incidental damage and out of pocket expenses, all to Plaintiff's general damage for a total to be shown at the time of trial.

104.  Defendant PROGRESSIVE'S conduct as described herein violated Civil Code §1750 *et seq.*, and was deceptive, fraudulent, was under taken with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to compensatory and punitive damages.

105.  As a proximate consequence of Defendant PROGRESSIVE'S wrongful acts against Plaintiff, he has suffered property damage, loss of earnings, emotional distress, and other general and special damages.

///

1    106.  Defendant PROGRESSIVE'S  actions were willful, reckless and exhibited a

2    conscious disregard of the rights of Plaintiffs.  Accordingly, Plaintiff are is entitled to punitive

3    damages, according to proof.

4    **WHEREFORE,** Plaintiff prays for judgment against all Defendants, and each of them,

5    according to proof as follows:

6         1.  For general damages;

7         2.  For special damages;

8         3.  Interest on compensatory damages at the legal rate from the date of injury or pursuant

9    to Code of Civil Procedure §3291;

10        4.  For other compensatory damages, emotional distress and other economic and non-

11   economic losses;

12        5.  Punitive and exemplary damages;

13        6.  Attorneys fees;

14        7.  Costs and expenses of suit herein, and

15        8.  For any other just and proper relief as allowed by statute and prevailing law.

16   DATED: July 15, 2010

17                          GARY RAND & SUZANNE E. RAND-LEWIS
                            PROFESSIONAL LAW CORPORATIONS
18

19

20                          BY: _____
                               Gary Rand
21                             Attorney for Plaintiff
                               Hagop Bekhloyan
22

23

24

25

26

27

28

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____     BC447039

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Conrad Aragon | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | √ |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Jane L. Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. John A. Kronstadt | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | **Hon. Emilie H. Elias*** | **324** | **CCW** | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

***Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Bekhloyan v. Progressive Choice Insurance Company, et al. | BC442039 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**
**(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 13 2010

John A. Clarke, Executive Officer/Clerk
By _____ , Deputy
SHAH

| This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [✓] YES    CLASS ACTION? [ ]YES    LIMITED CASE? [ ]YES    TIME ESTIMATED FOR TRIAL _7-10_ HOURS/ DAYS

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4).

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

|  | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort  (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Bekhloyan v. Progressive Choice Insurance Company, et al. | |

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not Insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☑ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300.  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Bekhloyan v. Progressive Choice Insurance Company, et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE:<br>Bekhloyan v. Progressive Choice Insurance Company, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>818 West Seventh Street |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: __July 15, 2010__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Gary Rand, Esq. (SBN#38184) for<br>Gary Rand & Suzanne E. Rand-Lewis, Professional Law Corporations<br>5990 Sepulveda Boulevard, Suite 330<br>Sherman Oaks, California 91411<br>TELEPHONE NO.: (818) 779-1720     FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff Hagop Bekhloyan | **CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court**<br><br>**JUL 22 2010**<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>DOROTHY SWAIN |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse - Central

| CASE NAME: |
|---|
| Bekhloyan v. Progressive Choice Insurance Company, et al. |

| CIVIL CASE COVER SHEET | | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BC442039<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[✓] Rule 3.740 collections (09)<br>[ ] Other collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18)<br>[✓] Other contract (37) | [ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33) | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment**<br>[ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32) | **Miscellaneous Civil Complaint**<br>[ ] RICO (27) |
| [ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | [ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence            f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 8
5. This case [ ] is  [✓] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 15, 2010
Gary Rand, Esq.
_____
(TYPE OR PRINT NAME)        ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all**
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
  Page 1 of 2

CIVIL CASE COVER SHEET

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court.  ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR.  All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

1  Gary Rand & Suzanne E. Rand-Lewis
   Professional Law Corporations
2  Gary Rand, Esq., State Bar No. 38184
   5990 Sepulveda Boulevard, Suite 330
3  Sherman Oaks, California 91411-2523
   (818) 779-1720
4
5  Attorney for Plaintiff, Hagop Bekhloyan
6
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
10
11 HAGOP BEKHLOYAN                        CASE NO. BC442039
12      Plaintiff;                        Assigned for all purposes to
                                          Hon. Abraham Khan
13 vs.                                    Department 51
14 PROGRESSIVE CHOICE INSURANCE           **NOTICE OF CASE MANAGEMENT
   COMPANY, PROGRESSIVE CASUALTY          CONFERENCE**
15 INSURANCE COMPANY,
   PROGRESSIVE DIRECT HOLDING, INC.,      Complaint Filed:   July 22, 2010
16 DOES 1 through 100;                    Trial Date:        None Set
17      Defendants.
18 ─────────────────────────────
19 TO: ALL PARTIES AND TO THEIR ATTORNEY OF RECORD:
         PLEASE TAKE NOTICE that the Court has scheduled a Case Management Conference
20
   on December 10, 2010, at 8:45 a.m. in Department 51 of the above referenced court, located at
21
   111 North Hill Street, Los Angeles, California 90012.  The parties are required to appear and file
22
   a Case Management Statement fifteen days prior to said hearing.  A true and correct copy of the
23
   Court's Order is attached hereto as Exhibit "A."
24
   DATED: July 29, 2010
25
                                 Gary Rand & Suzanne E. Rand-Lewis
26                               Professional Law Corporations
27
                                 BY: _____
28                                   Gary Rand
                                     Attorney for Plaintiff

                                         1
                    NOTICE OF CASE MANAGEMENT CONFERENCE

*A 7/27/10*

*Calendar + serve*

NOTICE SENT TO:

Rand, Gary, Esq.
Gary Rand & Suzanne E. Rand-Lewis, PLC
5990 Sepulveda Blvd., Suite 330
Van Nuys,              CA  91411-2523

**ORIGINAL FILED**

JUL 28 2010

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | CASE NUMBER |
|---|---|
| HAGOP BEKHLOYAN                           Plaintiff(s),<br><br>VS.<br><br>PROGRESSIVE CHOICE INSURANCE COMPANY ET                 Defendant(s). | BC442039<br><br>**NOTICE OF CASE MANAGEMENT CONFERENCE** |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for December 10, 2010 at 8:45 am in Dept. 51 at 111 North Hill Street, Los Angeles, California 90012.

**NOTICE TO DEFENDANT:**    **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: July 26, 2010                                                    ~~ABRAHAM KHAN~~
                                                                                            Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[ ✓ ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.

Date: July 26, 2010                                                    John A. Clarke, Executive Officer/Clerk

                                                                       by _____M. CLARK_____, Deputy Clerk

**EXHIBIT**

**A**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

    I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is located in the county where the mailing described below took place.  I am over the age of 18 years and am not a party to this action.

    On July 29, 2010, I served the following document(s) entitled: **NOTICE OF CASE MANAGEMENT CONFERENCE** on all interested parties in this action as follows:

Progressive Choice Insurance Company
6300 Wilson Mills Road
Mayfield Village, OH 44143

☒    **BY MAIL:**  By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices.  I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service.  The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to OVERNITE EXPRESS for delivery to the above address(es).

    **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

    **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

☒    [State]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    [Federal]  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

    Executed on July 29, 2010, at Sherman Oaks, California.

Angela Muse

US POSTAGE
$ 001.90°

**GARY RAND &**
**SUZANNE E. RAND-LEWIS**
*PROFESSIONAL LAW CORPORATIONS*
**5990 SEPULVEDA BOULEVARD**
**SUITE 330**
**SHERMAN OAKS, CALIFORNIA 91411**

Progressive Choice Insurance Company
6300 Wilson Mills Road
Mayfield Village, OH 44143

1 | Julia Azrael (Bar No. 109049)
2 | John S. Curtis (Bar No. 50350)
Adam S. Feldman (Bar No. 262167)
**LAW OFFICES OF JULIA AZRAEL**
3 | 5200 Lankershim Boulevard, Suite 850
North Hollywood, California 91601
4 | Telephone:  (818) 766-5177
Facsimile:  (818) 766-5047
5 | Attorneys for Defendant
6 | PROGRESSIVE CHOICE INSURANCE COMPANY

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 13 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DAWN ALEXANDER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| HAGOP BEKHLOYAN, | CASE NO. BC442039 |
| Plaintiff, | Case Assigned to Honorable Abraham Khan – Dept.  51 |
| vs. | [Complaint Filed:  March 26, 2010] |
| PROGRESSIVE CHOICE INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE DIRECT HOLDING, INC., DOES 1 through 100; | **ANSWER** |
| Defendants. | Discovery Cutoff:    None<br>Motion Cutoff:      None<br>Trial Date:           None |

Defendant, PROGRESSIVE CHOICE INSURANCE COMPANY, severing from all other defendants and for itself alone answers the Complaint as follows.

1.       Pursuant to *Code of Civil Procedure* § 431.30(d), Defendant generally denies each, all and every allegation contained in said Complaint, and specifically denies that Plaintiff has been damaged in the amount or amounts therein alleged, or in any other amount or amounts, or at all.  Defendant further specifically denies that Plaintiff is entitled to exemplary damages in the amount or amounts therein alleged, or in any amount or amounts, or at all.

///

## FIRST AFFIRMATIVE DEFENSE

2.      The Complaint and each and every purported cause of action therein contained fail to state facts sufficient to constitute a cause of action as against this answering Defendant.

## SECOND AFFIRMATIVE DEFENSE

3.      Any and all claims for punitive or exemplary damages are barred on the basis that said claims are in violation of the Eighth Amendment of the United States Constitution. Further, assessing punitive damages under California law is in violation of both the United States and California Constitutional requirements of due process of law.  Finally, assessment of punitive damages results in double jeopardy as to this answering Defendant.

## THIRD AFFIRMATIVE DEFENSE

4.      Defendant alleges that the Plaintiffs committed intentionally wrongful acts in misrepresenting his claim and that Plaintiff's wrongful acts caused and/or contributed to the injuries or damages, if any, sustained by Plaintiff herein, and that, as a result of the foregoing, any damages awarded in this action should be reduced proportionately.

## FOURTH AFFIRMATIVE DEFENSE

5.      If the insured was entitled to benefits under the policy as demanded by plaintiff in this complaint (which Progressive continues to deny), then the withholding of such benefits was the result of a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured; and, therefore, there can be no bad faith liability

1  imposed on the insurer for advancing its side of that dispute.  (See *Chateau Chamberay*

2  *Homeowners' Ass'n v. Assoc. Intern Ins. Co.* (2001) 90 Cal.App.4th 335, 347.)

3

4  ### FIFTH AFFIRMATIVE DEFENSE

5

6       6.     Plaintiff's claim is barred by the doctrine of unclean hands.

7

8  ### SIXTH AFFIRMATIVE DEFENSE

9

10       7.     Defendant's investigation showed the Plaintiff more likely than not made a

11  fraudulent claim; accordingly, there was no coverage under the terms of the policy.

12

13  ### SEVENTH AFFIRMATIVE DEFENSE

14

15       8.     Plaintiff has failed to cooperate in the investigation of the alleged theft and

16  thereby violated the terms of the policy, thereby voiding coverage.

17

18  ### EIGHTH AFFIRMATIVE DEFENSE

19

20       9.     The claims handling was reasonable under the presented circumstances and

21  met the standards of good faith claim handling.

22

23  ### NINTH AFIRMATIVE DEFENSE

24

25       10.     Defendant relied on the advice of counsel in conducting its investigation and

26  reaching its coverage determination which was reasonable under the facts presented.

27

28

1     WHEREFORE, Defendant prays that Plaintiff take nothing by reason of his

2   Complaint, that Defendant recover the cost of suit incurred herein, and for such other and

3   further relief as the Court may deem just and proper.

4

5   Dated: August 12, 2010August 10, 2010     LAW OFFICES OF JULIA AZRAEL

6

7                                          By: _____
                                                JULIA AZRAEL
8                                               Attorneys for Defendant PROGRESSIVE
                                                CHOICE INSURANCE COMPANY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA            )
                               )   ss.:
                               )
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

On August 12, 2010, I served on interested parties in said action the within:

**ANSWER**

____**X**          **BY MAIL:** By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

_____          **BY PDF VIA EMAIL:** I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

_____          **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

_____          **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

_____          **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

__**X**__          **[State]**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____          **[Federal]**          I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 12, 2010, at North Hollywood, California.

_____          _____
Kristen Elze                              (Signature)
(Type or print name)

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No. BC442039

1

2 | Gary Rand & Suzanne E. Rand-Lewis                    Attorneys for Plaintiff

3 | Professional Law Corporations
  | 5990 Sepulveda Blvd., Ste 330
  | Sherman Oaks, CA 91411-2523

4 | Phone: (818) 779-1720
  | Fax: (818) 779-1730

5 | randandlewislaw@gmail.com  - EMAIL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Julia Azrael (Bar No. 109049)
   John S. Curtis (Bar No. 50350)
2  Adam S. Feldman (Bar No. 262167)
   **LAW OFFICES OF JULIA AZRAEL**
3  5200 Lankershim Boulevard, Suite 850
   North Hollywood, California 91601
   Telephone: (818) 766-5177
4  Facsimile: (818) 766-5047

5  Attorneys for Defendant
   PROGRESSIVE CHOICE INSURANCE COMPANY

6

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 1 3 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
      DAWN ALEXANDER

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11  HAGOP BEKHLOYAN,                      )  CASE NO. BC442039
                                          )
12              Plaintiff,                )  Case Assigned to Abraham Kahn – Dept.
                                          )  51
13       vs.                              )
                                          )  [Complaint Filed: July 22, 2010]
14  PROGRESSIVE CHOICE INSURANCE          )
    COMPANY, PROGRESSIVE                  )  **NOTICE OF HEARING ON**
15  CASUALTY INSURANCE COMPANY,           )  **DEMURRER AND DEMURRER TO**
    PROGRESSIVE DIRECT HOLDING,           )  **COMPLAINT;**
16  INC., DOES 1 through 100;             )
                                          )  **MEMORANDUM OF POINTS AND**
17              Defendants.               )  **AUTHORITIES**
                                          )
18  _____  )  Date:        September 27, 2010
                                             Time:        9:00 a.m.
19                                           Dept:        51

20                                           Discovery Cutoff:   None
                                             Motion Cutoff:      None
21                                           Trial Date:         None

22  TO THE PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

23

24       PLEASE TAKE NOTICE that on September 27, 2010, at 9:00 a.m. or as soon

25  thereafter as the matter may be heard in Department 51 of the above-entitled court, located

26  at 111 North Hill Street, Los Angeles, California 90012, defendant Progressive Choice

27  Insurance Company ("Choice") will demur to the complaint of plaintiff Hagop Bekhloyan

28  on the grounds that the third, fourth, fifth, sixth, seventh and eighth causes of action in the

                                    - 1 -
─────────────────────────────────────────
                        DEMURRER TO COMPLAINT

1   complaint fail to state facts sufficient to constitute a cause of action against any defendant

2   (*Code of Civil Procedure* § 430.30(e)) and are impermissibly uncertain (*Code of Civil*

3   *Procedure* § 430.30(f)).

4

5       The complaint describes "Progressive" as being a combination of Choice, Casualty

6   and Holding.  Plaintiff is in error as a matter of fact, because the entities are separate and

7   distinct.  In any event, plaintiff has served only Choice.  Neither Progressive Casualty

8   Insurance Company nor Progressive Direct Holdings, Inc. have been served or have

9   appeared in this case.

10

11      This demurrer will be based on this notice, the attached memorandum of points and

12   authorities, and on all of the records, pleadings and files in this case.

13

14   Dated:  August 12, 2010                    LAW OFFICES OF JULIA AZRAEL

15

16                                By:  _____

17                                     JULIA AZRAEL
                                     Attorneys for Defendants PROGRESSIVE
                                     CHOICE INSURANCE COMPANY

18

19

20

21

22

23

24

25

26

27

28

**DEMURRER**

Defendant Progressive Choice Insurance Company ("Choice") demurs to the Complaint on the following grounds:

**THIRD CAUSE OF ACTION**

1.     The Third Cause of Action, labeled "THIRD CAUSE OF ACTION BREACH OF FIDUCIARY DUTIES By Plaintiff against all Defendants, Does," fails to state facts sufficient to constitute a cause of action against Choice.  (*Code of Civil Procedure* § 430.10(e).)

**FOURTH CAUSE OF ACTION**

2.     The Fourth Cause of Action, labeled "FOURTH CAUSE OF ACTION FRAUD NEGLIGENT MISREPRESENTATION, CONCEALMENT By Plaintiff against All Defendants, Does," fails to state facts sufficient to constitute a cause of action against Choice. (*Code of Civil Procedure* § 430.10(e).)

**FIFTH CAUSE OF ACTION**

3.     The Fifth Cause of Action, labeled "FIFTH CAUSE OF ACTION NEGLIGENCE By Plaintiff against Defendants Progressive, Does," fails to state facts sufficient to constitute a cause of action against Choice.  (*Code of Civil Procedure* § 430.10(e).)

**SIXTH CAUSE OF ACTION**

4.     The Sixth Cause of Action, labeled "SIXTH CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS By Plaintiff against All Defendants, Does," fails to state facts sufficient to constitute a cause of action against Choice. (*Code of Civil Procedure* § 430.10(e).)

1

## SEVENTH CAUSE OF ACTION

2      5.     The Seventh Cause of Action, labeled "SEVENTH CAUSE OF ACTION

3   VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 By Plaintiff against All

4   Defendants, Does," fails to state facts sufficient to constitute a cause of action against

5   Choice. (*Code of Civil Procedure* § 430.10(e).)

6

7

## EIGHTH CAUSE OF ACTION

8      6.     The Eighth Cause of Action, labeled "EIGHTH CAUSE OF ACTION

9   VIOLATION OF CONSUMER LEGAL REMEDIES ACT [Civil Code §§ 1750 *et seq.*

10  1770(1)(16)] By Plaintiff against All Defendants, Does," fails to state facts sufficient to

11  constitute a cause of action against Choice. (*Code of Civil Procedure* § 430.10(e).)

12

13     7.     The Eighth Cause of Action, labeled "EIGHTH CAUSE OF ACTION

14  VIOLATION OF CONSUMER LEGAL REMEDIES ACT [Civil Code §§ 1750 *et seq.*

15  1770(1)(16)] By Plaintiff against All Defendants, Does," fails to state facts sufficient to

16  constitute a cause of action against Choice, because plaintiffs did not comply with *Civil*

17  *Code* § 1780(d). (*Code of Civil Procedure* § 430.10(e).)

18

19

20

21

22

23

24

25

26

27

28

DEMURRER TO COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case arises out of an automobile theft claim.  The complaint alleges that plaintiff was insured under a policy issued by "Progressive" (Complaint, p. 2:20 - 3:2), that "Progressive" is actually three separate entities (Complaint, p. 1:26 - 2:6), that plaintiff's vehicle was stolen (Complaint, p. 4:1-2,) and that Progressive would not pay the claim (Complaint, p. 8:12.).  Plaintiffs then alleges that the failure of Progressive to pay the claim was not just a breach of contract (the first cause of action), but was also in bad faith (the second cause of action).  Plaintiff alleges six additional causes of action against Progressive based on these allegations.

This demurrer addresses only the third through the eighth causes of action.  In the third cause of action, for breach of fiduciary duty, and the eighth cause of action, for violation of the Consumer Legal Remedies Act ("CRLA"), plaintiff has attempted to state causes of action which simply do not lie against an insurer as a matter of law.  (In addition, plaintiff has not filed the affidavit as required by *Civil Code* § 1780(d) in connection with the eighth cause of action.)  Likewise, the seventh cause of action for violation of the Unfair Competition Law, is barred as a matter of law by the Supreme Court's decision in *Moradi-Shalal*.  There is also no law that allows a cause of action for negligent claims handling, as alleged in the fifth cause of action.   The fourth cause of action fails to state a claim.

## 1.  A DEMURRER IS AUTHORIZED BY CODE OF CIVIL PROCEDURE §430.30 IF THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION.

*Code of Civil Procedure* §430.30(a) states that "When any ground for objection to a complaint . . . appears on the face thereof, or from any matter of which the court is required

1  to or may take judicial notice, the objection on that ground may be taken by a demurrer to

2  the pleading."

### 2.  THE THIRD CAUSE OF ACTION, FOR BREACH OF FIDUCIARY DUTIES IS IMPROPER AS A MATTER OF LAW.

Plaintiffs' third cause of action is styled as "Breach of Fiduciary Duties." (Complaint, p. 16:15-17.) The key allegations are in paragraphs 70 and 71, which state:

> "70.     By procuring for Plaintiffs the subject Policy of insurance and thereby representing to Plaintiff that they would procure a policy of insurance that would protect Plaintiffs in the event of vandalism and theft, Defendants, PROGRESSIVE and Does 1 through 100, and each of them, created a fiduciary relationship between themselves and Plaintiffs and said fiduciary relationship existed at all relevant times.

> 63.     By issuing said insurance Policy to Plaintiff and accepting premiums therefore [*sic*], Defendants PROGRESSIVE and Does 1 through 100, created a fiduciary relationship between themselves and Plaintiffs and said fiduciary relationship existed at all relevant times herein." (Complaint, p. 15:1-11.)

Plaintiffs clearly identify "Progressive", i.e., Choice, as an insurer.  In his treatise on insurance law, Justice Croskey says with clarity that **insurers are not fiduciaries**:

> "**Insurers Not Fiduciaries: The insurer-insured relationship is *not* a true 'fiduciary relationship' in the same sense as the relationship between trustee and beneficiary, or attorney and client.** [*Vu v. Prudential Prop. & Cas. Ins. Co.* (2001) 26 C4th 1142, 1150–1151, 113 CR2d 70, 76–77 (citing text); *Tran v. Farmers Group, Inc.* (2002) 104 CA4th 1202, 1212, 128 CR2d 728, 735 (citing text)]
>
> * * *
>
> As noted by one court: '(I)t seems clear that any fiduciary duty existing between an insurer and its insured is *governed by the terms of the insurance contract* in effect between them ... " [*Gibson v. Government Employees Ins. Co.* (1984) 162 CA3d 441, 449–450, 208

1   CR 511, 517 (emphasis added)]"  (Croskey, Heeseman & Popik, Cal.
2   Prac. Guide: Insurance Litigation (The Rutter Group, 2008) ¶11:146 -
    11:154.  (Some emphasis in original, some emphasis added).)
3   (Hereinafter "Croskey.")

4       The demurrer to plaintiff's third cause of action for breach of fiduciary duties should
5   be sustained without leave to amend.  Tort liability is found, if at all, in a cause of action for
6   breach of the implied covenant of good faith and fair dealing.  Choice submits that no
7   amendment can change the fundamental facts or the defect in the third cause of action.

8

9   **3.   THE FOURTH CAUSE OF ACTION DOES NOT STATE A**
10      **CAUSE   OF   ACTION   FOR   FRAUD,   NEGLIGENT**
11      **MISREPRESENTATION OR CONCEALMENT.**

12

13      "The elements of fraud, which give rise to the tort action for deceit, are (1) a
14  misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's
15  reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage."
16  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)  Further, it is
17  well-settled that those elements must be alleged with particularity:

18          "[i]n California, fraud must be pled specifically; general and
19          conclusory allegations do not suffice. [Citations.]  Thus the policy of
            liberal construction of the pleadings ... will not ordinarily be invoked
20          to sustain a pleading defective in any material respect. [Citation.] [¶]
21          **This particularity requirement necessitates pleading facts which**
            **show how, when, where, to whom, and by what means the**
22          **representations were tendered.**"  (*Robinson Helicopter Co., Inc. v.*
23          *Dana Corp.* (2004) 34 Cal.4th 979, 993 (emphasis added, internal
            quotes omitted.

24      The elements of the torts of negligent misrepresentation and concealment are as
25  follows:

26          "Negligent misrepresentation is a form of deceit, the elements of
27          which consist of (1) a misrepresentation of a past or existing material
            fact, (2) without reasonable grounds for believing it to be true, (3)
28          with intent to induce another's reliance on the fact misrepresented, (4)

-7-
DEMURRER TO COMPLAINT

1   ignorance of the truth and justifiable reliance thereon by the party to
2   whom the misrepresentation was directed, and (5) damages." (*Fox v.*
    *Pollack* (1986) 181 Cal.App.3d 954, 962 (internal citation omitted).)

3   "The elements of a cause of action for fraudulent concealment are:
4   '(1) the defendant must have concealed or suppressed a material fact,
    (2) the defendant must have been under a duty to disclose the fact to
5   the plaintiff, (3) the defendant must have intentionally concealed or
    suppressed the fact with the intent to defraud the plaintiff, (4) the
6   plaintiff must have been unaware of the fact and would not have acted
    as he did if he had known of the concealed or suppressed fact, and (5)
7   as a result of the concealment or suppression of the fact, the plaintiff
    must have sustained damage....'" (*Superior Dispatch, Inc. v.*
8   *Insurance Corp. of New York* (2009) 176 Cal.App.4th 12, 33.)

9       It is impossible to identify the species of fraud which plaintiff is alleging here.

10  Indeed, it appears from paragraph 75 of the complaint that plaintiff makes the absurd

11  allegation that "Progressive" procured the insurance policy with itself on behalf of plaintiff.

12  (See, e.g., paragraph 75 of the complaint: "At the time Defendants PROGRESSIVE and

13  DOES 1 through 100 procured the policy for Plaintiffs ....")  Obviously if plaintiff was not

14  part of the transaction to procure the insurance, then he could not possibly have relied on

15  anything anyone said about the policy.  This is nonsensical since an insured applies for

16  insurance, not the other way around.

17

18      The Fourth Cause of Action also talks about the claim process.  Choice submits that

19  there can be no fraud in connection with the procurement of the policy based on things that

20  allegedly took place well after the policy was procured.  Plaintiff could not possibly have

21  relied on things that had not yet taken place.  The bottom line is that a contention that the

22  claim was handled improperly is either breach of contract or bad faith, not fraud, because

23  such a claim simply does not and **cannot** fit within the definition of fraud.  Plaintiff has not

24  pleaded the "**how, when, where, to whom, and by what means the representations were**

25  **tendered**," as required by *Robinson Helicopter*.

26

27      There is also no allegation anywhere in the fourth cause of action that anyone from

28  Choice made any representations that would satisfy the elements of the negligent

- 8 -
DEMURRER TO COMPLAINT

1  misrepresentation or concealment causes of action.   The demurrer should be sustained

2  because there is no attempt at all in the fourth cause of action to plead any of the elements of

3  the causes of action for either negligent misrepresentation or concealment.

4

5  **4.**   <u>**THE FIFTH CAUSE OF ACTION FOR NEGLIGENCE FAILS**</u>

6  <u>**TO STATE A CAUSE OF ACTION.**</u>

7

8      The Fifth Cause of Action alleges that the defendants negligently handled the claim.

9  (Complaint, p. 19, 18-23.)   It is well-settled that there is no cause of action against an

10  insurer for negligent claim handling:  "Sloppy or negligent claims handling does not rise to

11  the level of bad faith.   [Plaintiff] is fully compensated by its breach of contract award

12  together with interest on the delayed or unpaid sums found to be due."   (*Chateau*

13  *Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335,

14  351.) "Indeed, negligence is not among the theories of recovery generally available against

15  insurers   (See Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter

16  [**803]   Group 1998) ¶¶ 12:818, 11:205, pp. 12C-6, 11-48 to 11-49, rev. # 1, 1996)"

17  (*Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 254-255.)

18  Obviously no amendment to the complaint can change the law of the State of California.

19

20  **5.**   <u>**THE   SIXTH   CAUSE   OF   ACTION   FOR   INTENTIONAL**</u>

21  <u>**INFLICTION OF EMOTIONAL DISTRESS FAILS TO STATE**</u>

22  <u>**A CAUSE OF ACTION.**</u>

23

24      In *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051, the Supreme Court explained

25  what must be pleaded to state a cause of action for intentional infliction of emotional

26  distress:

27

28      "A cause of action for intentional infliction of emotional distress
         exists when there is '(1) extreme and outrageous conduct by the

---

-9-

1   defendant with the intention of causing, or reckless disregard of the
    probability of causing, emotional distress; (2) the plaintiff's suffering
2   severe or extreme emotional distress; and (3) actual and proximate
    causation of the emotional distress by the defendant's outrageous
3   conduct.' A defendant's conduct is 'outrageous' when it is so
    'extreme as to exceed all bounds of that usually tolerated in a civilized
4   community.' And the defendant's conduct must be 'intended to inflict
    injury or engaged in with the realization that injury will result.'"

5

6       The verbiage in the sixth cause of action is totally conclusory. There is no allegation

7   of what exactly is supposed to be "extreme and outrageous conduct", or what the defendant

8   did that was so "extreme as to exceed all bounds of that usually tolerated in a civilized

9   community." Equally as important, there are no allegations of the identity of the persons

10  who allegedly did these things, or how they did them. This imprecision is fatal. In

11  *Tomaselli v. Transamerica Insurance Co.* (1994) 25 Cal.App.4th 1766, 1769, the court

12  stated:

13      "On appeal from an order sustaining a demurrer without leave to
        amend, we accept as true all properly pleaded factual allegations
14      (*Blank v. Kirwan* (1985) 39 Cal.3d 311) **but disregard the
        contentions, deductions or legal hyperbole which might surround
15      those allegations**. (*Sklar v. Franchise Tax Board* (1986) 185
        Cal.App.3d 616, 621.)" (Emphasis added.)

16

17      There are no facts from which it can be determined that any action was legally

18  impermissible. The demurrer should be sustained.

19

20  **6.   THE   SEVENTH   CAUSE   OF   ACTION   FOR   VIOLATION   OF**

21  **BUSINESS & PROFESSIONS CODE § 17200 IS BARRED BY THE**

22  **SUPREME COURT'S HOLDING IN *MORADI-SHALAL*.**

23

24      In *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300, the

25  Supreme Court abolished private third party actions for insurer violations of the Unfair

26  Insurance Practices Act. *Moradi-Shalal* was applied to a case like this, where the plaintiff

27  claims that the insurer's claims handling practices violated the Unfair Competition Law

28  (*Business and Professions Code* § 17200 *et seq.*), in *Textron Financial Corp. v. National*

1 | *Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, the Court of Appeal said:

2

3 | > "The specific allegations of wrongful conduct contained in plaintiff's fourth cause of action, using misleading documents and misrepresenting both the terms of the insurance policies and its obligations under them for its own benefit, are the type of activities covered by the UIPA. (Ins. Code, § 790.03, subds. (a) & (h).) In *Safeco Ins. Co. v. Superior Court*, supra, 216 Cal. App. 3d 1491, the court ordered dismissal of an action which included a request for injunctive relief under Business and Professions Code section 17200 et seq. based on an insurer's allegedly unfair claims settlement practices. (216 Cal.App.3d at pp. 1493 - 1494.) 'Though the issue is one of first impression, **we have no difficulty in deciding the Business and Professions Code provides no toehold for scaling the barrier of *Moradi-Shalal* ... . To permit plaintiff to maintain this action would render *Moradi-Shalal* meaningless.**" (Id. at p. 1494.) **Under the foregoing cases, merely alleging these purported acts constitute unfair business practices under the unfair competition law is insufficient to overcome *Moradi-Shalal*.**"  (118 Cal.App.4th at p. 1070-71 (emphasis added.).)

4

5

6

7

8

9

10

11

12

13

14

15 | *Textron* has been followed in numerous cases.[1]  The only California case to criticize

16 | *Textron* is *Zhang v. California Capital Insurance Company* (2009) 178 Cal.App.4th 1081,

17

---

[1] *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1272 ("[I]n consumer UCL action, [the *Textron*] court stated, 'given the Supreme Court's disapproval of the *State Farm* [*Fire & Casualty Co. v. Superior Court*, supra, 45 Cal.App.4th 1093] "amorphous" definition of "unfair" practices and its focus on legislatively declared public policy, reliance on general common law principles to support a cause of action for unfair competition is unavailing'..."); *Banga v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 86619, 15-17 (E.D. Cal. Sept. 22, 2009) ("Section 17200 claim is not cognizable based upon conduct that otherwise fails to give rise to a private right of action under the state Unfair Insurance Practices Act" (citing *Textron*); *R & R Sails, Inc. v. Ins. Co. of the State of Pa.*, 610 F.Supp.2d 1222, 2009 U.S. Dist. LEXIS 26937 (S.D. Cal. 2009), ("[A] party cannot plead around the rule established in *Moradi-Shalal* by 'merely relabeling their cause of action as one for unfair competition.' (citing *Textron*); *Doyle v. Safeco Ins. Co. of Am.*, 2008 U.S. Dist. LEXIS 99159 (E.D. Cal. Nov. 24, 2008) ("[M]erely alleging these purported acts constitute unfair business practices under the unfair competition law is insufficient to overcome *Moradi-Shalal*" (citing *Textron*); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, 2008 U.S. Dist. LEXIS 90590 (N.D. Cal. Nov. 4, 2008) ("Because no private right of action exists under Section 758.5, Section 17200 cannot be used to circumvent *Moradi-Shalal*." (citing *Textron* and many other cases); *Vinci Inv. Co. v. Mid-Century Ins. Co.*, 2008 U.S. Dist. LEXIS

1   but that case is no longer good law because the Supreme Court has granted a petition for

2   review.   (*Zhang v. Superior Court* (2010) 225 P.3d 1080, 105 Cal.Rptr.3d 886, 2010

3   Cal.LEXIS 897.)

4

5       The only other cases which criticize *Textron* are three United States District Court

6   opinions, but each of those cases relies on the now-uncitable decision in *Zhang*.[2]

7   Defendants submit that with *Zhang* decision being a legal nullity, this Court is bound to

8   follow the *Textron* case, which held that the Supreme Court meant what it said in *Moradi*

9   *Shalal*.   The dispute here is about claims handling (Complaint, p. 21:16-23), which is

10  exactly what the UIPA governs and proscribes.   *Moradi-Shalal* made it clear that the

11  Insurance Commissioner, not private litigants, should enforce the prohibitions against unfair

12  claims handling in *Insurance Code* § 790.03(h).   (46 Cal.3d at p. 304.)   Choice submits that

13  its demurrer should be sustained without leave to amend.

14

15  **7.    THE SUPREME COURT HAS STATED *TWICE* THAT THE**

16  **CRLA DOES NOT APPLY TO INSURERS SO THE EIGHTH**

17  **CAUSE OF ACTION MUST FAIL.**

18

19      Plaintiff's eighth cause of action charges Choice with violations of the CRLA.   It

20  appears that the specific allegation is a claimed violation of *Civil Code* § 1770(a)(16).

21  (Complaint, p. 22:3).   That particular section of the CRLA makes the following a violation:

22

23  82628 (C.D. Cal. Sept. 29, 2008) ("California courts have held that California's Unfair
    Insurance Practices Act, Cal. Ins. Code § 790.03, ('UIPA' or 'section 790.03') bars all

24  private actions for unfair competition arising from specific, enumerated unfair claims

25  settlement practices." (citing *Moradi-Shalal* and *Textron*).)

26      [2]   Williams v. Prudential Ins. Co, 2010 U.S. Dist LEXIS 14566 (N.D. Cal, 2010);

27  Burdick v. Union Sec. Ins. Co., 2009 U.S. Dist. LEXIS 121768 (C.D. Cal. Dec. 9, 2009);
    The Raisin Bargaining Association, et al. v. Hartford Casualty Insurance Co. 2010 U.S.

28  Dist. LEXIS 51532.

1  "Representing that the subject of a transaction has been supplied in accordance with a

2  previous representation when it has not."  Plaintiff never explicitly states what specific acts

3  or omissions by the defendant are supposed to have violated that portion of the CRLA.  The

4  closest plaintiff comes is in paragraph 101 of the complaint, which states:

5

6          "101.  Plaintiffs and/or their representatives notified Defendants,
            and each of them, in compliance with Civil Code § 1782(a)(2) of

7          Defendants' failure to provide coverage and services as provided
            by the insurance and sales contracts under Civil Code § 1770 et

8          seq., and demanded Defendants, and each of them, immediately
            comply with all provision of the insurance contract."

9

10        Again, assuming plaintiff's allegations are true, it appears that he claims a breach of

11  the CRLA as a result of the way their claim was handled.  Nonetheless, no cause of action is

12  stated because insurance is neither a tangible good nor a service, and does not come within

13  the purview of the CRLA.

14

15        The California Supreme Court addressed the application of the CRLA to life

16  insurance contracts in *Fairbanks v. Farmers New World Life Insurance Co.* (2009) 46

17  Cal.4th 56, and concluded that life insurance was not a "service" subject to the remedial

18  provisions of the CRLA.  (46 Cal.4th at p. 59.)  The Supreme Court limited its review to life

19  insurance contracts, rather than all insurance contracts, even though the parties and the

20  lower courts all considered the application of the CRLA to insurance in general.  (46 Cal.4th

21  at p. 60, note 1.)  Nonetheless, the Court's analysis applies equally here, in the context of an

22  automobile insurance policy.

23

24        The CRLA contains a lengthy list of practices which are unlawful, but requires that

25  the practices pertain to sales of "goods or services:"

26          "The following unfair methods of competition and unfair or deceptive

27          acts or practices undertaken by any person in a transaction intended to
            result or which results in the sale or lease of goods or services to any

28

---

- 13 -

DEMURRER TO COMPLAINT

1    consumer are unlawful: ..." (*Civil Code* § 1770(a).)

2

3    In *Rand v. Am. Nat'l. Ins. Co.*, 2009 U.S. Dist. LEXIS 64781 (N.D. Cal. July 27,

4    2009)), the Court pointed out that:

5        "The CLRA defines 'goods' as 'tangible chattels bought or leased for
6        use primarily for personal, family, or household purposes,' and
         'services' as 'work, labor, and services for other than a commercial or
7        business use, including services furnished in connection with the sale
         or repair of goods.' CLRA at § 1761(a)-(b)."
8

9    The *Fairbanks* court began its analysis by noting that its decision in *Civil Service*

10   *Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 363, 376, included a statement that

11   "insurance is technically neither a 'good' nor a 'service' within the meaning of the

12   [Consumers Legal Remedies Act.]" which it labeled as dictum. It noted also that federal

13   district courts relied upon that statement in connection with other forms of insurance. (46

14   Cal.4th at p. 60.) The insurance policy at issue in *Civil Service* was an auto policy, as is the

15   case here. The conduct giving rise to the lawsuit was the manner in which a claim was

16   handled, as is the case here. Defendants respectfully submit that the Supreme Court may

17   have overstated the notion of dictum, and that this Court can and should rely on the

18   language of *Civil Service* to sustain the demurrer.

19

20   Even if the court's statement in *Civil Service* were dicta, however, that does not mean

21   that it can be ignored. Rather, it is appropriate to rely on dicta when "no contrary precedent

22   is controlling and where the view commends itself on principle." (9 Witkin, *supra*,

23   "Appeal," § 947, p. 989, and cases cited therein.) If the Court takes the narrow view, that

24   the express language in *Civil Service* that the CRLA did not apply to the auto policy at issue

25   is not controlling because it was dictum, then there is still no precedent in any case or

26   treatise which says that the CRLA applies to auto insurance policies and claims made under

27   such policies. This Court can and should consider how other authorities have treated the

28   pronouncement in *Civil Service*. At least one treatise has adopted the view that the CLRA

- 14 -
DEMURRER TO COMPLAINT

1  does not apply to insurance services. (*See*, Stern, *California Practice Guide*: *Business and*

2  *Professions Code Section 17200 Practice* (The Rutter Group, 2005), Section 10:19.) Thus,

3  even if the statement is dicta, defendant submits that it can, and should be, followed.

4

5  There obviously is additional precedent to guide this Court, namely, *Fairbanks*.

6  Defendant submits that while the context in *Fairbanks* involved life insurance, the analysis

7  applies equally to auto insurance. The *Fairbanks* court noted that life insurance was a

8  contract under which an insurer made certain promises in exchange for payment of

9  premiums, exactly the same as auto insurance. The court then came to the obvious

10  conclusion that such a contract was not a "tangible chattel," and therefore not a "good"

11  under the CRLA. (46 Cal.4th at p. 60.) *Fairbanks* also held that life insurance is not a

12  "service" under the CRLA, because the insurer's contractual obligation to pay is not work or

13  labor, nor is it related to the sale or repair of any tangible chattel, exactly the same as auto

14  insurance. The Supreme Court concluded that life insurance was not a service under the

15  CRLA. That analysis applies equally to auto insurance, because the promise to pay is

16  neither a tangible chattel nor a service.

17

18  The *Fairbanks* court also noted that the legislative history of the CRLA supported its

19  holdings regarding life insurance. Defendants submit that this same analysis shows that

20  auto insurance would not come under the CRLA. *Fairbanks* pointed out that the California

21  Legislature adapted the CRLA from a model law, the National Consumer Act. "The model

22  law expressly applied to insurance because it defined 'services' as including ... (c)

23  *insurance*." (46 Cal.4th at p. 61 (italics in original).) The *Fairbanks* court found a

24  significant change in the legislation adopted in California:

25

26  "Our **Legislature omitted the reference to insurance in the
    definition of "services,"** however, thereby indicating its intent not

27  **to treat all insurance as a service under the Consumers Legal
    Remedies Act.** (See *Hughes Electronics Corp. v. Citibank Delaware*

28

- 15 -

DEMURRER TO COMPLAINT

1  (2004) 120 Cal.App.4th 251, 268 [15 Cal.Rptr.3d 244] [when a statute
2  is modeled on a uniform act, deviation from the uniform act's language is presumed to be deliberate and to reflect a different intent];
3  *Berry v. American Express Publishing, Inc.* (2007) 147 Cal.App.4th 224, 230–231 [54 Cal.Rptr.3d 91] [deleting a specific provision from
4  a proposed law generally reflects an intent that the law not be construed to include the omitted provision]; *San Bernardino Valley*
5  *Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593,
6  604 [51 Cal.Rptr.2d 897] [same].)"  (46 Cal.4th at p. 61-62 (emphasis added.)
7
8      The Supreme Court buttressed its conclusion by noting that the Unruh Act
9  specifically included insurance.  It concluded:
10     "We presume the Legislature was aware of this Unruh Act definition
11  when it set about defining the same word in the Consumers Legal Remedies Act, and the language of the two definitions is similar in
12  many respects, but **the express reference to insurance in the Unruh Act definition is conspicuously absent from the definition in the**
13  **Consumers Legal Remedies Act.** The use of differing language in otherwise parallel provisions supports an inference that a difference in
14  meaning was intended. (*Miklosy v. Regents of University of California*
15  (2008) 44 Cal.4th 876, 896 [80 Cal.Rptr.3d 690, 188 P.3d 629].)
16  Even under the quoted Unruh Act definition of services, moreover, insurance itself is not specifically included, but only 'services
17  furnished … in connection with … the providing of insurance.' (Civ. Code, § 1802.2.)  **Thus, the Unruh Act definition of 'services'**
18  **provides additional evidence that the Legislature did not consider**
19  **insurance itself to be a service for purposes of consumer protection legislation.**" (46 Cal.4th at p. 62 (emphasis added.))
20
21     Finally, the *Fairbanks* court rejected plaintiff's notion that even if the policies are not
22  services, "the work or labor of … insurance company employees in helping consumers … in
23  processing claims are services that are sufficient to bring life insurance within the reach of
24  the [CRLA]." (46 Cal.4th at p. 65.) The Court said:
25
26     "Using the existence of these ancillary services to bring intangible
27  goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition
28  of 'goods' to include only 'tangible chattels.' (Civ. Code, § 1761,

- 16 -
DEMURRER TO COMPLAINT

subd. (a).) **We conclude, accordingly, that the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the Consumers Legal Remedies Act."** (46 Cal.4th at p. 65 (emphasis added.))

Defendant respectfully submits that when the Supreme Court speaks twice on whether the CRLA applies to insurance and concludes each time that it does not, then lower courts an and should follow the clear guidelines laid out in those cases.

**8.    THE EIGHTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT COMPLIED WITH THE PROCEDURAL REQUIREMENTS OF THE CRLA.**

The CRLA has certain unique requirements, one of which is set forth in *Civil Code* § 1780(d). That subsection states that a plaintiff filing under the act "shall" file an affidavit with certain facts regarding venue:

"(d)    ...  In any action subject to this section, concurrently with the filing of the complaint, **the plaintiff shall file an affidavit** stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. **If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."**

Plaintiff served no such affidavit with their complaint, and a search of the Court's website shows no indication that such an affidavit was filed. It appears from paragraph 108 of the complaint that plaintiff somehow believes that he is exempt from this mandatory requirement:

"102.    Pursuant to the requirements of Civil Code § 1780(c) [*sic*], Plaintiff states that this claim is filed within the County of Los Angeles, wherein Defendant PROGRESSIVE does business. Plaintiff

- 17 -

DEMURRER TO COMPLAINT

has complied with all other provisions of said statute.   This is Plaintiff's affidavit regarding venue as attested to by Plaintiff's counsel pursuant to case filing documents attached hereto and incorporated by reference."

The reference in paragraph 108 to *Civil Code* § 1780(c) is obviously a typographical error or a failure to update a form pleading.  (That code section was recently revised, and what used to be subsection (c) is now subsection (d).)  The typographical error is not the point, however.  The point is that in fact, a signature by plaintiff's counsel on case filing documents is not the same as a signature by plaintiff himself providing the factual bases for his claims.  The language in *Civil Code* § 1780(d) is mandatory.  It says plaintiff "shall" file an affidavit, and that the Court "shall" dismiss the action if no affidavit is filed.  The statute surely does not give plaintiff the option of using its counsel's signature on "case filing papers" instead of his own signature under oath.

## CONCLUSION

Defendant submits that the pleading deficiencies in the third, fourth, fifth, sixth seventh and eighth causes of action cannot be cured by amendment, and asks the Court to sustain the demurrer as to those causes of action without leave to amend.

Dated: August 12, 2010

LAW OFFICES OF JULIA AZRAEL

By: _____
JULIA AZRAEL
Attorneys for Defendant PROGRESSIVE
CHOICE INSURANCE COMPANY.

DEMURRER TO COMPLAINT

# PROOF OF SERVICE

STATE OF CALIFORNIA    )
                      ) ss.:

COUNTY OF LOS ANGELES  )

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

      On August 12, 2010, I served on interested parties in said action the within:

**NOTICE OF HEARING ON DEMURRER AND DEMURRER TO COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES**

**__X__**     **BY MAIL:** By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

**_____**     **BY PDF VIA EMAIL:** I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

**_____**     **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

**_____**     **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

**_____**     **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

**__X__**     **[State]**     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**_____**     **[Federal]**     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on August 12, 2010, at North Hollywood, California.

_____       _____
     Kristen Elze                                 (Signature)
  (Type or print name)

DEMURRER TO COMPLAINT

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No.  BC442039

Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523
Phone: (818) 779-1720
Fax: (818) 779-1730
randandlewislaw@gmail.com  - EMAIL

Attorneys for Plaintiff

DEMURRER TO COMPLAINT

1  Julia Azrael (Bar No. 109049)
   John S. Curtis (Bar No. 50350)
2  Adam S. Feldman (Bar No. 262167)
   **LAW OFFICES OF JULIA AZRAEL**
3  5200 Lankershim Boulevard, Suite 850
   North Hollywood, California 91601
4  Telephone:  (818) 766-5177
   Facsimile:  (818) 766-5047

5  Attorneys for Defendant
6  PROGRESSIVE CHOICE INSURANCE COMPANY

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **FOR THE COUNTY OF LOS ANGELES**

10

11 HAGOP BEKHLOYAN,                        )  CASE NO. BC442039
                                           )
12        Plaintiff,                       )  Case Assigned to the Honorable Abraham
                                           )  Khan – Dept. 51
13        vs.                              )
                                           )  [Complaint Filed:  March 26, 2010]
14 PROGRESSIVE CHOICE INSURANCE            )
   COMPANY, PROGRESSIVE                    )  **NOTICE RE CHANGE IN STATUS OF**
15 CASUALTY INSURANCE COMPANY,             )  **CITATION IN DEFENDANT'S**
   PROGRESSIVE DIRECT HOLDING,             )  **DEMURRER TO PLAINTIFF'S**
16 INC., DOES 1 through 100;               )  **SEVENTH CAUSE OF ACTION FOR**
                                           )  **VIOLATION OF BUSINESS &**
17        Defendants.                      )  **PROFESSIONS CODE § 17200**
   _____       )
18                                            Date:      September 27, 2010
                                              Time:      9:00 a.m.
19                                            Dept.:     51

20

21                                            Discovery Cutoff:   None
                                              Motion Cutoff:      None
22                                            Trial Date:         None

23 TO THE PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

24

25        PLEASE TAKE NOTICE that the status of a citation has changed since defendant

26 PROGRESSIVE CHOICE INSURANCE COMPANY ("Progressive") filed its demurrer to

27 the Complaint.  In footnote 2 at page 12 of its memorandum of points and authorities,

28

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 18 2010

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
    RAUL SANCHEZ

COPY

1   Progressive stated that the *Zhang* case (*Zhang v. Superior Court* (2010) 225 P.3d 1080, 105

2   Cal.Rptr 3d 886, 2010 Cal.LEXIS 897) was fully briefed before the California Supreme

3   Court.   According to Supreme Court's website, on July 23, 2010, the Court granted the

4   application of Italian Marble and Tile to file an amicus curiae brief in support of the

5   petitioner.   Any party wishing to answer the amicus brief may do so within 20 days of the

6   filing of the brief.   Accordingly, the statement in the footnote that the *Zhang* matter is fully

7   briefed is no longer correct.

8

9   Dated:  August 17, 2010                      LAW OFFICES OF JULIA AZRAEL

10

11  By: _____

12      JULIA AZRAEL
        Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )   ss.:
COUNTY OF LOS ANGELES  )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

On August 18, 2010, I served on interested parties in said action the within:

**NOTICE RE CHANGE IN STATUS OF CITATION IN DEFENDANT'S DEMURRER TO PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200**

__X_    **BY MAIL:** By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

_____    **BY PDF VIA EMAIL:** I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

_____    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

_____    **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

_____    **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

__X__    **[State]**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____    **[Federal]**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 18, 2010, at North Hollywood, California.

CHRISTINE M. TINKER
(Type or print name)                    (Signature)

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No.  BC442039

Gary Rand & Suzanne E. Rand-Lewis          Attorneys for Plaintiff
Professional Law Corporations
5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523
Phone: (818) 779-1720
Fax: (818) 779-1730
randandlewislaw@gmail.com  - EMAIL

NOTICE OF CHANGE OF STATUS OF CITATION IN DEMURRER

1 | Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
2 | Suzanne E. Rand-Lewis, Esq., State Bar No. 126219
5990 Sepulveda Boulevard, Suite 330
3 | Sherman Oaks, California 91411-2523
(818) 779-1720
4

REC'D SEP 15 2010

5 | Attorney for Plaintiff, Hagop Bekhloyan

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11 | HAGOP BEKHLOYAN,                         CASE NO. BC442039

12 |        Plaintiff;                        Assigned for all purposes to
                                             Hon. Abraham Khan
13 | vs.                                      Department 51

14 | PROGRESSIVE CHOICE INSURANCE             **PLAINTIFF'S OPPOSITION TO**
COMPANY, PROGRESSIVE CASUALTY               **DEFENDANT PROGRESSIVE CHOICE**
15 | INSURANCE COMPANY,                       **INSURANCE COMPANY'S**
PROGRESSIVE DIRECT HOLDING, INC.,           **DEMURRER TO COMPLAINT;**
16 | and DOES 1 through 100;                  **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES IN SUPPORT**
17 |        Defendants.                       **THEREOF**

18 |                                          Date:   September 27, 2010
                                             Time:   8:30 a.m.
19 |                                          Dept.:  51

20 |                                          Complaint Filed:   July 22, 2010
                                             Trial Date:        None Set
21

22 |        COMES NOW Plaintiff, HAGOP BEKHLOYAN (hereinafter referred to as "Plaintiff"), and

23 | submits his Opposition to Defendant, PROGRESSIVE CHOICE INSURANCE COMPANY's

24 | (hereinafter referred to as "Defendant"), Demurrer to Complaint.

**I.     INTRODUCTION**

25 |        This case arises out of the theft of Plaintiff's 2003 Ford Expedition.  Moving Defendant

26 | issued a policy of insurance on the vehicle to Plaintiff.  Plaintiff's vehicle was stolen and Plaintiff

27 | promptly notified Defendant of the loss.  Thereafter, Defendant wrongfully denied Plaintiff's claim,

28

1

1    and failed and refused to issue payment on same.

2        Plaintiff's Complaint alleges the following causes of action against this demurring

3    Defendant: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair

4    Dealing; (3) Breach of Fiduciary Duties; (4) Fraud, Negligent Misrepresentation and Concealment;

5    (5) Negligence; (6) Intentional Infliction of Emotional Distress; (7) Violation of Business &

6    Professions Code §17200; and (8) Violation of Consumer Legal Remedies Act [Civil Code §1750,

7    et seq]. Defendant brings its Demurrer to Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth

8    causes of action **only**. "A demurrer is treated as admitting the truthfulness of properly pleaded

9    factual allegations of the complaint." Porten v. University of San Francisco (1976) 64 Cal.App.3d

10   825, 827. Thus, to the extent that Defendant fails to challenge Plaintiff's First cause of action for

11   Breach of Contract, and Second cause of action for Breach of the Implied Covenant of Good Faith

12   and Fair Dealing, Defendant **admits** same are properly pled against it.

13   **II.    POINTS AND AUTHORITIES**

14       **A.    Defendant's Demurrer Must Be Overruled In Its Entirety Due To Defendant's Failure To Comply With California Rule Of Court, Rule 3.1113(i).**

15   California Rules of Court, Rule 3.1113(i) states:

16       If any authority other than California cases, statutes, constitutional

17       provisions, or state or local rules is cited, a copy of the authority **must**

18       be lodged with the papers that cite the authority and tabbed as

19       required by rule 3.1110(f).  If a California case is cited before the

20       time it is published in the advance sheets of the Official Reports, a

21       copy of that case **must** also be lodged and tabbed as required by rule

22       3.1110(f).  (Emphasis added.)

23       Defendant cites to, and relies upon, federal case law in support of its Demurrer. Defendant

24   fails to provide the court or Plaintiff with the requisite copies of those authorities in direct violation

25   of California Rules of Court, Rule 3.1113(i).  Rule 3.1113(i) is **mandatory**, thus Defendant's

26   Demurrer must be overruled in its entirety.

27   / / /

28   / / /

2

PLAINTIFF'S OPPOSITION TO DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY'S DEMURRER TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**B.**     **All Of Plaintiff's Causes Of Action Are Properly Pled.**

Defendant labors under the misconception that a Demurrer is the equivalent of a Motion for Summary Judgment.   Throughout its papers, Defendant seeks to have this court grant summary adjudication on the issues raised in the Complaint, rather than determine the sufficiency of the Complaint.  A Demurrer "tests the pleading alone, and not the evidence or other extrinsic matters, it lies only where the defects appear on the face of the pleading.  Objections that do not so appear are raised by the answer." 5 Witkin California Procedure (4th Ed.) §900.

Defendant is essentially asking the court to grant summary adjudication in its favor with regard to the challenged causes of action in Plaintiff's Complaint.  Such a determination is patently inappropriate at this stage of the pleadings.  Accordingly, Defendant's Demurrer must be overruled.

**C.**     **Plaintiff's Complaint States Facts Sufficient To Plead Breach Of Fiduciary Duties.**

Defendant seeks to have this court rule, **as a matter of law**, that Plaintiff cannot state facts sufficient to plead breach of fiduciary duty.  Such a determination is patently improper via Demurrer, and can only be raised via a motion for summary judgment.  In Defendant's rush to seek summary adjudication, Defendant completely ignores the fact that the California Supreme Court has stated that, "**an insurer holds itself out as a fiduciary**.   With the public trust must go private responsibility consonant with the trust, including qualities of decency and humanity **inherent in the responsibility of a fiduciary**." Frommoethelydo v. Fire Ins. Exchange (1986) 42 Cal.3d 208, 215 (emphasis added); see also, Egan v. Mutual of Omaha Ins. Co. (1979) 24 Cal.3d 809, 820. Defendant fails to challenge the factual sufficiency of Plaintiff's allegations vis-a-vis his breach of fiduciary cause of action.  As Defendant must admit the allegations of the Complaint as true, Porten, supra, 64 Cal.App.3d at 827, and Plaintiff has pled the existence of a fiduciary duty, breach of that duty and resultant damages (see, Complaint, paragraphs 69-73), Defendant's Demurrer must be overruled.

/ / /

/ / /

/ / /

/ / /

**D.** **Plaintiff's Complaint States Facts Sufficient To Plead Fraud/Negligent Misrepresentation/Concealment.**

**1.** **Fraud and Negligent Misrepresentation**

To state a claim for fraud Plaintiff must allege misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance and damages. Agricultural Insurance Co. v. Superior (1999) 70 Cal.App.4th 385, 403. A claim for negligent misrepresentation differs only "in the element of 'scienter,'" that is, Plaintiff need only plead "that the representation was made without reasonable ground for believing it to be true." 5 Witkin, Cal.Proc. (4th ed. 1997) Pleading, §683, p. 141. Plaintiff's Complaint meets all these requirements.

Plaintiff's Complaint alleges that Defendant: failed to disclose and concealed material facts concerning the insurance policy, and Defendant's intent to abide by the terms thereof; concealed material facts regarding Defendant's routine denial of claims for theft even when said theft was, as here, a covered loss; concealed material facts regarding the qualifications and competence of Defendant's inspectors and adjusters and their ability to properly evaluate and appraise Plaintiff's claim and damages; concealed that Defendant would limit, reject, deny and underpay Plaintiff's claims based upon fabricated and improper bases, incomplete, biased and improper claims handling; etc. (see, Complaint, paragraphs 5-35, 74-76, 78-79) (misrepresentation); Defendant knew at the time it made these representations and concealment that same were false (scienter) see, Complaint, paragraphs 77, 80; Defendant made the representations and concealment in order to obtain Plaintiff's premium payments and thereafter to limit Defendant's financial responsibility (intent to induce reliance) see, Complaint, paragraphs 77, 80; Plaintiff reasonably relied upon Defendant's representations including paying premiums, and suffered damages therefrom. See, Complaint, paragraphs 81-84. Plaintiff's Fourth cause of action clearly sets forth sufficient factual allegations to state all required elements of said cause of action. Accordingly, Defendant's Demurrer must be overruled.

**2.** **Concealment**

The elements of a claim for fraud by concealment are as follows:

(1) the defendant must have concealed or suppressed a material fact,

///

4

1    (2) the defendant must have been under a duty to disclose the fact to

2    the plaintiff, (3) the defendant must have intentionally concealed or

3    suppressed the fact with the intent to defraud the plaintiff, (4) the

4    plaintiff was unaware of the fact and would not have acted as he did

5    if he had known of the concealed or suppressed fact, and (5) as a

6    result of the concealment or suppression of the fact, the plaintiff must

7    have sustained damage. <u>Marketing West, Inc. v. Sanyo Fisher (USA)</u>

8    <u>Corp.</u> (1992) 6 Cal.App.4th 603, 612-613.

9        Plaintiff's Complaint contains all required elements of this cause of action. First, Plaintiff

10 alleges Defendant concealed material facts by representing to Plaintiff that it would pay covered

11 losses to Plaintiff promptly and fairly, would pay all damages due under the policy, and that there

12 would be no arbitrary or random acts including wrongfully denying Plaintiff's claim, when in fact

13 Defendant's true intent was to delay, limit, restrict and deny insurance coverage in case of any

14 incident, which facts Defendant had a duty to disclose. <u>See</u>, Complaint, paragraphs 74-79.  Next,

15 Plaintiff alleges Defendant concealed these facts with the intent to defraud Plaintiff. <u>See</u>, Complaint,

16 paragraphs 74-79.  Further, Plaintiff alleges he was unaware of the concealed facts and would not

17 have relied upon Defendant's conduct and statements had he known the true facts. <u>See</u>, Complaint,

18 paragraph 81.  Finally, Plaintiff alleges damages resulting from Defendant's concealment of the

19 facts. <u>See</u>, Complaint, paragraphs 81-84.  As Plaintiff has properly alleged all required elements of

20 a cause of action for Fraud by Concealment, Defendant's Demurrer must be overruled.

21    **E.    Plaintiff's Complaint States Facts Sufficient To Plead Negligence.**

22        The basic elements of a negligence action are: (1) The defendant had a legal duty to conform

23 to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of

24 conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4)

25 the plaintiff was damaged. <u>Ladd v. County of San Mateo</u> (1996) 12 Cal.4th 913, 917.  Moreover,

26 <u>Civil Code</u> §1714(a) provides, in part: "Every one is responsible, not only for the result of his willful

27 acts, but also for an injury occasioned to another by his want of ordinary care or skill in the

28 management of his property or person, except so far as the latter has, willfully, or by want of

5

PLAINTIFF'S OPPOSITION TO DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY'S DEMURRER TO COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    ordinary care, brought the injury upon himself."

2          Plaintiff's Complaint alleges that Defendant owed Plaintiff a duty of due care, breach of that

3    duty, and damages resulting therefrom. See, Complaint, paragraphs 85-89. These allegations must

4    be taken as true, Porten, supra, 64 Cal.App.3d at 827, and Defendant does not challenge same.

5    Accordingly, as Plaintiff has properly alleged all elements of a negligence cause of action,

6    Defendant's Demurrer must be overruled.

7          Defendant's argument that Plaintiff cannot recover for negligence since that claim arises out

8    of his contract claim is without merit. California law specifically allows Plaintiff to plead in the

9    alternative and to seek recovery for his damages **under all possible theories**. See, 4 Witkin

10   California Procedure (4th Ed. 1997), Pleading §363 ("'Inconsistent counts' in a complaint usually

11   constitute a pleading of the *same cause of action* according to *different legal theories* or different

12   versions of ultimate facts. This was permissible at common law, and is also allowed under the

13   codes." Italics in original.) This is clearly what Plaintiff has done in this instance. While Plaintiff

14   may be able to recover contractual damages for Defendant's breach of contract, Plaintiff is certainly

15   allowed to allege a cause of action for Negligence, and seek all allowable remedies pursuant to same.

16   Defendant's "Demurrer" is nothing more than a thinly veiled attempt to obtain summary adjudication

17   on Plaintiff's Fifth cause of action, a determination that is patently improper. Accordingly,

18   Defendant's Demurrer must be overruled.

19       **F.**    **Plaintiff's Complaint States Facts Sufficient To Plead Intentional Infliction Of Emotional Distress.**

20          The elements of the tort of intentional infliction of

21   emotional distress are: '(1) extreme and outrageous

22   conduct by the defendant with the intention of

23   causing, or reckless disregard of the probability of

24   causing, emotional distress; (2) the Plaintiffs'

25   suffering severe or extreme emotional distress; and (3)

26   actual and proximate causation of the emotional

27   distress by the defendant's outrageous conduct.'

28   Christensen v. Superior Court (1991) 54 Cal.3d 868,

903, internal citation omitted.

The allegations of Plaintiff's Complaint clearly meet all requisite elements. <u>See</u>, Complaint paragraphs 5-35. This conduct clearly "exceed[s] all bounds of that usually tolerated in a civilized community," <u>McGough v. University of San Francisco</u> (1989) 214 Cal.App.3d 1577, 1587. Accordingly, Defendant's Demurrer must be overruled. Defendant ignores the factual allegations of Plaintiff's Complaint, and argues Plaintiff's charging allegations of the Sixth cause of action are conclusory. Defendant's argument has no merit as the charging allegations clearly incorporate all factual allegations set forth previously in the Complaint. <u>See</u>, Complaint, paragraph 90. Accordingly, Defendant's Demurrer must be overruled.

**G.     Plaintiff's Complaint States Facts Sufficient To Plead Defendant's Violation of Business and Professions Code §17200.**

<u>Business and Professions Code</u> §17200 prohibits, "any unlawful, unfair or fraudulent business act or practice." Plaintiff's Complaint clearly alleges that Defendant engaged in prohibited acts and/or practices by misrepresenting coverage under the policy; failing to disclose pertinent facts regarding arbitrary or random acts of refusal, limitation, restriction and denial of Plaintiff's claim; withholding the fact that decisions would be made based on pretext rather than skill or competence, etc. <u>See</u>, Complaint, paragraphs 5-35, 94-95, 97. These allegations are clearly sufficient to state a violation of <u>Business and Professions Code</u> §17200. Accordingly, Defendant's Demurrer must be overruled.

Further, a "claim for injunctive or restitutive relief under the UCA can be based on *any* fraudulent or unlawful or unfair business activity," including common law negligence, fraud or breach of the implied covenant of good faith. <u>State Farm Fire & Casualty Company v. Superior Court</u> (1996) 45 Cal.App.4th 1093, 1105, 1107 (italics in original); <u>Cel-Tech Communications v. L.A. Cellular</u> 20 Cal.4th 163. Plaintiff's Complaint properly states causes of action for Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligence and Fraud against Defendant. As Plaintiff's cause of action for Violation of <u>Business and Professions Code</u> §17200 is based upon this **same conduct and fraud**, it is properly pled and Defendant's Demurrer must be overruled.

/ / /

/ / /

7

H.    **Plaintiff's Complaint States Facts Sufficient To Plead Violation Of The Consumer Legal Remedies Act [Civil Code §1750, Et Seq.**

Defendant's claim that the CLRA does not apply to insurance is simply wrong.  The Consumer Legal Remedies Act ("CLRA") "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Civil Code §1760. "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person...." Civil Code §1780.

Contrary to Defendant's argument, the California Supreme Court has not "stated twice" that the CLRA does not apply to insurance.  Insurance, and the provision thereof is a service, which is indeed regulated by the CLRA, as opined by the California Supreme Court in Broughton v. CIGNA Healthplans of California (1999) 21 Cal.4th 1066.

The case of Broughton involved a claim under the CLRA that the defendant insurer engaged in deceptive and misleading advertising of its insurance coverage.  In deciding the issue of whether CLRA claims are arbitrable, the California Supreme Court noted that "[a]dvertising goods or services with intent not to sell them as advertised" as stated in Civil Code (CLRA) §1770(a)(9) is an "actionable ... deceptive business practice[]." Broughton, supra, 21 Cal.4th at 1077.

In the instant case, like Broughton, Plaintiff brings his claim for violation of the CLRA based on Defendant's deceptive and misleading advertising of its insurance coverage, in addition to its deceptive and misleading provision of services (competent inspection, claims handling, etc.) during the pendency of Plaintiff's claim.  As with Broughton, Plaintiff's CLRA claim is properly before the court and Defendant's Demurrer must be overruled.

Defendant's reliance on Fairbanks v. Farmers New World Life Insurance Co. (2009) 46 Cal.4th 56, a case specifically limited to life insurance, is misplaced.  As noted, the California Supreme Court in Fairbanks specifically limited its review to life insurance, not all insurance, when it determined that life insurance is not a "service" subject to the CLRA.  The Court did not address all insurance, or automobile insurance as is the subject matter of the instant litigation.  Defendant's attempt to argue that the limited scope of the Fairbanks holding is equally applicable to automobile

8

insurance is specious, at best. Equally specious is Defendant's attempt to claim that **dicta** in Civil Service Employees Ins. Co. v. Superior Court (1978) 22 Cal.3d 362, **a case that did not even involve a CLRA claim**, is not dicta. In Civil Service Employees, the court was faced with the determination of (1) whether the trial court properly granted partial summary judgment prior to all class members being notified of the class action suit and (2) whether the trial court violated the defendant's due process rights by ordering it to bear the initial cost of notifying class members of the pendency of the action. Neither of these issues even remotely involved a CLRA claim. In fact, the only reason the Civil Service Employees court mentioned the CLRA was to support its holding in Vasquez v. Superior Court (1971) 4 Cal.3d 800, that "the class action procedures prescribed by the Consumer Legal Remedies Act could and should appropriately be utilized by trial courts in all class actions." Civil Service Employees, *supra*, 22 Cal.3d at 376. Accordingly, Defendant's arguments are simply inapplicable and Defendant's Demurrer must be overruled.

Finally, Defendant's assertion that Plaintiff has not complied with the procedural requirements of the CLRA is without merit. Paragraph 102 of the Complaint states:

> Pursuant to the requirements of Civil Code §1780(c) Plaintiff states that this claim is filed within the County of Los Angeles, wherein Defendant PROGRESSIVE does business. Plaintiff has complied with all other applicable provisions of said statute. This is Plaintiff's affidavit regarding venue as attested to by Plaintiff's counsel pursuant to case filing documents attached hereto and incorporated herein by reference.

This is more than adequate to meet the procedural requirements of the CLRA with regard to the affidavit regarding venue, and Defendant cites no authority to the contrary. Accordingly, Defendant's Demurrer must be overruled.

/ / /

/ / /

/ / /

/ / /

1  **III.    CONCLUSION**

2          For the reasons set forth above, Plaintiff respectfully requests that this court overrule

3  Defendant's Demurrer in its entirety.  In the event that this court deems Defendant's Demurrer is

4  proper and sustains any portion of same, Plaintiff respectfully requests leave to amend.

5  DATED: September 14, 2010

6                                          GARY RAND & SUZANNE E. RAND-LEWIS
                                           PROFESSIONAL LAW CORPORATIONS
7

8                                          BY:  _____

9                                               SUZANNE E. RAND-LEWIS
                                                Attorney for Plaintiff
10                                              Hagop Bekhloyan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY'S DEMURRER TO COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

     I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is located in the county where the mailing described below took place. I am over the age of 18 years and am not a party to this action.

     On September 14, 2010, I served the following document(s) entitled: **PLAINTIFF'S OPPOSITION TO DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY'S DEMURRER TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in this action as follows:

Julia Azrael, Esq.                     Attorney for Defendant,
Law Offices of Julia Azrael          Progressive Choice Insurance Company
5200 Lankershim Boulevard
Suite 850
North Hollywood, California 91601
Fax: (818) 766-5047

☒  **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to OVERNITE EXPRESS for delivery to the above address(es).

    **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

    **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

☒  [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    [Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 14, 2010, at Sherman Oaks, California.

                                       Veronica Campos

1  Julia Azrael (Bar No. 109049)
   John S. Curtis (Bar No. 50350)
2  Adam S. Feldman (Bar No. 262167)
   **LAW OFFICES OF JULIA AZRAEL**
3  5200 Lankershim Boulevard, Suite 850
   North Hollywood, California 91601
4  Telephone: (818) 766-5177
   Facsimile: (818) 766-5047
5
   Attorneys for Defendant
6  PROGRESSIVE CHOICE INSURANCE COMPANY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 20 2010

John A. Clarke, Executive Officer/Clerk

BY _____ Deputy
Glorietta Robinson

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **FOR THE COUNTY OF LOS ANGELES**

10

11  HAGOP BEKHLOYAN,                    ) CASE NO. BC442039
                                        )
12              Plaintiff,              ) Case Assigned to the Honorable Abraham
                                        ) Khan – Dept. 51
13        vs.                           )
                                        ) [Complaint Filed: March 26, 2010]
14  PROGRESSIVE CHOICE INSURANCE        )
    COMPANY, PROGRESSIVE CASUALTY       ) **REPLY IN SUPPORT OF DEMURRER**
15  INSURANCE COMPANY, PROGRESSIVE      ) **TO COMPLAINT;**
    DIRECT HOLDING, INC., DOES 1 through)
16  100;                                ) **MEMORANDUM OF POINTS AND**
                                        ) **AUTHORITIES;**
17              Defendants.             )
                                        ) **DECLARATION OF JULIA AZRAEL**
18  ─────────────────────────────────  )

19                                      Date:        September 27, 2010
                                        Time:        8:30 a.m.
20                                      Dept:        51

21                                      Discovery Cutoff:   None
                                        Motion Cutoff:      None
22                                      Trial Date:         None

23  TO THE PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

24

25       Defendant Progressive Choice Insurance Company ("Progressive") hereby submits its reply in

26  support of its demurrer to the third through eighth causes of action of the complaint of plaintiff Hagop

27  Bekhloyan.

28

**INTRODUCTION**

This case arises out of an automobile theft claim.  The complaint alleges that plaintiff was insured under a policy issued by "Progressive" (Complaint, p. 2:20 - 3:2), that "Progressive" is actually three separate entities (Complaint, p. 1:26 - 2:6), that plaintiff's vehicle was stolen (Complaint, p. 4:1-2,) and that Progressive would not pay the claim (Complaint, p. 8:12.).  Plaintiff alleges that the failure of Progressive to pay the claim was not just a breach of contract, but was also in bad faith (the first and second cause of action).  Plaintiff then tries to add six more causes of action, but fails.

1.   **PLAINTIFF'S OPPOSITION IS FUNDAMENTALLY INCORRECT.**

Plaintiff's first argument is that the demurrer should be overruled in its entirety because Progressive did not attach some Federal cases.  Plaintiff is wrong.  Progressive referred to certain Federal cases in connection with the demurrer to the seventh cause of action (for violation of *Business & Professions Code* § 17200, and then only to demonstrate that those cases were inapplicable. Progressive does not believe there is any reason for the Court to consider those Federal cases.

Plaintiff cites no authority for the proposition that the failure to attach inapplicable Federal cases which applied to the attack on one of six causes of action means that the entire demurrer must be overruled, and obviously there is none.

Plaintiff next accuses the defendant of assuming that a demurrer is the equivalent of a motion for summary judgment.  (See, e.g., Opposition, p. 3:2-3, 3:14.)  Plaintiff is wrong again.  The words "summary judgment" are not mentioned anywhere in the demurrer.  Progressive asks the Court to test the pleading alone (Opposition, p. 3:5.) because the complaint is not properly pleaded.

A.   **An Insurer Does *Not* Have A Fiduciary Duty.**

Plaintiffs cite *Frommoethelydo v. Fire Ins. Exchange* for the proposition that an insurer has a

1   fiduciary duty to its insured.  (Opposition, p. 3:18.)  *Frommoethelydo* has <u>never</u> been followed for that

2   proposition.  The only three cases to refer to *Frommoethelydo's* discussion of a fiduciary duty point

3   out that it is purely dictum.  In *Henry v. Associated Indemnity Corp* (1990) 217 Cal.App.3d 1405,

4   1418, the Court noted that "We also find no support in case law, other than dicta in a few Supreme

5   Court cases, which would support such a [breach of fiduciary duty] theory as to the insurers."  The

6   other two Federal cases and are not binding on this court.[1]

7

8        The demurrer to the third cause of action for breach of fiduciary duties referred to *Vu v.*

9   *Prudential Prop. & Cas. Ins. Co.* (2001) 26 Cal.4th 1142, 1150 - 1151, a Supreme Court decision

10  holding that an insurer has no fiduciary duty.  That case is 100% on point and dispositive.  Plaintiff's

11  opposition, however, makes no reference at all to the *Vu* case.  Progressive submits that the law is quite

12  clear:  An insurer has no fiduciary duty to the insured.  Although plaintiff argues that he has "pled the

13  existence of a fiduciary duty" (Opposition, p. 3:22.), the Supreme Court says that no such fiduciary

14  duty exists.  The demurrer to the third cause of action should therefore be sustained.

15

16        **B.**     <u>**Plaintiffs' Fraud and Negligent Misrepresentation Causes of Action Fail On**</u>

17             <u>**Numerous Grounds.**</u>

18        Plaintiff argues that his complaint adequately pleads fraud.  He purports to show the alleged

19  misrepresentation by citing the Court to approximately 30 paragraphs of the complaint (Opposition, p.

20  4:16-22), but never actually points out what facts in the complaint constitute these alleged

21  misrepresentations.  Similarly, plaintiff never explains who made the misrepresentations, where they

22  were made, and to whom they were made.  Plaintiff likewise never discusses the *Robinson Helicopter*

23  case, which points out that these factual allegations are necessary in order to satisfy the pleading

24  requirements for fraud.

---

25        [1]   Progressive does not rely on these other Federal cases, but nonetheless attaches them.  For
    plaintiff's edification, they are *Strausa v. State Farm Mut. Auto. Ins. Co.*, 1996 U.S. App. LEXIS 5555,
26  8-9 (9th Cir. Cal. Mar. 11, 1996) which noted that since *Frommoetheyldo*, "California intermediate
27  courts have held that the relationship between insurer and insured is not a true fiduciary relationship",
    and *Casey v. Metro. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 16494, 33-35 (E.D. Cal. Feb. 23, 2010)
28  which said quite succinctly that "a separate claim does not exist for breach of a fiduciary duty."

1     Plaintiff's argument in his opposition papers is much clearer than the facts in the complaint.

2   He claims that at the precise time he bought the insurance, Progressive knew that he would submit this

3   very claim, and that Progressive knew that it would deny the claim. (Opposition, p. 4:9-21.)  That of

4   course is a novel theory, and one which plaintiff is obviously free to make.  The law, however, requires

5   him to plead facts, not conclusions, to state a claim of fraud, and this completes the circle back to the

6   *Robinson Helicopter* case.  What was the specific representation?  Plaintiff does not say where this is

7   alleged in the complaint.  What was false about it?  Who made it?  Where and when was it made?  The

8   page and line where these specific allegations may be found in the complaint are not mentioned in the

9   opposition papers.  The reason for that omission is obvious, in that there are no such allegations.

10

11     It is axiomatic that a fraud allegation must begin with a misrepresentation made to plaintiff.  It

12  appears that plaintiff claims that he never would have procured the insurance but for all the

13  misrepresentations.   Paragraph 76 of the complaint, in the cause of action for fraud, negligent

14  misrepresentation and concealment, specifically alleges that the policy was procured by someone other

15  than plaintiff: "At the time Defendants PROGRESSIVE and DOES 1 through 100 procured the policy

16  for Plaintiffs...."  If the defendants, rather than plaintiff, procured the policy, then how could there be a

17  misrepresentation to plaintiff in connection with the procuring of the policy?  Certainly there can be no

18  reliance on anything said when the policy was procured, because the complaint says plaintiff was not

19  involved in procuring the insurance.   In addition, as argued in the demurrer and ignored in the

20  opposition, the complaint draws numerous conclusions about the claim process, which by definition

21  cannot form the basis for fraud which ostensibly occurred long after the policy was purchased.

22

23     Neither this Court nor the defendant should have to guess as to the basis for the fraud, negligent

24  misrepresentation and concealment causes of action (and the punitive damage allegations which ride

25  along with them).   Progressive respectfully submits that the fourth cause of action is hopelessly

26  confused, self-contradictory and based on conclusions.  The demurrer should be sustained.

27

28

Progressive's Reply in Support of Demurrer to Complaint

C.   **There Is No Authority For A Cause Of Action For Negligent Claims Handling.**

Plaintiff argues generally that he has alleged the elements of a cause of action for negligence. (Opposition, p. 5:21 - 6:18.)  Plaintiff cites to no case, however, in which any court in any jurisdiction has held that an insurer may be held liable to its insured for negligent claims handling.  Plaintiff similarly makes no comment whatsoever about the authorities cited in the demurrer which specifically state that no such cause of action exists.

Progressive cited *Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 351 for the proposition that "Sloppy or negligent claims handling does not rise to the level of bad faith.  HOA is fully compensated by its breach of contract award together with interest on the delayed or unpaid sums found to be due."  The opposition makes no effort to argue that *Chateau Chamberay* does not mean what it says.  Progressive cited *Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 254-255, which said "Indeed, negligence is not among the theories of recovery generally available against insurers."  *Sanchez* cited the Croskey treatise on Insurance Litigation.  Plaintiff made no effort to explain how those authorities are not dispositive. Progressive submits that two cases which specifically say that no cause of action exists for negligent claims handling should trump plaintiff's general theory, which has never been applied in this situation.

D.   **Plaintiffs Concede That They Have Not Pleaded Outrageous Conduct By Failing To Point Specifically To Any Such Allegation.**

Plaintiff claims that the "allegations of Plaintiff's complaint clearly meet all required elements" to state a cause of action for intentional infliction of emotional distress.  Plaintiff refers the Court to paragraph 90 of the complaint, which says "Plaintiff repeats and realleges all of the preceding paragraphs herein and incorporates said paragraphs as though set forth in full in this Cause of Action." Opposition, p. 7:8:)  Plaintiff does not state which specific paragraphs among the ninety contains the required allegation of "extreme and outrageous conduct," and this is a telling omission, because his failure to specifically point out the allegations of outrageous conduct mean that he, like Progressive,

1 cannot find them.

2

3   The demurrer noted that this Court is required to accept all <u>properly pleaded</u> allegations, but

4 should "disregard the contentions, deductions or legal hyperbole which might surround those

5 allegations."  (*Tomaselli v. Transamerica Insurance Co.* (1994) 25 Cal.App.4th 1766, 1769.)

6 Defendant submits that the complaint is almost totally composed of such "legal hyperbole." Where is

7 the allegation that puts Progressive on notice of what it is supposed to have done wrong? What

8 specifically was the outrageous conduct? Who committed it? When was it committed? These facts

9 not only <u>should</u> be alleged, they <u>must</u> be alleged in the complaint. Plaintiff's inability to point to

10 specific language satisfying his pleading requirements means that the demurrer should be sustained.

11

12    **E.**   <u>**The Unfair Competition Law Claim Is Improperly Pleaded.**</u>

13   Progressive's demurrer to the Seventh Cause of Action for Violation of the UCL relied on the

14 Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287,

15 300, which abolished private third party actions for insurer violations of the Unfair Insurance Practices

16 Act ("UIPA.") Progressive's demurrer also relied on *Textron Financial Corp. v. National Union Fire*

17 *Ins. Co.* (2004) 118 Cal.App.4th 1061, 1070-1071, which said:

18   "The specific allegations of wrongful conduct contained in plaintiff's fourth
19   cause of action, using misleading documents and misrepresenting both the
  terms of the insurance policies and its obligations under them for its own
20   benefit, are the type of activities covered by the UIPA. (Ins. Code, § 790.03,
  subds. (a) & (h).) In *Safeco Ins. Co. v. Superior Court*, supra, 216 Cal.App.3d
21   1491, the court ordered dismissal of an action which included a request for
  injunctive relief under Business and Professions Code section 17200 et seq.
22   based on an insurer's allegedly unfair claims settlement practices. (216
  Cal.App.3d at pp. 1493 - 1494.) 'Though the issue is one of first impression,
23   **we have no difficulty in deciding the Business and Professions Code**
24   **provides no toehold for scaling the barrier of *Moradi-Shalal* ... . To**
  **permit plaintiff to maintain this action would render *Moradi-Shalal***
25   **meaningless."** (Id. at p. 1494.) **Under the foregoing cases, merely alleging**
  **these purported acts constitute unfair business practices under the unfair**
26   **competition law is insufficient to overcome *Moradi-Shalal.*"** (118
27   Cal.App.4th at p. 1070-71 (emphasis added.).)

28

1   *Textron* specifically applies here, and specifically bars plaintiff's cause of action for violation

2   of the UCL. *Textron* has been followed in several cases. No California court has held that *Textron*

3   does not mean what it says.[2] This Court is bound under the doctrine of *stare decisis* to follow the

4   mandate of *Textron*:

6   "Under the doctrine of *stare decisis*, all tribunals exercising inferior
    jurisdiction are required to follow decisions of courts exercising superior
7   jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense.
    The decisions of this court are binding upon and must be followed by all
8   the state courts of California. Decisions of every division of the District
    Courts of Appeal are binding upon all the justice and municipal courts
9   and upon all the superior courts of this state, and this is so whether or not
    the superior court is acting as a trial or appellate court. **Courts**
10  **exercising inferior jurisdiction must accept the law declared by**
    **courts of superior jurisdiction. It is not their function to attempt to**
11  **overrule decisions of a higher court.**" (*Auto Equity Sales v. Superior*
    *Court* (1962) 57 Cal.2d 450, 455 (emphasis added).)
12

13  Plaintiff's opposition totally ignores the *Textron* case, apparently on the assumption that if he

14  does not mention *Textron*, it will simply go away. This Court, however, is prohibited from ignoring

15  binding precedent. *Textron* is 100% on point and dispositive. *Textron* said the *Moradi-Shalal* case

16  abolished third party causes of action for violation of the UIPA even if those causes of action were

17  phrased in terms of UCL violations instead of UIPA violations.

18

19  The two cases which plaintiff cites are distinguishable. *State Farm Fire & Casualty v.*

20  *Superior Court* (1996) 45 Cal.App.4th 1093 was a case involving "a cause of action limited to a

21  request for injunctive or restitutive relief." (45 Cal.App.4th at p. 1098.) This case is not so limited -

22  plaintiff seeks to enforce the exact provisions of the UCL which *Textron* held could only be enforced

23  by the Department of Insurance. The other case cited by plaintiff, *Cel-Tech Communications v. L.A.*

24  *Cellular* (1999) 20 Cal.4th 1093, was an action between competitors, and the tests enunciated in that

25  case were for cases involving competitors. In any event, neither of the two cases cited by plaintiff

26

27  _____
    [2]   Progressive referred the Court to four Federal cases which disagreed with *Textron*, but
28  plaintiff took issue with the fact that Progressive did not attach these inapposite cases. Other Federal
    cases agreed with *Textron*, but in the final analysis, those Federal cases are not binding on this Court.

1   involves the fact pattern of *Textron*, which is exactly the same as the facts here.

2

3   **F.    Plaintiff Is Wrong About The Application Of The CLRA To Insurance.**

4   The parties have a fundamental disagreement as to whether the Consumer Legal Remedies Act

5   (CRLA) applied to insurance.  Plaintiffs rely on *Broughton v. CIGNA Healthplans* (1999) 21 Cal.4th

6   1066, but *Brought* is inapposite for at least three reasons.

7

8   First, the initial sentence of that case demonstrates its inapplicability: "In this case we consider

9   whether a claim brought under the Consumers Legal Remedies Acts … may be subject to arbitration."

10   (21 Cal.4th at p. 1072.)  Arbitration is not the issue here.  Second, in *Broughton*, the complaint "alleges

11   violation of the CLRA, based on allegations that Cigna deceptively and misleadingly advertised the

12   quality of medical services which would be provided under its health care plan."  (21 Cal.4th at p.

13   1072.)  Plaintiff claims that this case involves deceptive advertising (Opposition, p. 8:18-19), but he

14   once again refused to point the Court or the defendant to anywhere in the complaint where that

15   allegation is made.  Third, in *Broughton* the plaintiff sought injunctive relief.  (21 Cal.4th at p. 1072.)

16   No such relief is sought here - plaintiff wants money damages.  (Complaint, ¶ 106.)

17

18   Plaintiff argues that the *Fairbanks* case, on which defendant relies, was limited to life

19   insurance.  The specific facts before the Court in that case indeed involved life insurance, but the

20   reasoning is the same:  Insurance is neither a good nor a service under the CLRA.  That concept was

21   explained in detail in *Dean v. United of Omaha Life Ins. Co.*, 2007 U.S. Dist. LEXIS 99294.[3]  The

22   discussion is dispositive, so it will be set forth at considerable length:

23   "Plaintiff alleges violations of California's Consumer Legal Remedies
     Act ('CLRA')  …   United argues that insurance is neither 'tangible
24   chattels' or 'work, labor, or services,' citing *Civil Service Emp. Ins. Co.*
     *v. Sup. Ct.*, 22 Cal.3d 362, 376, 149 Cal.Rptr. 360, 584 P.2d 497 (1978).
25   There, the court stated, in dicta, that 'insurance is technically neither a
     "good" nor a "service" within the meaning of the [CLRA] ....').
26

27

28   _____

[3]   A copy of the *Dean* decision is attached hereto as Exhibit C.

We determine issues of state law as we believe the highest court of the state would do so. ... Though dicta by the California Supreme Court in *Civil Service* is not the law of California, it is highly probative of how that court would decide this issue. The cases cited by Dean, involving claims regarding insurance policies brought under the CLRA, do not suggest the California Supreme Court would decide the issue differently than as stated in *Civil Service*. **All but one of these cases involve the provision of medical or repair services.** ... ***Broughton v. Cigna*, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 67 (1999) (alleging deceptive advertising as to the quality of health care services);** .... In these instances, the insurance policies more directly provide 'tangible chattels' and 'work, labor, or services' readily cognizable as coming within the definitions provided in Section 1761. Moreover, none of the cases cited by Dean expressly address the applicability of the CLRA to insurance cases. Courts that have addressed the issue have followed the dicta in *Civil Service*. ... **In particular, a recent California Appellate Court decision addressed this issue in depth and concluded that insurance is neither a 'good' nor a 'service' within the meaning of the CLRA.** *Fairbanks v. Superior Court*, 154 Cal.App.4th 435, 64 Cal.Rptr.3d 623, 2007 Cal. App. LEXIS 1381 (2007).

While it is possible that a court's formal holdings might deviate from prior dicta, we will not presume that the California Supreme Court would embrace a holding that is the direct opposite of its prior dicta. **We therefore hold that insurance is neither a 'good' nor a 'service' as those terms are used in Cal. Civ. Code § 1770, so that Dean may not maintain a claim under the CLRA.**" (2007 U.S. Dist. LEXIS 99294 at 38-40 (some internal citations omitted, emphasis added.)

California courts have consistently held that the CLRA does not apply to insurance. The Supreme Court has said so directly, although plaintiff claims that such statements are dicta. However one chooses to characterize those statements, two conclusions are clear. First, no California case has expressly held that the CLRA applies to insurance, whereas several have expressly held that it does not. Second, the Legislature has had ample opportunity to change the language of the CLRA to make its provisions apply to insurance, and it has not done so. Defendant submits that all of plaintiff's huffing and puffing cannot change these fundamental facts. The demurrer to the Eighth Cause of Action should be sustained without leave to amend.

Plaintiff also argues that the language in paragraph 102 of his <u>unverified</u> complaint is sufficient to comply with the mandatory requirements of *Civil Code* § 1780(d), which says the <u>plaintiff</u>, not his

1   lawyer, **shall file an affidavit** attesting to certain facts.  Plaintiff did not comply with the statute.

2   Instead, he argues that he simply need not do so.  There is no authority allowing plaintiff to ignore the

3   mandatory provisions of a statute on which he relies as a cause of action.

4

5                                      **CONCLUSION**

6

7           Plaintiff's opposition does not address the points raised in the demurrer.  The complaint is

8   composed almost entirely of conclusions without factual underpinning.   Moreover, where the

9   allegations are indeed specific, they demonstrate that no cause of action can ever be stated.   For

10  example, plaintiff says in no uncertain terms that Progressive breached a fiduciary duty, but the cases

11  unanimously say that an insurer owes no such duty.

12

13          This case is about an alleged breach of contract and alleged bad faith.  Progressive did not

14  demur to those causes of action.  Progressive submits that the Court should sustain the demurrer

15  without leave to amend, so that the parties can litigate the actual issues rather than the pipedreams

16  contained in the third through eighth causes of action.

17

18  Dated:  September 17, 2010                    LAW OFFICES OF JULIA AZRAEL

19

20                                      By: _____
                                            JULIA AZRAEL
21                                          Attorneys for Defendant
                                            PROGRESSIVE CHOICE INSURANCE
22                                          COMPANY

23

24

25

26

27

28

# DECLARATION OF JULIA AZRAEL

JULIA AZRAEL declares:

1.     I am an attorney licensed to practice before all of the courts of the State of California and am sole proprietor of the Law Offices of Julia Azrael, attorney of record for Defendant PROGRESSIVE CHOICE INSURANCE COMPANY.  I am the trial attorney for this matter and as such, I have personal knowledge of the facts of this case.  If called as a witness, I could testify competently to the following.

2.     This declaration is submitted in support of defendant's demurrer to the Complaint.

3.     Attached hereto as Exhibits A, B and C are true and correct copies of the following cases:

- *Strausa v. State Farm Mut. Auto. Ins. Co.*, 1996 U.S. App. LEXIS 5555, 8-9 (9th Cir. Cal. Mar. 11, 1996)
- *Casey v. Metro. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 16494, 33-35 (E.D. Cal. Feb. 23, 2010)
- *Dean v. United of Omaha Life Ins. Co.*, 2007 U.S. Dist. LEXIS 99294.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.  Executed on September 17, 2010, at North Hollywood, California.

_____
JULIA AZRAEL

- 11 -

# EXHIBIT 'A'



2 of 2 DOCUMENTS



Analysis
As of: Sep 17, 2010

**LISA STRAUSA, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, ILLINOIS, Defendant-Appellee.**

**No. 94-55702**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*1996 U.S. App. LEXIS 5555*

**November 17, 1995, Argued and Submitted, Pasadena, California**
**March 11, 1996, FILED**

**NOTICE:** [*1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**  Reported in Table Case Format at: *79 F.3d 1154, 1996 U.S. App. LEXIS 17252.*

**PRIOR HISTORY:**  Appeal from the United States District Court for the Central District of California. D.C. No. CV-93-04712-LGB. Lourdes G. Baird, District Judge, Presiding.

**DISPOSITION:**  AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured appealed an order from the United States District Court for the Central District of California, which granted summary judgment in favor of defendant insurer on the insured's claims for breach of contract, breach of implied covenant of good faith and fair dealing and violation of fiduciary duties, fraud by misrepresentation, concealment, and promise without intent to perform, and intentional inflection of emotional distress.

**OVERVIEW:** The settlement of a claim submitted by the insured was decided by an arbitrator, and the insurer paid based upon the arbitrator's decision. Summary judgment was granted in favor of the insurer in the insured's action for various torts. The insured appealed, and the court affirmed. The court found that federal court jurisdiction was proper because the claim was for an amount in excess of $ 50,000. The insured failed to discuss her claim for intentional infliction of emotional distress in her appellate brief and, thus, the claim was deemed abandoned. The court found that the decision by the arbitrator and the insured's payment based upon that decision were in accordance with the insurance contract and California Insurance Code; thus, there was no breach of contract. The court found that court records that the insured sought to admit to show bad faith were not certified court copies and were not otherwise authenticated and, thus, could properly have been excluded by the trial court. The court found that none of the facts alleged by the insured showed that the insurer


1996 U.S. App. LEXIS 5555, *1

acted unreasonably in disputing the amount of the insured's claim and that bad faith was, therefore, not established.

**OUTCOME:** Summary judgment in favor of the insurer was affirmed in the insured's tort action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > Determinations*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Removal > Proceedings > General Overview*
[HN1] Where the amount in controversy in a diversity case removed to federal court is in doubt, the defendant bears the burden of establishing that removal is proper. Normally, this burden is satisfied if the plaintiff claims a sum greater than the jurisdictional amount.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy*
*Civil Procedure > Remedies > Damages > General Damages*
[HN2] The jurisdiction of the California Superior Court extends to cases at law where the demand is for more than $ 25,000. *Cal. Const. art. 6, § 10*; *Cal. Civ. Proc. Code § 86(a)(1)*.

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN3] The appellate court reviews de novo a district court's grant of summary judgment. The appellate court's review is governed by the same standard used by trial courts under *Fed. R. Civ. P. 56(c)*: The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law.

*Civil Procedure > Appeals > Dismissals of Appeals > Involuntary Dismissals*
*Governments > Fiduciary Responsibilities*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN4] The appellant's brief must contain argument that sets forth the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on. *Fed. R. App. P. 28(a)(6)*. Issues raised but not supported by argument are deemed abandoned.

*Governments > Fiduciary Responsibilities*
*Insurance Law > Claims & Contracts > Fiduciary Responsibilities*
[HN5] The relationship between an insurer and an insured has many of the elements of a fiduciary relationship, but is not an actual fiduciary relationship.

*Torts > Business Torts > Fraud & Misrepresentation > Nondisclosure > Elements*
[HN6] Under California law, the elements of a claim of fraud by concealment are: 1) suppression of a material fact; 2) by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; 3) with intent to deceive a person unaware of the concealed fact and who would not have acted had he known of the fact. To establish a claim of promise without intent to perform, a plaintiff must prove that the defendant made a promise about a material matter, with no intention of honoring that promise, that induced the plaintiff to take action she otherwise would not have taken.

**COUNSEL:** For LISA STRAUSA, Plaintiff - Appellant: Daniel M. Graham, Esq., Torrance, CA.

For STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, ILLINOIS, Defendant - Appellee: Barry R. Levy, Esq., HORVITZ & LEVY, Encino, CA. Lance Orloff, Esq., DANIELS, BARETTA & FINE, Los Angeles, CA.

**JUDGES:** Before: BRUNETTI and KOZINSKI, Circuit Judges, and HAGEN, District Judge **

    ** Hon. David Warner Hagen, United States District Judge for the District of Nevada, sitting by designation.

## OPINION

### MEMORANDUM *

&ast;   This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *Ninth Circuit Rule 36-3.*

[*2] Appellant (Strausa) sued appellee, her automobile insurance carrier (State Farm), in California state court for breach of insurance contract and for various torts associated with State Farm's handling of her claim.

State Farm removed the action to federal court pursuant to *28 U.S.C. § 1441* on the ground of diversity under *28 U.S.C. § 1332.* The district court granted summary judgment on all claims to State Farm, and this appeal followed. This Court has jurisdiction under *28 U.S.C. § 1291.*

### ANALYSIS

### I. Subject Matter Jurisdiction

Strausa challenges subject matter jurisdiction solely on the basis of *Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992)* (per curiam). *Gaus* noted that [HN1] where the amount in controversy in a diversity case removed to federal court is in doubt, the defendant bears the burden of establishing that removal is proper. *Id. at 566.* "Normally, this burden is satisfied if the plaintiff claims a sum greater than the jurisdictional amount." *Id.; see also St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-90, 82 L. Ed. 845, 58 S. Ct. 586 (1938).*

In the first cause of action in Strausa's complaint, she alleges "she has [*3] been damaged in a sum or sums of not less than $ 25,000.00" in contract damages. ER at 19. In the second cause of action, for bad faith, she alleges general damages that "are within the jurisdictional limits of [the California Superior Court] and subject to proof at trial." ER at 23. [HN2] The jurisdiction of the California Superior Court extends to cases at law where the demand is for more than $ 25,000. *See Cal. Const. Art. 6, § 10* (West 1954 & Supp. 1995); *Cal. Civ. Proc. Code § 86(a)(1)* (West 1982 & Supp. 1995). Thus, by her complaint, Strausa claimed in excess of $ 50,000. *Gaus* therefore provides no basis for remanding the case, and jurisdiction is proper in federal court.

### II. Standard of Review

[HN3] This court reviews *de novo* a district court's grant of summary judgment. *King v. AC & R Advertising, 65 F.3d 764, 767 (9th Cir. 1995).* This court's review is governed by the same standard used by trial courts under *Federal Rule of Civil Procedure 56(c):* "[The court] must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied [*4] the relevant substantive law." *Id.* (quotations and citation omitted).

### III. Waived Issue

In the "Statement of Issues" in her opening brief, Strausa states: "Did the Appellant-Policyholder Raise a Genuine Issue of Material Fact as to the Causes of Action Asserted Against the Appellee-Insurer?" Appellant's Opening Br. at 1. The claims upon which the district court granted summary judgment against Strausa were: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing and violation of fiduciary duties; (3) fraud by misrepresentation, concealment, and promise without intent to perform; and (4) intentional infliction of emotional distress. ER at 428-442. Strausa does not discuss her claim of intentional infliction of emotional distress in her appellate briefs. [HN4] The appellant's brief must contain argument "that sets forth the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." *Fed. R. App. P. 28(a)(6).* Issues raised but not supported by argument are deemed abandoned. *Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir. 1993).* Any [*5] issue regarding Strausa's claim of intentional infliction of emotional distress therefore is deemed abandoned.

### IV. Breach of Contract

Strausa contends that State Farm breached the express obligations of the contract by declining to make an offer to settle her uninsured motorist coverage claim and thereby forcing the matter to arbitration. The district court correctly determined that under both the policy and the applicable provision of the California Insurance Code, State Farm was not obligated to make an offer of settlement during the adjustment period. Rather, what was required was that an arbitrator decide any disagreement between the parties as to the fact or amount of liability. Here, the disagreement *was* decided by

arbitration, and State Farm paid Strausa the amount of the arbitrator's award. Hence, there was no breach of contract.

### V. Breach of the Implied Covenant of Good Faith and Fair Dealing and Violation of Fiduciary Duties

#### A. Good Faith and Fair Dealing

Preliminarily, Strausa's claim that State Farm should be liable for maliciously desiring the arbitration is groundless. The arbitration was requested by Strausa, not State Farm.

The [*6] district court found that State Farm presented admissible evidence establishing that it acted reasonably in disputing the amount of Strausa's claim, and Strausa failed to raise a genuine issue that State Farm acted in bad faith. The court was correct with respect to State Farm's showing.

Strausa attempted to show bad faith by showing what she called a "pattern and practice" of unreasonable claims handling by State Farm. Appellant's Opening Br. at 16-20. The district court properly could have concluded that this showing failed because the bulk of the evidence offered consisted of documents that her attorney declared under penalty of perjury were true and correct copies from the files of other Los Angeles Superior Court cases in which State Farm was the defendant. ER at 102-04. As State Farm argued below in its objections to evidence on the motion for summary judgment, the documents were not certified as copies by the Superior Court, and were not otherwise authenticated. ER at 423. Although Strausa's attorney declared the copies to be true and correct, he was not a person through whom uncertified public records could be admitted into evidence. The documents thus lacked proper foundation [*7] to authenticate them and could not be used to support a motion for summary judgment. Id. at 1551. Accordingly, the district court properly could have excluded the court documents.

Strausa's opposition to summary judgment also offered the declaration of an expert witness, Bernard R. Martin. ER at 365-383. Martin opined that State Farm acted in bad faith based on the following: State Farm's retained attorneys could have obtained Strausa's medical records at any time; State Farm asserted that Strausa was making a claim for pre-existing back injuries rather than aggravation of those injuries; and State Farm was advised

early on that Strausa did not want to go to arbitration. ER at 10-11. Because none of these alleged facts showed that State Farm acted unreasonably in disputing the amount of Strausa's claim, Martin's opinion amounted to a *non-sequitur*. Hence, his declaration did not at all show bad faith, and the district court's failure to consider it was, if error, harmless.

In sum, State Farm's investigation revealed that the amount of damages was far from reasonably clear, even viewing all of Strausa's evidence, including the expert's opinion, in the light most favorable [*8] to her. Thus, State Farm's resistance to Strausa's claim was reasonable as a matter of law.

#### B. Fiduciary Duties

Strausa claims State Farm's handling of her claim violated fiduciary duties owed by State Farm as insurer to Strausa as insured. Strausa cites *dicta* in *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal. 3d 208, 219, 228 Cal. Rptr. 160, 721 P.2d 41 (1986) for the proposition that an insurer owes a fiduciary duty to its insured over and above the implied covenant of good faith and fair dealing. She also argues that State Farm owes her fiduciary duties by virtue of her status as an insured of a mutual insurer and her rights to vote and receive dividends based upon company profits.

The district court correctly granted summary judgment in favor of State Farm on this claim because California law does not support Strausa's position. *Dicta* in *Frommoethelydo* suggested that an insured might be able to "recover damages for a failure to investigate in violation of the implied covenant, fiduciary duty or the duty to engage in fair practices." *42 Cal. 3d at 219.* However, since *Frommoethelydo*, the California intermediate courts have held that the relationship between [*9] insurer and insured is not a true fiduciary relationship. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1147-49, 271 Cal. Rptr. 246 (Ct. App. 1990); *Henry v. Associated Indem. Co.*, 217 Cal. App. 3d 1405, 1418-19, 266 Cal. Rptr. 578 (Ct. App. 1990); see also *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 945 F.2d 284, 287-88 (9th Cir. 1991) (citing *Love* and *Henry*, and citing with approval *Hassard, Bonnington, Roger & Huber v. Home Ins.*, 740 F. Supp. 789, 792 (S.D. Cal. 1990), in which district court stated, "As best this court can determine, the current state of California law is that [HN5] the relationship between an insurer and an insured has many of the elements of a fiduciary



1996 U.S. App. LEXIS 5555, *9

relationship, but is not an actual fiduciary relationship").

Moreover, despite Strausa's reference to her voting and dividend rights in State Farm, her claim of violation of fiduciary duty has nothing to do with those rights, but rather is based on exactly the same facts as her claim of breach of the implied covenant of good faith and fair dealing. Thus, it would be superfluous to recognize a fiduciary duty claim under these circumstances.

### VI.  Fraudulent   Misrepresentation,   [*10] Concealment, and Promise Without Intent to Perform

Strausa claims State Farm defrauded her by issuing the uninsured motorist policy while never intending to fulfill its obligations under the policy. She argues that State Farm's intent not to perform can be demonstrated by its subsequent refusal to pay her the full value of her claim, citing *Miller v. National American Life Ins. Co., 54 Cal. App. 3d 331, 338-39, 126 Cal. Rptr. 731 (Ct. App. 1976)*. She also contends State Farm concealed from her its studies showing that it never pays the full value of arbitration awards, and State Farm concealed from her the fact that her attorney was on a list of "targeted attorneys" whose claims are handled separately from others by State Farm.

Strausa's key evidence to support both the concealment claim and the promise without intent to perform claim [1] consists of court documents that, as discussed above, were not properly authenticated and thus were not admissible evidence on the motion for summary judgment. As a result, even if the documents could raise a genuine issue regarding her claims of concealment and promise without intent to perform, the court did not err by granting summary [*11] judgment against her. Further, without the above evidence, her claim of fraud under *Miller* fails, because State Farm's handling of her claim surely did not reveal that it *never* intended to perform its obligations under the policy. *54 Cal. App. 3d at 338-39*.

> 1  [HN6] Under California law, the elements of a claim of fraud by concealment are: "1) suppression of a material fact; 2) by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; 3) with intent to deceive a person unaware of the concealed fact and who would not have acted had he known of the fact." *Melanson v. United Air Lines, Inc., 931 F.2d 558, 563 (9th Cir.)* (citing *Cal. Civ. Code §§ 1709, 1710*), *cert. denied, 502 U.S. 865, 116 L. Ed. 2d 150, 112 S. Ct. 189 (1991)*. To establish her claim of promise without intent to perform, Strausa must prove that State Farm "made a promise about a material matter, with no intention of honoring that promise, that induced her to take action she otherwise would not have taken." *Id.* (citing *Cal. Civ. Code §§ 1709, 1710*).

### [*12] CONCLUSION

The district court did not err in granting summary judgment.

**AFFIRMED.**

# EXHIBIT 'B'



2 of 2 DOCUMENTS



Positive
As of: Sep 17, 2010

MAYEVERN CASEY, Plaintiff, vs. METROPOLITAN LIFE INS. CO., Defendant.

CASE NO. CV F 08-1811 LJO DLB

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
CALIFORNIA

*688 F. Supp. 2d 1086; 2010 U.S. Dist. LEXIS 16494*

February 23, 2010, Decided
February 24, 2010, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff retired employee sued defendant insurer, seeking to recover life insurance benefits following the death of her ex-spouse under a group life insurance policy issued by the insurer. The employee alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. She also sought punitive damages and declaratory relief. The parties filed cross motions for summary judgment.

**OVERVIEW:** Summary judgment was inappropriate as to a notice of change in insurance coverage where there were issues of fact as to whether the employee had received the notice and whether the notice was adequate to inform her that coverage of spouses terminated upon divorce. There was also an issue of fact as to whether the insurer had reduced the coverage that had been provided in a previous policy, for which the insurer was required to give notice. The insurer was entitled to summary judgment on the breach of good faith claim where the evidence showed that it had processed the employee's claim and acted upon the information that she had been divorced from the decedent. While the employee disagreed with the decision, she did not submit evidence to raise an issue of fact that the insurer failed to act in good faith and on reasonable grounds. The insurer was also entitled to summary judgment on the breach of fiduciary duty claim as a separate claim for breach of fiduciary duty did not exist under California law. Finally, the insurer was granted summary judgment on the claim for punitive damages as it was based on the breach of good faith claim.

**OUTCOME:** Summary judgment was denied as to the breach of contract claim and the claim for declaratory relief based on that claim. Summary judgment was granted to the insurer on the breach of the implied covenant of good faith and fair dealing and the breach of fiduciary duty claims. The court struck the claim for punitive damages.

**LexisNexis(R) Headnotes**

688 F. Supp. 2d 1086, *; 2010 U.S. Dist. LEXIS 16494, **

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] *Fed. R. Civ. P. 56(b)* permits a party against whom relief is sought to seek summary judgment on all or part of the claim.

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN2] Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. *Fed. R. Civ. P. 56(c)*. The purpose of summary judgment/adjudication is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN3] On summary judgment/adjudication, a court must decide whether there is a genuine issue as to any material fact, not weigh the evidence or determine the truth of contested matters. *Fed. R. Civ. P. 56 (c)*. The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
[HN4] To carry its burden of production on summary judgment/adjudication, a moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. To carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.

*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN5] As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
[HN6] If a party moving for summary judgment fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
[HN7] If the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the summary judgment motion. The amount of evidence necessary to raise a genuine issue of material fact is enough to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*Insurance Law > Claims & Contracts > Policy Interpretation > General Overview*
[HN8] An insurance policy is fundamentally a contract between the insurer and the insured. It is subject to the same general principles of interpretation as any other contract.

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Contracts Law > Contract Interpretation > General Overview*
[HN9] Interpretation of clear and unambiguous provisions in a contract is a question of law for the court, allowing summary judgment/adjudication.

*Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language*
[HN10] The court's initial focus in resolving a question of

Case 2:11-cv-00590-DMG-PLA  Document 1  Filed 01/20/11  Page 104 of 178  Page ID #:123

Page 3

688 F. Supp. 2d 1086, *; 2010 U.S. Dist. LEXIS 16494, **

insurance coverage is always on the language of the insurance policy itself: The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.

*Insurance Law > Claims & Contracts > Policy Interpretation > Ordinary & Usual Meanings*
[HN11] Absent evidence indicating the parties intended a special usage, words used in an insurance policy should be interpreted in their ordinary and popular sense. *Cal. Civ. Code § 1644.*

*Insurance Law > Claims & Contracts > Policy Interpretation > Entire Contract*
[HN12] In determining whether an insurance policy provision has a plain meaning, it must be read in the context of the entire policy: The whole of a contract is to be taken together, so as to give effect to every part each clause helping to interpret the other. *Cal. Civ. Code § 1641.*

*Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > Coverage Favored*
[HN13] Coverage clauses are interpreted to protect the objectively reasonable expectations of the insured.

*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview*
[HN14] When terms are unambiguous, California law requires that the mutual intention of the parties is to be inferred, if possible, solely from the written provisions of the contract. The mutual intention of the contracting parties at the time the contract was formed governs interpretation. *Cal. Civ. Code § 1636.* The parties' mutual intent is to be determined, if semantically possible, solely from the written provisions of the contract.

*Insurance Law > Group Policies > Notice Requirements*
[HN15] Under California law, changes to insurance coverage must be in a clear and conspicuous writing. The rule is and should be: Deletions or exclusions from a renewal group policy should be communicated and explained to the subscriber by a plain, clear and conspicuous writing. Merely warning each group member to read your entire policy carefully is not effective notice of changes in the policy involving loss of benefits. Any

notice of changes to the policy must be adequate to bring such changes to the members' attention: The notice shall describe in plain, understandable English and highlighted in italics any changes in the plan design or change in benefits and shall specify the reason or reasons for (such changes). *Cal. Ins. Code § 10199.2.* The purpose to promote the public interest, to prevent unfair and unlawful health care business practices, and to promote adequate consumer and employer advance notice of changes in the cost and benefits of health coverage in order to allow for comparative shopping and to reduce the cost of health coverage. *Cal. Ins. Code § 10199.*

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Insurance Law > Group Policies > Notice Requirements*
[HN16] Where there is an issue of fact as to receipt or whether the notice to a change in a group insurance policy was sent, summary judgment is improper.

*Civil Procedure > Summary Judgment > Evidence*
[HN17] The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party.

*Insurance Law > Claims & Contracts > Policy Interpretation > Questions of Law*
[HN18] Interpretation of an insurance contract is generally a question of law.

*Civil Procedure > Pleading & Practice > Motion Practice > General Overview*
[HN19] The court has no obligation to search the documents submitted in support of or in opposition to a motion.

*Insurance Law > Bad Faith & Extracontractual Liability > Payment Delays & Denials*
[HN20] The implied covenant of good faith and fair dealing in first party cases obligates the insurer: (1) to make a thorough and prompt investigation of the insured's claim for benefits; and (2) not to unreasonably delay or withhold payment of benefits.

Case 2:11-cv-00590-DMG-PLA   Document 1   Filed 01/20/11   Page 105 of 178   Page ID #:124

Page 4

688 F. Supp. 2d 1086, *; 2010 U.S. Dist. LEXIS 16494, **

*Insurance Law > Bad Faith & Extracontractual Liability > Payment Delays & Denials*

[HN21] The implied covenant of good faith and fair dealing is breached where an insurer delays or denies payment of policy benefits unreasonably (i.e., without any reasonable basis for its position) or without proper cause. Claims mishandling is precisely the kind of bad faith behavior that goes to the heart of the special insurance relationship and gives rise to tort remedies.

*Insurance Law > Bad Faith & Extracontractual Liability > Payment Delays & Denials*

[HN22] Under California law, bad faith liability does not exist for a legitimate dispute of an insurer's liability under the policy. Where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. An insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract. This genuine dispute or genuine issue rule was originally invoked in cases involving disputes over policy interpretation, but in recent years courts have applied it to factual disputes as well.

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Insurance Law > Bad Faith & Extracontractual Liability > Elements of Bad Faith*

[HN23] Whether a legitimate, genuine dispute of an insurer's liability under an insurance policy exists may be decided as a matter of law. A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. An insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith.

*Civil Procedure > Trials > Jury Trials > Province of*

*Court & Jury*
*Insurance Law > Bad Faith & Extracontractual Liability > Elements of Bad Faith*

[HN24] Where the reasonableness and genuineness of the insurer's decision regarding coverage under a policy depends entirely on analysis of legal precedent and statutory language, the issue is one of law to be decided by the trial court. A coverage dispute involving the proper construction and application of policy language would be a legal dispute, while one involving a disagreement as to the reasonable value of an insured's claim would be a factual one. Provided there is no dispute as to the underlying facts (e.g., what the parties did and said), then the trial court can determine, as a matter of law, whether such dispute is genuine.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Insurance Law > Bad Faith & Extracontractual Liability > General Overview*

[HN25] Breach of implied covenant actions are subject to the two-year statute applicable to tort actions generally rather than the statutes applicable to actions for personal injury or to recover penalties or forfeitures. *Cal. Code Civ. Proc. § 339 (1)*. An insured electing to proceed in tort is burdened with a shorter statute of limitations (two years), whereas a longer statute (four years) governs contract actions. The cause of action accrues whenever the insurer unreasonably withholds policy benefits due the insured by formally denying the claim.

*Insurance Law > Bad Faith & Extracontractual Liability > General Overview*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*

[HN26] Under California law, an insurer is not a fiduciary for its insured in the traditional sense and cannot be held liable for breach of fiduciary duties. The insurer-insured relationship is not a true fiduciary relationship in the same sense as the relationship between trustee and beneficiary, or attorney and client. In California, there are two lines of cases as to whether the special and heightened duties owed by insurers to insureds are any different than the duty of good faith and fair dealing. In one line of cases, the courts hold that duty to investigate insurance claims states might be based (either) on the implied covenant, (or) fiduciary duty, or the duty to engage in fair practices. In another line of cases, the courts state that breach of fiduciary duty means

Case 2:11-cv-00590-DMG-PLA   Document 1   Filed 01/20/11   Page 106 of 178   Page ID #:125

Page 5

688 F. Supp. 2d 1086, *; 2010 U.S. Dist. LEXIS 16494, **

the same as breach of the implied covenant of good faith and fair dealing.

*Insurance Law > Bad Faith & Extracontractual Liability > General Overview*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*
[HN27] The United States District Court for the Eastern District of California adopts the sounder approach that, in the insurance context, a breach of fiduciary duties is analyzed under the covenant of good faith and fair dealing. Thus, a separate claim does not exist for breach of a fiduciary duty.

*Civil Procedure > Remedies > Damages > Punitive Damages*
[HN28] *Cal. Civ. Code § 3294* provides that in an action for breach of an obligation not arising from contract, a plaintiff may seek punitive damages where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. *Cal. Civ. Code § 3294(a)*. Clear and convincing evidence has to be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Insurance Law > Claims & Contracts > Good Faith & Fair Dealing > General Overview*
[HN29] Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression, or fraud to justify an award of punitive damages. An insurer's inept and negligent handling of a claim does not support a punitive damages claim. A mistake of law by an insurance company, an honest error of judgment, overzealousness, or negligence cannot support punitive damages.

*Contracts Law > Remedies > Punitive Damages*
[HN30] Under California law, punitive damages are not available for breaches of contract no matter how gross or willful. Although a bad faith refusal to defend may constitute a breach of the implied covenant, bad faith does not necessarily indicate the presence of malice, oppression, or fraud. There must be substantial evidence

of intent to vex, injure, and annoy, a conscious disregard of plaintiff's rights, before punitive damages may be awarded.

*Civil Procedure > Remedies > Damages > Punitive Damages*
[HN31] See *Cal. Civ. Code § 3294(c)*.

*Civil Procedure > Remedies > Damages > Punitive Damages*
[HN32] For purposes of determining whether punitive damages may be awarded, despicable conduct is conduct which is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people. Such conduct has been described as having the character of outrage frequently associated with crime.

COUNSEL: [**1] For Mayevern Casey, Plaintiff: Kathleen Rivera, LEAD ATTORNEY, Alexander & Associates, Bakersfield, CA; William L. Alexander, LEAD ATTORNEY, Alexander & Associates, PLC, Bakersfield, CA.

For Metropolitan Life Insurance Company, Defendant: Rebecca A. Hull, LEAD ATTORNEY, Sedgwick Detert Moran & Arnold, San Francisco, CA; Michelle Yumi Mclsaac, Sedgwick Detert Moran and Arnold LLP (San Francisco), San Francisco, CA.

JUDGES: Lawrence J. O'Neill, UNITED STATES DISTRICT JUDGE.

OPINION BY: Lawrence J. O'Neill

OPINION

[*1089] ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

In this action, plaintiff MayeVern Casey ("Casey") seeks to recover life insurance benefits following the death of her ex-spouse, Billy Claborn, under a group life insurance policy issued by defendant Metropolitan Life Insurance Company ("Met Life"). The parties filed cross motions for summary judgment pursuant to *Fed.R.Civ.P.*

688 F. Supp. 2d 1086, *1089; 2010 U.S. Dist. LEXIS 16494, **1

56.

## FACTUAL BACKGROUND

### A. The Group Universal Life Policy

In November of 1991, Casey was an employee of GTE, Corp. She enrolled in a Group Universal Life insurance plan provided by The Travelers Life Insurance Company ("The Travelers") for employees of GTE. At that same time, Casey elected to obtain [**2] coverage in the amount of $ 100,000.00 on her then-spouse, Billy Claborn, naming Casey as the beneficiary. (At that time, plaintiff's married name was MayeVern Claborn.) The Travelers provided plaintiff with a certificate of insurance which stated that it "applies only to regular Employees of GTE Corporation or one of its subsidiaries . . . It also applies to the spouse of an eligible Employee." (Doc. 33, McIssac Decl. Exh. A, p. P003.) In November 1994, Casey retired from GTE after 31 years of service. [1]

> 1  The parties dispute whether the employment was a continuous 31 years. For purposes of this motion, this issue is immaterial because resolution does not depend upon "continuation" of employment. It is undisputed that Casey was entitled to continue coverage for Billy Claborn under the Plan after her retirement.

[*1090] When Casey retired, she discontinued her coverage under the Plan issued by The Travelers, but continued coverage under the Plan on the life of her husband, Billy Claborn. (Doc. 33, McIsaac Decl. Exh. A, Casey depo p. 16.)

In December 1996, Casey filed for divorce from Billy Claborn, and the divorce became final on July 3, 1997. Casey and Claborn executed a Marital Settlement Agreement [**3] on December 9, 1996 which became incorporated into the judgment of divorce and which awarded Casey the policy of life insurance issued by The Travelers on the life of Billy Claborn.

### B. Notices by Met Life

In January 1996, Met Life became the insurer of the Plan. (Doc. 29, Peterson Decl. P5.) In November 1996, the Plan Administrator Marsh (at that time, called Johnson & Higgins/Kirke-Van Orsdel ("J&H/KVI")), "sent all Plan participants, regardless of whether they were current, retired, or terminated GTE employees, a letter notifying them that MetLife was the new insurer of the Plan." (Doc. 29, Peterson Decl. P6, Exh. 1.) That November 1996 letter further notified Plan participants of changes to the Plan, including that the Plan did not cover divorced spouses:

> "Under the new MetLife provisions, an employee cannot keep Group Universal Life coverage on his or her spouse after a divorce; however, the divorced spouse may apply to continue separate coverage under the program. The employee must submit written notification of the date of divorce and the spouse's address to J&H/KVI. J&H/KVI will then mail out a Group Universal Life enrollment kit to the former spouse. If the former spouse applies [**4] within 31 days of the date the kit is mailed, he or she will receive a new certificate of insurance, and can have either an equal or lesser amount of coverage in effect at the time of the divorce." Id. (Emphasis added)

Met Life presents evidence that as a Plan participant, MayeVern Casey would have been sent this letter notification. (Doc. 29, Peterson Decl. P6.) Plaintiff Casey presents evidence that she did not receive this letter.

In August 1997, Casey received a letter from the Plan Administrator notifying her that the carrier for the Plan had changed from The Travelers to Met Life. (Doc. 24, Casey Decl., Exh. D.) The August 1997 letter enclosed a new Certificate of Insurance, number 1145159, and Insurance specifications page which indicated Met Life as the carrier, Casey as the Insured and Claborn as the covered person with a death benefit of $ 100,000.00. (Doc. 24, Casey Decl. Exh. E ("Covered Person: Billy J. Claborn").)) The August 1997 letter also enclosed the Met Life insurance policy. (Doc. 24, Casey Decl. Exh. E.) The letter stated: "The enclosed important document should be reviewed carefully and filed with your other important papers." (Doc. 24, Casey Decl. Exh. D.) Casey [**5] states that the letter did not identify any changes in the insurance coverage between The Travelers policy and the Met Life policy. The Met Life policy, however, which was included with the August 1997 letter, stated on page 8 (Bates MET0008), in part:

8. Termination of Marriage or Death of

Case 2:11-cv-00590-DMG-PLA   Document 1   Filed 01/20/11   Page 108 of 178   Page ID #:127

Page 7

688 F. Supp. 2d 1086, *1090; 2010 U.S. Dist. LEXIS 16494, **5

the Employee

    If the spouse is the Covered Person and while the spouse is covered for an amount of Insurance:

    [*1091] (a) the spouse's marriage to the Employee ends; or

    (b) the Employee dies;

    the spouse may make written request to remain insured under This Plan. The Death Benefit will continue if the spouse pays the Planned Contributions based on the spouse's new classification, directly to the Administrator.

(Doc. 31, Exh A, Bates MET0008.) Both parties reference the policy, which is an approximate 26-page document. (Doc. 24, Casey Decl. P7, Exh. E.); (Doc. 31, Copperwheat Decl. Exh. A.)

## C. Casey's Claim for Life Insurance Benefits

    Met Life argues that after the divorce, neither Casey nor Billy Claborn notified the administrator or Met Life of the divorce. Met Life argues neither made a written request to the administrator or Met Life for Billy Claborn to remain insured under the Met Life policy as an ex-spouse. [**6] (Doc. 32, MetLife moving paper p. 9.)

    Casey contacted Met Life in April 2005 to notify Met Life that Billy Claborn was now a non-smoker. Met Life recalculated Billy Claborn's premium under the Plan for a non smoker and sent a confirming letter to Casey. (Doc. 29, Peterson Decl. P7.)

    In May 2006, Casey informed the claims administrator, Marsh, that the Billy Claborn had died. Marsh forwarded the documents it had received from Casey to Met Life, which Met Life received in June 2006. Among the documents Casey submitted included plaintiff's May 26, 2006 letter wherein she stated that she had divorced Billy Claborn in 1997. Plaintiff included a copy of the divorce papers, and her enrollment form in the Group Universal Life.

    By letter on June 21, 2006, Met Life notified plaintiff that her claim on the life insurance proceeds was being denied. (Doc. 31, Exh. C.) Met Life stated:

    "The divorce decree is dated April 22, 1997, and according to the Plan, any divorce enacted after 1996 required that the benefits for the spouse be terminated on the first of the month following the divorce effective date. Therefore, based upon the information we have on file, we are, at this time, denying your claim." [**7] (Doc. 31, Exh. C.)

    Plaintiff appealed the denial of her claim. On July 19, 2006, plaintiff filed her appeal of Met Life's denial, stating that she had not received any documents that the Plan had been changed regarding benefits for a spouse, and that she had made premium payments for 10 years under her new married name. She asked for reconsideration of the denial. (Doc. 31, Exh. D.)

    Met Life reconsidered its prior denial and asked for supplemental information. On August 10, 2006, Met Life requested a copy of plaintiff's entire divorce decree for review on appeal. (Doc. 31, Exh. E.) Casey forwarded the requested information on September 11, 2006. (Doc. 31, Exh. F.)

    By letter on September 27, 2006, Met Life upheld its denial of Casey's claim. Met Life informed Casey that, "[w]e have re-examined the entire claim file, including examination of any additional material and information provided with your request for appeal. For the reasons detailed below, we must uphold the denial of this claim." (Doc. 31, Exh. G.) Met Life's letter of denial quoted the specific Plan language for "Termination of Marriage." Met Life's denial letter then explained:

    "The certificate is explicit and clear that only [**8] the spouse of the employee may elect to continue dependent spouse benefits on themselves. We have researched your policy with the administrator responsible for maintaining records for this certificate, Marsh@Work Solutions, [*1092] and have found that from the time of your divorce, July 3, 1997, to the passing of the decedent, the administrator was not notified of your divorce." (Doc. 31 Exh. G.)

Met Life stated that because the Plan administrator was not notified of the divorce, "in good faith the

Case 2:11-cv-00590-DMG-PLA Document 1 Filed 01/20/11 Page 109 of 178 Page ID #:128

Page 8

688 F. Supp. 2d 1086, *1092; 2010 U.S. Dist. LEXIS 16494, **8

administrator continued to accept premium[s] under the incorrect information that the decedent was still your eligible dependent spouse." Met Life stated that the "policy does not allow the employee to take over coverage should the then ex-spouse neglect or discontinue coverage." [2]

> [2]   Met Life contends that the premiums in this situation would have increased. If Met Life had been notified that plaintiff and Billy Claborn they had divorced in 1997, and that Billy wished to continue coverage, his premiums would have increased. (Doc. 32, Met Life moving papers p.14.) Met Life states that a spouse continuing coverage after a divorce, pays terminated premium rate, which are higher than the retiree or [**9] active employee rates. (Doc. 33, Exh. B, Edgerton Depo. P.85:8-11.)

Plaintiff filed her complaint alleging the following causes of action:

1. Breach of Contract;

2. Breach of the Covenant of Good Faith and Fair Dealing;

3. Breach of Fiduciary Duties; and

4. Declaratory Relief.

## D. Summary of the Parties' Positions on their Motions

Met Life moves for summary judgment on the following grounds:

1. Plaintiff could not maintain coverage on her ex-spouse Billy Claborn following the divorce;

2. Plaintiff's bad faith claim is barred by the statute of limitations;

3. Plaintiff's bad faith claim must be dismissed because there is a genuine dispute as to coverage;

4. Plaintiff cannot maintain her cause of action for breach of fiduciary duty against MetLife;

5. Plaintiff's declaratory relief claim fails;

6. There are no facts supporting plaintiff's assertion of punitive damages.

Casey moves for summary judgment on the grounds that:

1. Met Life wrongly denied her claim based upon the unsupported position that Claborn was not a covered person under the policy.

2. Met Life was not prejudiced by any failure to be notified of the divorce of Claborn and Casey because coverage would have continued and Met Life did not [**10] have the discretion to cancel the policy.

3. Met Life engaged in bad faith in denying the claim.

## ANALYSIS AND DISCUSSION

### A. Summary Judgment/Adjudication Standards

[HN1] *F.R.Civ.P. 56(b)* permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." [HN2] Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. *F.R.Civ.P. 56( c); Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).* The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec., 475 U.S. at 586, n. 11, 106 S.Ct. 1348; International Union of [*1093] Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).*

[HN3] On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. *F.R.Civ.P. 56 ( c); Covey v.*

Case 2:11-cv-00590-DMG-PLA Document 1 Filed 01/20/11 Page 110 of 178 Page ID #:129

Page 9

688 F. Supp. 2d 1086, *1093; 2010 U.S. Dist. LEXIS 16494, **10

*Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997)*; [**11] *see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L. Ed. 2d 458 (1962); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).* The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, 477 U.S. at 251-252, 106 S.Ct. 2505.*

[HN4] To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).* [**12] "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire, 210 F.3d at 1102.* [HN5] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, 477 U.S. at 248, 106 S.Ct. 2505.*

[HN6] "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire, 210 F.3d at 1102-1103; see Adickes, 398 U.S. at 160, 90 S.Ct. 1598.* "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire, 210 F.3d at 1103.* "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire, 210 F.3d at 1103; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)* ("Rule

56(c) mandates the entry [**13] of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But [HN7] if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire, 210 F.3d at 1103; see Celotex, 477 U.S. at 322, 106 S.Ct. 2548.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (quoting First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968)).*

[*1094] **B. Standards for Interpreting Insurance Contracts**

California's substantive insurance law governs in this diversity case. *State Farm Mut. Auto. Ins. Co. v. Khoe, 884 F.2d 401, 405 (9th Cir. 1989).* [HN8] An insurance policy is fundamentally a contract between the insurer and the insured. *Stein v. International Ins. Co., 217 Cal.App.3d 609, 614, 266 Cal. Rptr. 72 (1990).* It is subject to the same general principles [**14] of interpretation as any other contract. *AIU Ins. Co. v. Sup.Ct. (FMC Corp.), 51 Cal.3d 807, 821-822, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990).* [HN9] Interpretation of clear and unambiguous provisions in a contract is a question of law for the court, allowing summary judgment/adjudication. *See United States v. Sacramento Mun. Util. Dist., 652 F.2d 1341, 1344 (9th Cir. 1981).*

Here, neither of the parties contends that the relevant terms of the insurance contract are ambiguous. Defendant notes that the policy is unambiguous. (Doc. 32, Met Life Moving Papers p.16:8.) Plaintiff does not contend that the language of the insurance policy is ambiguous. (Doc. 23, Plaintiff Moving papers p. 7.) Thus, the Court's interpretation is a question of law.

[HN10] The Court's initial focus in resolving a question of insurance coverage is always on the language of the insurance policy itself: "The rules governing policy interpretation require us to look *first* to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."

688 F. Supp. 2d 1086, *1094; 2010 U.S. Dist. LEXIS 16494, **14

*Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)* (emphasis added); *see also City of Hope Nat. Medical Center v. Genentech, Inc., 43 Cal.4th 375, 395, 75 Cal.Rptr.3d 333, 181 P.3d 142, (2008)* [**15] (Contract interpretation is solely a judicial function when "based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence".) [HN11] Absent evidence indicating the parties intended a special usage, words used in an insurance policy should be interpreted in their "ordinary and popular sense." *Cal.Civ.Code § 1644.* [HN12] In determining whether a policy provision has a "plain meaning," it must be read in the context of the entire policy: "The whole of a contract is to be taken together, so as to give effect to every part ... each clause helping to interpret the other." *Cal.Civ.Code § 1641.* [HN13] Coverage clauses are interpreted to protect the objectively reasonable expectations of the insured. *AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990).*

[HN14] When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 647-648, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (2003).* The mutual intention of the contracting parties at the time the contract was formed governs interpretation. *Cal. Civ. Code § 1636.* [**16] "The parties' mutual intent is to be determined, if semantically possible, *solely* from the written provisions of the contract." *AIU Ins. Co. v. Sup.Ct., FMC Corp., 51 Cal.3d at 822; Waller, 11 Cal.4th at 18* (Such intent is to be inferred, if possible, solely from the written provisions of the contract); *Haynes v. Farmers Ins. Exch., 32 Cal.4th 1198, 1204, 13 Cal. Rptr. 3d 68, 89 P.3d 381 (2004)* (same). Therefore, the Court turns to the language used in the Policy.

**1. Applicable Policy Language**

The applicable Plan language, upon which Met Life bases its denial, is as follows:

[*1095] 8. Termination of Marriage or Death of the Employee

If the spouse is the Covered Person and while the spouse is covered for an amount of Insurance:

(a) the spouse's marriage to the Employee ends; or

(b) the Employee dies;

the spouse may make written request to remain insured under This Plan. The Death Benefit will continue if the spouse pays the Planned Contributions based on the spouse's new classification, directly to the Administrator.

Met Life argues that the policy did not permit plaintiff to continue coverage on her ex-spouse. Met Life argues that the language says that a spouse will not "remain insured" after divorce from an employee, unless certain [**17] conditions are met - a written request from the spouse and premium payments based on the ex-spouse's new classification. (Doc. 32, Met Life moving papers p.16.) Neither plaintiff nor the ex-spouse notified the administrator of the divorce and premiums were not paid based upon the ex-spouse's new classification. [3]

> 3   The parties dispute whether the divorced status would have altered the premium amount. For purposes of resolving these motions, the amount of premium is not a material fact.

Casey's first argument in support of coverage is as follows. Casey argues that there was inadequate notice of the changes from The Travelers' policy to the Met Life policy. She contends that The Travelers policy did not contain a provision whereby the coverage of an employee's spouse is terminated upon the divorce of the employee and the spouse. (Doc. 26, Plaintiff's Undisputed Fact no.3.) Plaintiff argues that the policy provision upon which Met Life relies in denying Casey's claim - that coverage automatically terminated upon divorce-should not be enforced because this limitation was not made conspicuously clear upon the change from The Travelers to Met Life.

**2. Notice of Change in Insurance Coverage**

Casey's [**18] first argument, as to the adequacy of the notice, is a factual argument and raises a material issue of fact.

[HN15] Under California law, changes to insurance

Case 2:11-cv-00590-DMG-PLA   Document 1   Filed 01/20/11   Page 112 of 178   Page ID #:131

Page 11

688 F. Supp. 2d 1086, *1095; 2010 U.S. Dist. LEXIS 16494, **18

coverage must be in a clear and conspicuous writing. "The rule is and should be: Deletions or exclusions from a renewal group policy should be communicated and explained to the subscriber by a plain, clear and conspicuous writing." *Fields v. Blue Shield of Calif., 163 Cal. App. 3d 570, 579, 209 Cal. Rptr. 781, 788 (1985)*. Merely warning each group member to "read your entire policy carefully" is not effective notice of changes in the policy involving loss of benefits. *Fields v. Blue Shield of Calif., 163 Cal.App.3d at 579*; *Haynes v. Farmers Ins. Exch., 32 Cal.4th at 1211*. Any notice of changes to the policy must be adequate to bring such changes to the members' attention: "(T)he notice shall describe in plain, understandable English and highlighted in italics any changes in the plan design or change in benefits ... (and) shall specify the reason or reasons for (such changes)." *Ins.C. § 10199.2*. The purpose to "promote the public interest, to prevent unfair and unlawful health care business practices, and to promote adequate consumer and employer [**19] advance notice of changes in the cost and benefits of health coverage in order to allow for comparative shopping and to reduce the cost of health coverage." *Ins.Code, § 10199*.

Casey relies upon *Fields v. Blue Shield of California, 163 Cal.App.3d 570, 209 Cal.* [*1096] *Rptr. 781* for the proposition that renewal of a policy limiting coverage is ineffective where the insured is not notified of the specific reduction in coverage. In *Fields*, plaintiff's original health insurance policy covered psychotherapy, but this benefit was substantially reduced when the policy was renewed. The exclusion in the renewal policy was not contained in either section entitled "How Plan Changes" or "Exclusion," but rather the exclusion was placed in small print at the end of benefit granting provisions. The court held that failure to use clear, conspicuous and plain language in a notification of reduction in policy coverage renders the reduction ineffective. The court held that the insurer failed to notify by a "clear, conspicuous notice in an expected place that coverage he originally had was now totally withdrawn." *Id. at 578*. Therefore, the Court did not enforce the exclusion. *Id. at 578*.

Here, plaintiff argues that she did not receive [**20] the November 1996 notice Met Life sent and contends Met Life's evidence is insufficient that the notice was actually mailed to plaintiff. (Doc. 36, Plaintiff Opposition p. 6:13 ("defendant fails to allege and gives no facts supporting an allegation that the plaintiff was ever mailed

this letter, nor ever received this letter.").) Plaintiff argues that the letter from Met Life that she actually received, in August 1997, did not list any exclusions or limitations related to divorce.

There is an issue of fact whether notice was adequate. [HN16] Where there is an issue of fact as to receipt or whether the notice was sent, summary judgment is improper. *See Nationwide Mutual Ins. Co. v. Devlin, 11 Cal.App.4th 81, 13 Cal.Rptr.2d 795 (1992)* (judgment was affirmed because, among other things, "no facts in the record to suggest the insured, did not receive notice of the endorsement.") The adequacy of the notice and whether any notification was sent are both genuine issues of material fact upon this record. *Allstate Ins. Co. v. Fibus, 855 F.2d 660, 663 (9th Cir. 1988)*. Plaintiff's evidence is that she did not receive the November 1996 notice of the change. Met Life does not cite to authority which permits [**21] summary judgment in light of such evidence. Plaintiff also disputes that the notice was sent. Indeed, the conclusory evidence by Met Life that Casey "was sent" the notice is insufficient in light of the inference the Court must make in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. at 255* [HN17] The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party). Accordingly, plaintiff raises issues of fact as to the adequacy of notice.

### 3. Reduction in Coverage

Further, there is an issue of whether Met Life reduced the coverage which was provided in The Travelers' policy, for which Met Life was required to give notice to Casey.

Casey contends that the original The Travelers' policy did not terminate coverage of a spouse upon the divorce of the spouse and employee. (Doc. 26, Plaintiff's Statement of Facts #3.) Casey argues that under The Travelers' policy, Billy Claborn would have remained covered. Met Life objects to this fact and disputes its relevance. Met Life argues that whether The Travelers' policy provided for continued [**22] coverage is questionable because The Travelers' policy defined "spouse" as "an employee's legal spouse." (Doc. 42, Met Life Objections p.3, Fact 3.)

The Court finds that this issue is material to

Case 2:11-cv-00590-DMG-PLA   Document 1   Filed 01/20/11   Page 113 of 178   Page ID #:132

Page 12

688 F. Supp. 2d 1086, *1096; 2010 U.S. Dist. LEXIS 16494, **22

resolution of the motions. Whether The Travelers' policy contained a provision [*1097] which permitted continuing coverage upon a spouse's divorce, goes to the very issue of whether Met Life reduced coverage. Whether Met Life reduced coverage goes to the issue of whether Met Life adequately informed Casey of the reduction in coverage. The parties cite, generally, to The Travelers' policy (a 15-page document), without identifying the specific language in The Travelers' policy which either supports or refutes the other party's position. (See Doc. 33, Exh. A, p. P003-P017.) Here, Met Life arguably reduced coverage by eliminating coverage when spouses divorce. Met Life purportedly sent a notice to Casey in November 1996 notifying her that divorced spouse would not remain covered. (Doc. 29, Peterson Decl. P6, Exh. 1.) The Traveler's policy indeed may have provided coverage to divorced spouses because Met Life's notice was meant to comply with California law to notify insureds of reduced coverage. The inference [**23] the Court must draw is that The Traveler's policy provided continued coverage upon divorce. Accordingly, there is a material issue regarding the coverage provided by The Traveler's policy.

[HN18] Interpretation of an insurance contract is generally a question of law. In this case, however, the parties did not identify the provisions upon which they rely, or refute. [HN19] The Court has no obligation to search the documents submitted in support of or in opposition to a motion. *Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)* (it is immaterial that helpful evidence may be located somewhere in the record). The Court finds that whether The Travelers' policy provided coverage as plaintiff argues, is a material issue, which cannot be adjudicated in these motions.

**4. Language of the Policy in Section 8**

Casey's second argument is that the language of the policy does not mean what Met Life has interpreted it to mean. Casey argues that the section "8. Termination of marriage or death of the Employed" has nothing to do with whether coverage is terminated upon divorce. Instead, it deals with how the premiums are to be paid upon a divorce. Section "8. Termination of marriage or [**24] death of the Employed" is contained within the section "Payment during the Covered Person Lifetime." Plaintiff argues that there is no language in "8. Termination of marriage or death of the Employee"

which automatically terminates coverage upon the divorce of the employee.

The Court does not reach this issue of interpreting the policy language because of the above issues which raise issues precluding summary judgment.

**C. Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff's second cause of action is for bad faith breach of the implied covenant of good faith and fair dealing.

Met Life argues that the bad faith claim is barred because the Met Life legitimately and genuinely disputed coverage. Met Life also argues that the bad faith claim fails because it is barred by the statute of limitations.

**1. No Issue of Fact as to Bad Faith Breach**

Met Life argues that where there is a legitimate, genuine dispute as to liability under a policy, there is no bad faith. Met Life argues that the bad faith claim should be dismissed because there is a genuine dispute as to whether Casey was covered in this circumstance. Met Life's position is that coverage for an ex-spouse could only [**25] be continued if notice was provided to the administrator and additional premiums were paid. (Doc. 32, Met Life moving papers p. 18-19.)

[*1098] [HN20] The implied covenant of good faith and fair dealing in first party cases obligates the insurer: (1) to make a thorough and prompt investigation of the insured's claim for benefits; and (2) not to unreasonably delay or withhold payment of benefits. *See Silberg v. California Life Ins. Co., 11 Cal.3d 452, 461-462, 113 Cal.Rptr. 711, 717, 521 P.2d 1103 (1974).*

[HN21] The implied covenant of good faith and fair dealing is breached where an insurer delays or denies payment of policy benefits unreasonably (i.e., without any reasonable basis for its position) or without proper cause. *Jordan v. Allstate Ins. Co., 148 Cal.App.4th 1062, 1072-1073, 56 Cal.Rptr.3d 312, 319 (2007); see Wilson v. 21st Century Ins. Co., 42 Cal.4th 713, 723, 68 Cal.Rptr.3d 746, 754, 171 P.3d 1082 (2007)* ("[A]n insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable"). Claims mishandling is "precisely the kind of bad faith behavior that goes to the heart of the

Case 2:11-cv-00590-DMG-PLA Document 1 Filed 01/20/11 Page 114 of 178 Page ID #:133

Page 13

688 F. Supp. 2d 1086, *1098; 2010 U.S. Dist. LEXIS 16494, **25

special insurance relationship and gives rise to tort remedies." *Jonathan Neil & Assocs., Inc. v. Jones. 33 Cal. 4th 917, 940, 16 Cal. Rptr. 3d 849, 867, 94 P.3d 1055 (2004)*.

[HN22] Under [**26] California law, bad faith liability does not exist for a legitimate dispute of an insurer's liability under the policy. *Chateau Chamberay Homeowners Ass'n v. Associated Intern., 90 Cal.App.4th 335, 346,108 Cal.Rptr.2d 776 (2001)*. "[W]here there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." *Id. at 347*. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. *Wilson v. 21st Century Ins. Co., 42 Cal.4th 713, 723, 68 Cal.Rptr.3d 746, 754, 171 P.3d 1082 (2007)*. "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson v. 21st Century Ins. Co. 42 Cal.4th at 723*. This "genuine dispute" or "genuine issue" rule was originally invoked in cases involving disputes over policy interpretation, but in recent years courts have applied it to factual disputes as [**27] well. *Wilson v. 21st Century Ins. Co., 42 Cal.4th at 723*.

[HN23] Whether a "legitimate, genuine" dispute exists may be decided as a matter of law. "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Chateau Chamberay Homeowners, 90 Cal.App.4th at 346*. An insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith. *Wilson v. 21st Century Ins. Co., 42 Cal.4th at 724*. In *Wilson*, plaintiff had suffered neck injuries in a car accident and submitted an insurance claim. The defendant insurance company rejected her claim, on the grounds it was a preexisting injury. Before rejecting the claim, the insurance company did not attempt to contact the plaintiff's doctor or speak with any other medical practitioner about the claim. Because the dispute was as

to liability on a factual dispute--not a dispute as to policy interpretation--the [**28] *Wilson* court found that, without investigation, the dispute was [*1099] not "genuine," and the insurance company did not have a reasonable factual basis to deny the claim. See *id. at 724-26*. The Court denied summary judgment.

[HN24] Where the reasonableness and genuineness of the insurer's decision, however, depends entirely on analysis of legal precedent and statutory language, the issue is one of law to be decided by the trial court. *Chateau Chamberay Homeowners, 90 Cal.App.4th at 348 n.7*. A coverage dispute involving the proper construction and application of policy language would be a legal dispute, while one involving a disagreement as to the reasonable value of an insured's claim would be a factual one. Provided there is no dispute as to the underlying facts (e.g., what the parties did and said), then the trial court can determine, as a matter of law, whether such dispute is "genuine." *Id*.

Here, the dispute is over the contract interpretation of the insurance provision regarding coverage. The issue is whether the Plan provision, "8. Termination of Marriage or Death of the Employee," provided coverage following the divorce. Met Life says the provision applies to the facts of the case. Plaintiff [**29] says the provision does not apply. Thus, there is a legitimate, genuine dispute as to whether the provision applies. Both positions are reasonable. Met Life, for its part, states that the plain language of the Plan provision does not provide coverage. Casey, for her part, argues that she did not receive notice of the Plan provision. Whether or not plaintiff actually received notice is irrelevant to the "genuineness and reasonableness" of Met Life's position. Met Life denied the claim by relying upon the Plan provision, "8. Termination of Marriage or Death of the Employee." The evidence shows the position was reached reasonably and in good faith.

Plaintiff argues that she has raised an issue of fact. She presents evidence that Met Life quoted the incorrect policy language, its own policy as opposed to the Traveler's policy, as part of its practice to deny coverage to a spouse of an employee. She appealed, stating she had not received the notice of change of plan, but instead of investigating the different policy languages between Met Life and the original Traveler's policy, [4] Met Life denied the claim again. (Doc. 36, Casey Opposition p.9.) Plaintiff argues that Met Life gave first erroneous [**30]

688 F. Supp. 2d 1086, *1099; 2010 U.S. Dist. LEXIS 16494, **30

then contradictory rationales for denying her claim. (Doc.36 Casey Opposition p.9.) She argues this raises an issue of fact.

> 4   Plaintiff states that Met Life did not investigate the Traveler's policy but fails to identify any evidence in support of this statement.

Here, plaintiff does not raise an issue of fact that Met Life failed to maintain in good faith and on reasonable grounds its position that the Plan precluded coverage. There is no evidence that plaintiff informed Met Life of the change of marital status. She argues that she made premium payments in her new married name, but that evidence alone does not establish that Met Life acted in bad faith by continuing the coverage. There is no evidence that Casey affirmatively told Met Life of the divorce at any time prior to Billy Claborn's death. [5]

> 5   The parties dispute whether Casey was deliberately untruthful in not informing Met Life of the divorce. The Court does not reach this issue of credibility because it is unnecessary to do so. Indeed, issues of credibility should be left to the jury. *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985).

The evidence shows that Met Life processed her claim and acted upon the information [**31] that she had been divorced from [*1100] the decedent. Met Life requested additional information and interpreted its Plan provision as denying coverage. While plaintiff disagrees with Met Life's conclusion, her evidence does not raise an issue of fact that Met Life failed to act in good faith and on reasonable grounds.

**2. Statute of Limitations**

Met Life also argues that the second cause of action for breach of the covenant of good faith and fair dealing is barred by the statute of limitations. Met Life argues that it denied coverage on June 21, 2006. Plaintiff appealed the decision, and Met Life upheld its denial on September 27, 2006. Plaintiff's action was not filed until October 1, 2008, more than two years for Met Life's final denial of her claim. Plaintiff argues that the statute of limitations did not start on this date because she reappealed and the parties continued to dispute the claim. She also argues that Met Life failed to notify her that it had made its "final" decision.

[HN25] Breach of implied covenant actions are subject to the 2-year statute applicable to tort actions generally rather than the statutes applicable to actions for personal injury or to recover penalties or forfeitures. [**32] Code Civ.Proc. § 339 (1); *Richardson v. Allstate Ins. Co.*, 117 Cal.App.3d 8, 13, 172 Cal.Rptr. 423 (1981). An insured electing to proceed in tort is burdened with a shorter statute of limitations (2 years), whereas a longer statute (4 years) governs contract actions. *Archdale v. American Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467, 64 Cal. Rptr. 3d 632, 647 fn. 19 (2007). The cause of action accrues whenever the insurer unreasonably withholds policy benefits due the insured by formally denying the claim. *See Frazier v. Metropolitan Life Ins. Co.*, 169 Cal.App.3d 90, 103-104, 214 Cal.Rptr. 883, 890 (1985).

The Court declines to reach the issue of the statute of limitations. The Court has found that Casey failed to raise an issue of material fact as to the bad faith breach of the covenant. Therefore, the Court need not decide the statute of limitations issue for the same cause of action.

**D. Claim for Breach of Fiduciary Duty**

Plaintiff's third cause of action is for breach of fiduciary duty. The relevant allegations are as follows:

> 33.   At all times herein relevant, defendants assumed or acquired a special relationship with plaintiff and owed fiduciary duties to plaintiff.

> 34.   Defendant's [**33] conduct alleged in this action constitutes breaches of the fiduciary duties owed by defendants to plaintiff.

> 35.   As a direct and proximate result of the conduct of defendants, plaintiff has been damaged . . . (Doc. 1, PP33-35.)

[HN26] Under California law, an insurer is not a fiduciary for its insured in the traditional sense and cannot be held liable for breach of fiduciary duties. *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal.4th 1142, 1150-1151, 113 Cal.Rptr.2d 70, 76-77, 33 P.3d 487 (2001). The insurer-insured relationship is not a true "fiduciary relationship" in the same sense as the relationship between trustee and beneficiary, or attorney

Case 2:11-cv-00590-DMG-PLA Document 1 Filed 01/20/11 Page 116 of 178 Page ID #:135

Page 15

688 F. Supp. 2d 1086, *1100; 2010 U.S. Dist. LEXIS 16494, **33

and client. *Id.* In California, there are two lines of cases as to whether the "special and heightened duties" owed by insurers to insureds are any different than the duty of good faith and fair dealing. In one line of cases, such as *Frommoethelydo v. Fire Ins. Exch., 42 Cal.3d 208, 219, 228 Cal.Rptr. 160, 166, 721 P.2d 41 (1986),* the court held that duty to investigate insurance claims states might be based "(either) on the implied covenant, (or) fiduciary duty, or the duty to engage [*1101] in fair practices ... " In another line of cases, the courts state the "breach of fiduciary [**34] duty" means the same as breach of the implied covenant of good faith and fair dealing. *See Tran v. Farmers Group, Inc., 104 Cal.App.4th 1202, 1212, 128 Cal.Rptr.2d 728 735 (2002)* (breach of its 'fiduciary-like duties' is adequately redressed by a claim for breach of the covenant of good faith and fair dealing"); *see* Croskey, Heeseman, Popik and Imre, *California Prac.Guide: Insurance Litigation* § 11:154 (The Rutter Group 2009) *and Butler v. Clarendon America Ins. Co., 494 F.Supp.2d 1112, 1136 (N.D.Cal. 2007)* (finding that the "sounder approach" is for courts to analyze an insurer's alleged breach of its "fiduciary-like duties" as a claim for breach of the covenant of good faith and fair dealing.)

Here, [HN27] the Court adopts the sounder approach that a breach of fiduciary duties is analyzed under the covenant of good faith and fair dealing. Thus, a separate claim does not exist for breach of a fiduciary duty. *See also Solomon v. North American Life & Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir.1998)* (holding that while the insurer-insured relationship is fiduciary in nature, it does not provide for an independent action for common law breach of fiduciary duty). Summary adjudication as to this [**35] claim is appropriate.

### E. The Claim for Punitive Damages

Met Life argues that there are no facts to support plaintiff's claim for punitive damages. Met Life argues that neither negligent claims handling practices nor a violation of the duty of good faith and fair dealing rises to "malice, oppression or fraud" to warrant punitive damages, citing *Stewart v. Truck Ins. Exchange, 17 Cal.App. 4th 468, 482, 21 Cal. Rptr. 2d 338 (1993).*

Plaintiff argues that there is a genuine issue of material fact as to plaintiff's bad faith claim. Plaintiff does not present evidence directly related to the punitive damages claim. Plaintiff does not argue the issue of punitive damages in her opposition. (Doc. 36, Casey

Opposition.) At best, she argues that the claims procedure was in bad faith. She does not argue that the claims procedure was conducted with "malice, oppression or fraud."

Here, the Court has found that there is no issue of fact on the cause of action for bad faith breach of the covenant of good faith and fair dealing. This cause of action is the sole claim upon which punitive damages is based. Therefore, the claims for punitive damages also fails.

Assuming, however, that the bad faith clam would have survived this [**36] motion, the Court considers whether the punitive damages claim must nonetheless be dismissed.

[HN28] *California Civil Code section 3294 ("section 3294")* provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Cal. Civ. Code, § 3294(a).* Clear and convincing evidence has to be "so clear as to leave no substantial doubt [and] sufficiently strong to command the unhesitating assent of every reasonable mind." *In re Angelia P., 28 Cal.3d 908, 919, 171 Cal.Rptr. 637, 623 P.2d 198(1981).*

[HN29] "Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression or fraud to justify an award of punitive damages." *Mock v. Michigan Millers Mutual Ins. Co., 4 Cal.App.4th 306, 328, 5 Cal.Rptr.2d 594 (1992).* An insurer's "inept and negligent handling of a claim" does not support a punitive damages claim. *Patrick v. Maryland Casualty* [*1102] *Co., 217 Cal.App.3d 1566, 1576, 267 Cal.Rptr. 24 (1990).* A mistake of law by an insurance company, an honest error of judgment, [**37] overzealousness, or negligence cannot support punitive damages. *Tomaselli v. Transamerica Ins. Co., 25 Cal.App.4th 1269, 1288, 31 Cal.Rptr.2d 433 (1994)* (poor claims handling does not warrant need "to punish for the maintenance of evil policies which damage the public in general").

[HN30] "Under California law, punitive damages are not available for breaches of contract no matter how gross or willful." *Tibbs v. Great American Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985).* "Although a bad faith

Case 2:11-cv-00590-DMG-PLA Document 1 Filed 01/20/11 Page 117 of 178 Page ID #:136

Page 16

688 F. Supp. 2d 1086, *1102; 2010 U.S. Dist. LEXIS 16494, **37

refusal to defend may constitute a breach of the implied covenant . . ., bad faith does not necessarily indicate the presence of malice, oppression or fraud." *Tibbs, 755 F.2d at 1375* (citations omitted). "There must be substantial evidence of intent to vex, injure and annoy, a conscious disregard of plaintiff's rights, before punitive damages may be awarded." *Betts v. Allstate Insurance Co., 154 Cal.App.3d 688, 709, 201 Cal.Rptr. 528, 540 (1984).*

*Section 3294(c)(1)-(3)* defines:

> [HN31] 1. "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

> 2. [**38] "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

> 3. "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

[HN32] "'Despicable conduct" is conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Michigan Millers Mutual Ins. Co., 4 Cal.App.4th 306, 331, 5 Cal.Rptr.2d 594 (1992).* "Such conduct has been described as "[having] the character of outrage frequently associated with crime.'" *Tomaselli, 25 Cal.App.4th at 1287, 31 Cal.Rptr.2d 433* (quoting *Taylor v. Superior Court, 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P.2d 854 (1979).*

Here, there is an absence of evidence to support a claim for punitive damages. Plaintiff relies upon the "bad faith" of Met Life in denying her claim. But as shown above, a legitimate, genuine dispute existed as to coverage. Plaintiff did not introduce any evidence of other "bad faith." [**39] Further, plaintiff did not

introduce any evidence, much less clear and convincing evidence, of conduct which is despicable or malicious. The evidence demonstrates correspondence between the parties which deals with the claim and processing. There is evidence that Met Life accepted premium payments for 10 years, and denied the claim, but it is undisputed that Casey did not inform Met Life of her divorce. Accepting premium payments under that circumstance is not despicable conduct. No evidence shows conduct which rises to the level of despicable or malicious. Accordingly, even had the bad faith claim survived, the punitive damages claims would be dismissed for an absence of evidence to support the claim.

**F. Cause of Action for Declaratory Relief**

Plaintiff's fourth cause of action is for declaratory relief for the parties' rights and duties under the contract. The Court has found a factual issue for the cause of action for breach of contract. Declaratory [*1103] relief based upon that same cause of action, therefore, also raises an issue of fact.

**CONCLUSION**

For the foregoing reasons, this Court Orders as follows on cross motions for summary judgment, or in the alternative, summary adjudication by [**40] Plaintiff MayeVern Casey and Defendant Metropolitan Life Insurance Company:

> 1. DENIES the motions on the first cause of action for Breach of Contract;

> 2. GRANTS Metropolitan Life's motion on the second cause of action for Breach of the Covenant of Good Faith and Fair Dealing;

> 3. GRANTS Metropolitan Life's motion on the third cause of action for Breach of Fiduciary Duties;

> 4. DENIES the motions on the fourth cause of action for Declaratory Relief; and

> 5. STRIKES the claim for punitive damages.

IT IS SO ORDERED.

688 F. Supp. 2d 1086, *1103; 2010 U.S. Dist. LEXIS 16494, **40

**Dated: February 23, 2010**

**/s/ Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE

**EXHIBIT 'C'**



2 of 2 DOCUMENTS



Analysis
As of: Sep 17, 2010

**WINIFRED R. DEAN, Plaintiff, v. UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.**

**CV 05-6067-GHK (FMOx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 99294*

**August 24, 2007, Decided**
**August 27, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion granted by *Dean v. United of Omaha Life Ins. Co.,* 2008 U.S. Dist. LEXIS 112692 (C.D. Cal., Oct. 14, 2008)

**COUNSEL:** [*1] For Sonja A Gregurek, individually and on behalf of herself and all others similarly situated and on behalf of the General Public, Plaintiff: David A Lingenbrink, LEAD ATTORNEY, David A Lingenbrink Law Offices, Sammamish, WA; Timothy J Morris, LEAD ATTORNEY, Gianelli & Morris, Los Angeles, CA.

For United of Omaha Life Insurance Company, Defendant: David R Carpenter, LEAD ATTORNEY, Sidley Austin LLP, Los Angeles, CA; Hannah R Ruehlman, LEAD ATTORNEY, Sidley Austin LLP, Chicago, IL; Jamie Ostroff, LEAD ATTORNEY, Barger & Wolen LLP, Los Angeles, CA; Joel S Feldman, LEAD ATTORNEY, Sidley Austin, Chicago, IL; John C Holmes, Richard B Hopkins , II, Vivian I Orlando, LEAD ATTORNEYS, Barger and Wolen, Los Angeles, CA; Mark E Haddad, LEAD ATTORNEY, Sidley

Austin, Los Angeles, CA; Martin E Rosen, LEAD ATTORNEY, Barger and Wolen LLP, Los Angeles, CA; Richard J Grad, LEAD ATTORNEY, Sidley Austin Brown & Wood, Los Angeles, CA; Spencer Y Kook, Steven H Weinstein, LEAD ATTORNEYS, Barger & Wolen, Los Angeles, CA.

**JUDGES:** GEORGE H. KING, United States District Judge.

**OPINION BY:** GEORGE H. KING

**OPINION**

**MEMORANDUM AND ORDER RE: CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT / SUMMARY JUDGMENT**

**I. Introduction**

This matter is before us on the [*2] parties' cross-motions for partial summary judgment / summary

judgment. Having reviewed the joint brief filed in support of and in opposition to these motions, we deem this matter suitable for resolution without oral argument. *L.R. 7-15.* To the extent that this Order relies upon evidence subject to an evidentiary objection, such objection is **OVERRULED.** The parties are familiar with the facts; we repeat them only as necessary.

This case involves universal life insurance contracts ("the Policy") issued by Defendant United of Omaha Life Insurance Company ("United") to Class Plaintiff Winifred Dean and others. On July 12, 2005, Dean filed a class action in state court. She brought six claims: (1) breach of contract; (2) fraud; (3) (non-tortious) breach of the implied covenant of good faith and fair dealing; (4) misconduct in violation of California's Consumer Legal Remedies Act; (5) unfair competition in violation of *Cal. Bus. & Prof. Code § 17200 et seq.;* and (6) a separate claim of unfair competition brought on behalf of the Class Plaintiff and a subclass of senior citizens. Defendant removed the case to this Court on August 18, 2005. On October 16, 2006, we certified a primary class [*3] and a subclass. On June 5, 2007, the parties filed a Joint Brief for Partial Summary Judgment/Summary Judgment ("Joint Brief"). On July 26, 2007, the parties filed their Supplemental Joint Brief Re: Statute of Limitations, ("Suppl. Joint Brief"), pursuant to our order for additional briefing.

Dean moves for partial summary judgment concerning (1) liability issues relating to the breach of contract claim and (2) all issues concerning the UCL claim pertaining to senior citizens or, alternatively, only liability issues relating to this UCL claim. United moves for summary judgment on the merits and on the basis of the applicable statutes of limitation in connection with all claims.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* A dispute as to a material fact is genuine [*4] if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial responsibility to point to the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* Where the non-moving party has the burden of proof at trial, the moving party meets its burden by either producing evidence negating an essential element of the non-moving party's claim or defense, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id. at 325; Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).* The burden then shifts to the non-moving party to present specific facts showing that a genuine issue of fact remains for trial. *See Fed. R. Civ. P. 56(e); British Airways v. Boeing, 585 F.2d 946, 950-52 (9th Cir. 1978).*

The party opposing a properly made and supported motion for summary judgment may not rest upon the mere allegations or denials in her pleadings. *See Fed. R. Civ. P. 56(e).* Rather the party must, either by affidavits or as otherwise provided by the rule, set forth specific [*5] facts showing that there is a genuine issue of material fact. *Id.; see also L.R. 56-3* ("Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion."). A mere "scintilla" of evidence supporting the non-moving party's position will not suffice. *Liberty Lobby, Inc., 477 U.S. at 252.* There must be enough evidence for a jury to reasonably find for the non-moving party. *Id.* Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).*

On the other hand, when the moving party bears the burden, the movant must come forward with sufficient evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006).*

We view all facts and draw all inferences [*6] in the light most favorable to the nonmoving party. *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993,*


*8 L. Ed. 2d 176 (1962).* We must accept the nonmoving party's view of all material disputed facts. *LaLonde v. County of Riverside, 204 F.3d 947, 954 (2000).* If, however, the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby, Inc., 477 U.S. at 249-50.*

### III. Analysis

### A. Breach of Contract

### 1. Relevant provisions of the contract

The Policy states that there will be three types of charges: (1) "expense charges"; (2) "surrender charges"; and (3) "cost of insurance charges." Ex. 3, at 159. The Policy specifies the "expense charges" as follows:

> The expense charges are (a) an administrative charge of $ 5.00 per month; (b) an administrative charge of $ 2.00 per premium payment and (c) a percent of premium charge [12% of first year premiums up to the target premium, 3% thereafter].

*Id.*

The Policy defines the Cost of Insurance ("COI") charge as follows:

> The guaranteed monthly cost of insurance charge for each $ 1,000 is shown in the data pages. The charge is based on the Insured's attained age, sex, and rate and risk classes. [P] We may use [*7] current cost of insurance charges less than those shown. Current cost of insurance charges are based on the Insured's issue age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force.

*Id.*

The Policy displays a "Table of Guaranteed Monthly Cost of Insurance Charges Per $ 1,000 of Net Amount at Risk" which states that the "Guaranteed Monthly Cost of Insurance Charges Reflect The Insured's Age, Sex, Risk,

and Rate Classes." Ex. 3, at 133. The Statement of Policy Cost and Benefit Information, delivered with the Policy, further states:

> Current values are based on current interest rate of 6.75% plus an additional 1% after policy year 9, and the cost of insurance charges are subject to change at any time for any reason. If the current interest rate and current cost of insurance charges are changed as allowed by the policy, policy values and benefit may be more or less than the amount shown below.

Ex. 3, at 136.

### 2. Legal Standard for Contract Interpretation

Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 647, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (2003)* (citing [*8] *Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (Cal. 1995)).* A district court sitting in diversity applies the forum state's contractual interpretation rules. Schwarzer, et al., California Practice Guide, Federal Civil Procedure Before Trial P 1:48 (2006). Under California statutory rules of contract interpretation, the mutual intention of the contracting parties at the time of contract formation governs interpretation. *Cal. Civ. Code § 1636.* This intent is to be ascertained, if possible, solely from the language of the contract. *Cal. Civ. Code § 1639.* That language is to be given its "plain meaning or the meaning a layperson would ordinarily attach to it." *Waller, 11 Cal. 4th at 18* (citing *Cal. Civ. Code § 1638*). The "clear and explicit" meaning of provisions, interpreted in their "ordinary and popular sense" is to govern, unless the language is "used by parties in a technical sense or a special meaning is given to them by usage." *Id.* (citing *Cal. Civ. Code §§ 1638, 1644; AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 821-22, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990); Bank of the West v. Superior Court of Contra Costa County, 2 Cal. 4th 1254, 1264-65, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992)).* If the policy language is in any sense unclear [*9] or ambiguous, "it must be interpreted in the sense in which the promisor believed at the time of making it, that the promisee understood it." *See Cal Civ. Code § 1649.* If application



of this rule does not eliminate the ambiguity, the ambiguous language is construed against the party who caused the uncertainty to exist -- in the insurance context, generally the insurer. *AIU, 51 Cal. 3d at 822.*

### 3. Interpretation of "cost of insurance charge"

#### a. Initially, "cost of insurance charge" is ambiguous

The breach of contract dispute centers on the meaning of the term "cost of insurance charge" as used in the Policy. Dean claims that "cost of insurance charge" is a collection for the risk of death, and must be calculated exclusively using the factors expressly stated in the policy (i.e., the insured's issue age, sex, risk and rate classes, the current specified amount, and the length of time the policy has been in force), but may not include loads for expenses or profit. United argues that "cost of insurance charge" is "what United charges the insured to assume the risk of his or her death," Joint Brief 23, and is not limited to the factors expressly stated in the Policy. United contends that the [*10] charge is not "a charge to fund some hypothetical share of all of the death benefits United pays out under its policies generally." *Id.* at 23. [1]

> 1 Dean does not actually argue for this definition of "cost of insurance charge" as United contends, and expressly rejects United's contention that she believes the COI charge is a "hypothetical share of all the death benefits United pays out under its policies generally." Joint Brief 21. Rather, she "claims the COI charge is the product of multiplying the insured's death risk by the net amount at risk, causing insureds to pay their fair share of expected death claims." *Id.* For our purposes, there appears to be no relevant distinction between a charge that is individualized to a single insured and a charge that is a pro rata share of all death claims. Adding expenses to the COI charge is not necessarily consistent or inconsistent with either definition. What is relevant is whether the Policy language provides for such expense charges, not abstract definitions of what the COI charge represents.

"[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *AIU, 51 Cal. 3d at 822.* United argues that "cost [*11] of insurance charge" has the unambiguous meaning of "the amount charged for the insurance, which covers expenses and profit." Joint Brief 29. When "cost of insurance charge" is viewed in isolation, United's reading might be reasonable. We do not read terms of the Policy in isolation however. Insurance policies are to be interpreted "as a whole, with each clause lending meaning to the others." *Titan Corp. v. Aetna Cas. & Sur. Co., 22 Cal. App. 4th 457, 473-74, 27 Cal. Rptr. 2d 476 (1994).* Viewed in the context of the entire Policy, United's reading approaches the unreasonable, because the Policy specifies other charges that the insured must pay. Clearly, the "cost of insurance charge" is not the amount charged for the insurance product, because the Policy also states that the insured will pay separate expense charges. Also, the express delineation of "expense charges" suggests that Dean's reading is correct; a reasonable insured would expect the "expense charges" to include all the expense charges, and not that some expenses would be included in the "cost of insurance charge."

We conclude, initially, that the meaning of "cost of insurance charge" is at least ambiguous.

#### b. Effect of "based on" language

United [*12] argues that Policy language stating that the current COI charges are "based on the insured's issue age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force" suggests that such factors are not the exclusive components of the charge. It claims that "[o]ne thing is 'based on' a second thing when the first is even partially supported by, or has an 'identifiable nexus' with, the second." Joint Brief 37.

A "base" is defined as "that on which something rests or stands[;] foundation." Webster's Third International Dictionary, 180 (3d ed. 1986). [2] Numerous courts have adopted this definition in interpreting the meaning of "based on." *See, e.g., McDaniel v. Chevron Corp., 203 F.3d 1099, 1111 (9th Cir. 2000)* ("[C]ourts have held that the plain meaning of 'based on' is synonymous with 'arising from' and ordinarily refers to a 'starting point' or a 'foundation.'"); *Werre v. David, 275 Mont. 376, 913 P.2d 625, 631-32 (1996)* ("[W]e conclude that the plain meaning of 'based on' is an initial or starting point or foundation."); *C.J.C. v. Corporation of the Catholic Bishop, 138 Wn.2d 699, 985 P.2d 262, 267 (Wash. 1999)* (concluding that the plain meaning of "based [*13] on" refers to the "starting point or foundation").

2   We can look to dictionary definitions in determining the meaning of words in a contract. *MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 649, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (2003).*

We accept the definition of "based on" as indicating a foundation. Given this definition, "based on" is best understood here as simply indicating that a calculation will be performed using the listed factors -- not that the COI charge will be determined using additional, unmentioned factors. *See State ex rel. Snidow v. State Bd. of Equalization, 93 Mont. 19, 17 P.2d 68, 69-73 (1932)* ("[s]uch quotations constitute the basis for the computation . . . and the ordinarily accepted meaning of the words 'based upon' is an initial or starting point for calculation."). United obviously uses some computation to derive the cost of insurance charge from the age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force. "Based on" simply indicates that these factors provide the foundation for that computation. It is used when "equals" cannot be; Dean's policy could not state that the COI charge "is *equal to* the Insured's issue age, sex . . . ." [*14] Nor would it likely have been feasible to include in the Policy a full description of the formula used by United to compute the COI charge.

Although reading "based on" to mean the starting point for a calculation is the best reading, United's reading is potentially reasonable, or at least arguably so. "Based on" could, but would less naturally, mean that the factors listed in the Policy are the main factors that will be used to compute the COI charge, with other factors left unmentioned. Even indulging in United's interpretation, the meaning of "based on" is itself at least ambiguous, and does not clarify the ambiguity of the COI charge.

#### c. Effect of maximum rate provision

United also points to the fact that the Policy specifies a maximum rate for the COI charge and states that United "may use current cost of insurance charges less than those shown." Ex. 3, at 159. United contends that "reading COI charge as Plaintiff argues would erase United's right to set the charge at up to the maximum. The Policy provides that United 'may' charge less than the maximum, but it is not required to do so, and there is nothing in the Policy that restricts the bases for setting the charge less than the [*15] maximum." Joint Brief 31. This argument appears

to be that the maximum rate provision provides United unlimited discretion to set the COI charge at any amount, so long as that amount is less than the maximum. Such an interpretation of the maximum rate provision would render the provision linking the COI charge to the specified factors superfluous -- why would the Policy specify certain factors used to compute the charge if it could be set at United's whim? An interpretation rendering some words as surplusage should be avoided. *Cree v. Waterbury, 78 F.3d 1400, 1405 (9th Cir. 1996)* ("a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties.") (quoting *United States v. Hathaway, 242 F.2d 897, 900 (9th Cir. 1959)).* The only reasonable interpretation of the maximum rate provision is that it provides a guarantee to the insured that the COI charges will not exceed the specified maximum rates. Therefore, the maximum rate provision does not require us to construe the COI charge as United claims.

#### d. Effect of "for any reason" language

United also argues that language in the Statement [*16] of Policy Cost and Benefit Information, delivered with the Policy, stating that "the cost of insurance charges are subject to change at any time for any reason," Ex. 3 at 136, indicates that the COI charge may contain loads for expenses and profit. This argument fails for two reasons. First, reading this language to allow United to set the COI charge using whatever factors it wishes would again render the provision linking the charge to the specified factors superfluous.

Second, a statement that the COI charge may be changed for any reason is not equivalent to a statement that the COI charge may be set based on any factors. Read in context, the statement appears to mean that if the underlying mortality factors change -- for whatever reason -- United can adjust the COI charge accordingly. Yet, the COI charge would still be based on the same factors. This reading is supported by the sentence following "for any reason." It refers to the changes made to the current COI charge as those "allowed by the policy," showing a qualification to the "for any reason" language. *Id.*

#### e. "Cost of insurance charge" is ambiguous

The meaning of "cost of insurance charge" is ambiguous because it is not clear [*17] whether the

charge is based exclusively on "the Insured's issue age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force" or whether it may also incorporate additional factors. [3]

> 3  United relies on *Baymiller v. Guar. Mut. Life Co., 2000 U.S. Dist. LEXIS 22002 (C.D. Cal. 2000)* and *Acuff v. American Gen. Life Ins. Co.,* USDC, C.D. Cal., Case No. SACV 95-580-LHM (EEx) where courts dismissed similar breach of contract claims based on allegedly improperly computed COI charges. The *Baymiller* opinion does not provide the policy language describing the cost of insurance charge, so we cannot compare it to the language in Dean's policy. More importantly, neither decision is binding on us, and we see no reason to defer to another district court's interpretation that conflicts with our own.

### 4. The sense in which United had reason to believe Dean understood "cost of insurance charge"

The ambiguity "is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." *AIU, 51 Cal. 3d at 822* (citing *Cal. Civ. Code § 1649*). Dean cites language in *Bank of* [*18] *the West* that this rule "protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'" *2 Cal. 4th at 1265* (quoting *AIU, 51 Cal. 3d at 822*). However, this language appears to be the judicial gloss on *Cal. Civ. Code § 1649* as applied to cases involving insurance *coverage. See Bank of the West, 2 Cal. 4th at 1265* ("This rule, as applied to a promise of *coverage* in an insurance policy . . . .") (emphasis added); *AIU, 51 Cal. 3d at 822* ("[W]e generally interpret the *coverage* clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.") (emphasis added). The dispute here does not involve coverage, so the language from these cases does not apply directly. However, *Cal. Civ. Code § 1649* has long been understood to reflect an objective, not a subjective, standard. *See, e.g., McClintick v. Leonards, 103 Cal. App. 768, 774, 285 P. 351 (1930)* ("Where the language of one party may be understood in more senses than one, it is to be interpreted in the sense in which he *had reason to suppose* it was understood by the other party.") (citing *Cal. Civ. Code § 1649*) (emphasis added); *Medical Operations Mgmt, Inc. v. Nat. Health Labs., Inc., 176 Cal. App. 3d 886, 222 Cal. Rptr.*

*455 (1986)* [*19] (determining "how a reasonable promisor in [the promisor's] shoes would have believed [the promisee] understood [the promisor's] responsibilities under [the contract]."); 1 Witkin, Summary of California Law, Contracts, § 744, at 833 (where parties differ on meaning of term, it is interpreted according to the meaning one of them attaches if that party did not know, or had no reason to know, of different meaning attached by other party, and other party knew, or had reason to know, of meaning attached by first party) (quoting Restatement of Contracts § 201(2)); *see also Alberts v. Southland Corp., 1997 U.S. Dist. LEXIS 24108 (S.D. Cal. 1997)* (applying Section 201(2) to interpret contract governed by California law).

United has pointed to no extrinsic evidence that might pertain to the sense in which United had reason to believe Dean understood "cost of insurance charge." However, in addressing a separate issue, United claims its agent told Dean, prior to policy issuance, that "the COI charge would be lower for the term insurance rider than for the base UL Policy . . . ." Joint Brief 56. United argues that Dean was therefore put on notice that the base policy COI charge included expenses [*20] because it was greater than the term rider COI charge. To the extent that United intends such evidence to resolve the ambiguity of the Policy, it is insufficient to do so.

First, the agent's declaration does not reveal that he compared the COI charges, as United contends, but that he informed Dean that the "total cost" of a $ 75,000 base policy with a $ 25,000 term rider "would be less [than a $ 100,000 base policy]" because the cost for the rider would be cheaper, dollar for dollar, than the cost of the base policy." Davis Decl. P 5. The "cost of the base policy" does not necessarily equate to the base policy's COI charge because "cost of the base policy" could be understood to include the monthly administrative charges. Moreover, the agent also told Dean that the term rider would not generate any accumulation value, which she could reasonably have assumed accounted for the cost differences. *Id.* Finally, even if Dean understood the agent's comment to pertain to COI charges, the Policy indicates that the two COI charges are based on different sets of factors, which could explain the cost differences. The agent's statement is simply too far removed from the question of whether COI charges [*21] include expenses. Given the statement's ambiguity and the multiple alternative explanations besides that proposed by United, it cannot be that the statement objectively gave United

reason to believe Dean knew that COI charges included expenses. It is insufficient to cure the ambiguity in the Policy.

With nothing further to support a finding in favor of United on this point, we need not consider the evidence that might support Dean here, because we resolve the ambiguity against the insurer. *AIU, 51 Cal. 3d at 822* ("ambiguous language is construed against the party who caused the uncertainty to exist.") (citing *Cal. Civ. Code § 1654*); *Bank of the West, 2 Cal. 4th at 1265*. Therefore, we **GRANT** summary adjudication to Dean on the interpretation of the Policy and interpret "cost of insurance charge" to mean a charge based solely on "the insured's issue age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force," and which does not include loads for expenses or profit.

**5. A factual dispute remains as to whether and when United breached the contract**

Dean contends that United has deducted from class members' accumulation values, cost of insurance [*22] charges that include component factors in addition to those specified in the Policy. Because Dean bears the burden of proof at trial, she must come forward with sufficient evidence "which would entitle [her] to a directed verdict if the evidence went uncontroverted at trial." *Miller, 454 F.3d at 987*. Dean points to United's 2004 annual statement to the Department of Insurance, in which United described the COI charge in its universal life policies as follows:

> Universal Life policies have both current cost of insurance charges and guaranteed maximum cost of insurance charges. The current cost of insurance charges are derived from company mortality experience with loads added to cover expenses, possible adverse deviations and contribution to profit.

Ex. 65, at 627.

United does not object to the admissibility of this statement. It is admissible as a non-hearsay admission by a party opponent under *Federal Rule of Evidence 801(d)(2)(A)*.

Dean also points to the deposition testimony of Robert Hupf, United's designee on the price components of the COI charge, stating:

> Q. But there's -- we talked about the current cost of insurance charge, and it is not simply a pricing mortality rate, correct?
>
> A. [*23] Correct.
>
> Q. It includes additional factors in it besides pricing mortality, correct?
>
> * * *
>
> A. It is a charge in and of itself to produce the profitability level for that risk.

Ex. 19, at 291:5-15.

Dean also points to the following portion of the testimony:

> Q. What was the reason for the lower cost of insurance for the additional insured rider versus the base benefit cost of insurance?
>
> A. . . . And the second thing that happens is the agent takes no commission on that rider, so the company has extra money to help it offer lower cost of insurance charges for that rider.

Ex. 19, at 294:22-295:14.

United disputes that it included expense charges in the COI charge. Statement of Uncontroverted Facts in Support of Joint Brief P7. There, it points to a portion of the deposition testimony of Robert Hupf, stating:

> Q. Did you ever tell the department of insurance at any time that within this cost of insurance charge there were loads added for expenses?
>
> * * *
>
> A. There were no loads added. The cost of insurance is what it is. It wasn't something plus something else.

Q. Did you tell the department of insurance that the cost of insurance charge on these products included factors for expense allocation?

* * *

A. [*24] It doesn't include factors.

Q. Part of the cost of insurance is more than pure -- the mortality -- what did we call that, the pricing mortality, correct?

A. The cost of insurance charges were just sets of numbers that we used to try to develop cash values that were competitive, nothing more, nothing less. They weren't connected to mortality, they weren't connected to expenses; they were?charges [sic] to get the cash values to where we wanted to be.

Ex. V2, at 975:010:18-975:011:21.

Dean has failed to meet her burden to present evidence "which would entitle [her] to a directed verdict if the evidence went uncontroverted at trial." *Miller, 454 F.3d at 987.* Resolution of the question of whether United breached the Policy depends on evaluating the credibility and weight of the evidence relating to this issue. There is a genuine issue of material fact regarding whether United included expenses and profits in the COI charges.

Moreover, while Dean's evidence on the breach element is probative on the question of whether United breached the Policy *at some point,* it does not sufficiently demonstrate that United breached the Policy *on a monthly basis,* as is Dean's theory of this claim. *See Infra,* [*25] Section III.A.6.a. Perhaps an inference could be drawn from Dean's evidence that United breached the Policy each month, but on this issue we must draw all inferences in the light most favorable to United. *Diebold, 369 U.S. at 655.* A genuine issue of material fact remains regarding whether and when United breached the contract, so summary adjudication on the breach element of this claim is **DENIED.**

United's motion for summary judgement as to this claim, based upon its challenge on the merits, is **DENIED.**

## 6. United's Statute of Limitations Defense

United also seeks summary judgment on the basis of the statute of limitations.

### a. Dean alleges multiple breaches by United

United argues that the breach of contract claim is barred by *Cal. Code Civ. Proc. § 337(1),* which provides a four-year limitations period. In response, Dean argues first that the monthly calculation of the COI charge is a divisible/severable obligation, so that a new breach occurred each month and a new cause of action also accrued on a monthly basis.

"Generally, a contract is entire when it contemplates that its parts and the consideration will be common and interdependent, and it is severable if it is inherently susceptible of [*26] division and apportionment." CJS Contracts § 349. "When the contract is severable, the duty to perform each part arises independently and the statute begins to run on the severable obligations from the time the performance of each is due." Witkin California Procedure § 486; *see also Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1388-89, 11 Cal. Rptr. 3d 412 (2004)* ("[W]here performance of contractual obligations is severed into intervals, as in installment contracts, the courts have found that an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due.").

A contract for life insurance is not typically considered divisible. *See* Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 69:5 (3d ed., West) ("As a general rule, a contract of insurance for a term of years is regarded as an entire contract for that term, even though the premiums are paid in annual installments."); *N.Y. Life Ins. Co. v. Statham, 93 U.S. 24, 28, 23 L. Ed. 789 (1876)* ("[T]he contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract [*27] of assurance for life.").

The fact that the Policy is entire, and not divisible, does not mean it can be breached only once. *See, e.g., Lee v. Allstate Life Ins. Co., 361 Ill. App. 3d 970, 838 N.E.2d 15, 297 Ill. Dec. 528 (2005)* (regarding claim that insurer improperly increased the COI rate, court held that "[b]ecause each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which

occurred within the limitations period") (citation omitted); [4] *see also Phillips v. Alaska Hotel & Restaurant Emp. Pension Fund, 944 F.2d 509 (9th Cir. 1991)* ("A continuous series of breaches may allow a plaintiff to argue that a new cause of action accrues with each new breach."). Dean's theory of her claim is that United has continuously violated the terms of the Policy by including expenses in the COI charge on a monthly basis. The Complaint alleges that United "breached the contract . . . by concealing a large additional expense charge within its UL *'current cost of insurance' charge.*" Complaint P 26 (emphasis added). The "current cost of insurance charge is computed and deducted on a monthly basis. *See* Policy, Ex. 3:159 (discussing "monthly deduction amount" which includes the "cost of insurance for [*28] the current month" and which is to be "deducted from the accumulation value on the date of issue and each month thereafter on the same date"). It is different from the cost of insurance *rate,* which is used to calculate the cost of insurance *charge.* [5] *See* Statement of Uncontroverted Facts in Support of Joint Brief D2, D14 (COI charge is computed using COI rate).

    4    Although *Lee* is not a California case, it involves a basic proposition of contract law -- the accrual of causes of action for breach of contract. There is no reason to believe, and United has not demonstrated, that California law on this issue is different from the Illinois law applied in *Lee.*

    5    This fact distinguishes Dean's case from *Jones v. G.E. Life, 2004 U.S. Dist. LEXIS 5297 (M.D. N.C. 2004)* (refusing to find multiple breaches of life insurance policy). There, "the provision of the policy alleged to have been breached addresses only the calculation of the cost of insurance rate, and not the cost of insurance charge." *Id. at *9-10.* Here, the provision of the policy alleged to have been breached addresses the calculation of the "[c]urrent cost of insurance charges." *See* Policy, Ex. 3, at 159 ("Current cost of insurance charges [*29] are based on the Insured's issue age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force.").

United's response is unpersuasive. It claims that the COI rates were set at the inception of the Policy so, if there was any breach, it was when that rate was first applied to Dean in 1996. Suppl. Joint Brief 7. United fails to explain why the subsequent applications of the inflated

rate would not also constitute breaches -- what, if anything, is special or unique about the first imposition of the COI charge?

Furthermore, Dean has alleged that breaches occurred each time United deducted COI charges that included expense loads, which it did on a monthly basis. *See* Complaint, P 20(b) (United breached the policy by "concealing and *charging* additional expenses and loadings within its UL cost of insurance charge") (emphasis added); *id.* at P 26 (discussing breach of contract and noting that "United *accepted* these additional funds . . . to the detriment of Class Plaintiff and Class Members") (emphasis added). In this way, Dean's case mirrors *Howard Jarvis Taxpayers Assn. v. City of La Habra, 25 Cal. 4th 809, 107 Cal. Rptr. 2d 369, 23 P.3d 601 (2001),* where plaintiff taxpayers [*30] brought suit against the city for allegedly imposing and collecting a tax without voter approval as required by law. The city argued that the action was barred by the statute of limitations because the cause of action accrued at the enactment of the tax. The court accepted plaintiff's argument that "they are seeking redress for *two* types of injury: the violation of their right to vote on new taxes, and the City's continued collection of the tax without valid legal authority." *Id. at 819* (emphasis in original). The court stated: "Although plaintiffs have, throughout this action and appeal, emphasized the allegedly improper enactment of the Ordinance, we find well taken their contention that they have, as well, complained of, and sought redress for, the City's continued collection of the allegedly unauthorized tax." *Id. at 819.* The city's allegedly illegal continued collection of the unapproved tax continually accrued the cause of action. *Id. at 818-25.*

United argues that Ninth Circuit case law on this issue requires an overt act to restart the statute of limitations. This rule is apparently confined to cases involving antitrust actions and/or conspiratorial conduct by the defendant(s). [*31] *See Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237-38 (9th Cir. 1987)* (holding that overt act is required in antitrust cases to apply the continuing violation theory); *In re Multidistrict Vehicle Air Pollution, 591 F.2d 68, 70 (9th Cir. 1979)* (antitrust action alleging conspiracy to restrain trade); *David Orgell, Inc. v. Geary's Stores, Inc., 640 F.2d 936, 937 (9th Cir. 1981)* (antitrust case alleging conspiracy to refuse to sell to plaintiff); *Grimmett v. Brown, 75 F.3d 506 (9th Cir. 1996)* (action alleging civil RICO conspiracy). Even if we were to apply the rule requiring

2007 U.S. Dist. LEXIS 99294, *31

an overt act, Dean has plead and proved such acts here. Again, United breached the contract on a monthly basis by including expenses and profits in the COI charge each month. *See Hennegan v. Pacifico Creative Service, Inc.,* 787 F.2d 1299 (9th Cir. 1986) (antitrust action was not time-barred where defendants "inflicted a new and additional injury" during the limitations period). Finally, assuming there was a single initial decision to include expenses in the COI rate (as United contends), that decision was not "irrevocable, immutable, permanent and final." *Id. at 1301.* United had an opportunity to change [*32] the COI rate each month.

Dean's Complaint alleges multiple breaches of contract. Therefore, if Dean proves at trial that United breached the Policy within the limitations period, any such breach or breaches will not be foreclosed by the statute of limitations.

**b. Discovery rule**

Regarding the breaches occurring outside the limitations period, Dean argues that the discovery rule applies to delay accrual of the causes of action. "[A] cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action . . .; this has been interpreted under the discovery rule to be when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *April Enterprises v. KTTV,* 147 Cal. App. 3d 805, 826, 195 Cal. Rptr. 421 (1983) (citation and quotations omitted). In California, the discovery rule is applied to breaches which, as here, "can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *Id. at 832; see also Lee v. Escrow Consultants,* 210 Cal. App. 3d 915, 922, 259 Cal. Rptr. 117 (1989) [*33] (applying discovery rule where investor filed a breach of contract action based on unauthorized withdrawal of escrow funds under false signature).

United argues that Dean has not met her burden to provide evidence, at summary judgment, of how she discovered her claims. *See O'Connor v. Boeing N. Am., 311 F.3d 1139, 1157 (9th Cir. 2002)* ("At summary judgment, Plaintiffs have a duty to explain, and support by way of evidence, how they discovered their claims."); *Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1120 (9th*

*Cir. 1994)* ("To invoke the discovery rule, plaintiff must plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'") (citation omitted); *McKelvey v. Boeing N. Am., 74 Cal. App. 4th 151, 160, 86 Cal. Rptr. 2d 645 (1999)* (same). United argues that Dean must prove not just when she discovered her claim, but when she discovered the facts giving rise to her claim. To the extent that Dean must prove how she discovered the facts underlying her claim, she has done so. *See Suppl. Decl. Of Winifred R. Dean* (declaring that Dean first learned that United was placing expenses in its base benefit COI charge in 2005 after seeking [*34] legal counsel because her policy had become unaffordable).

Application of the discovery rule is typically a question of fact for the jury. *See, e.g., Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1112, 245 Cal. Rptr. 658, 751 P.2d 923 (1988)* ("While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper."); *Enfield v. Hunt, 91 Cal. App. 3d 417, 419-20, 154 Cal. Rptr. 146 (1979)* ("When there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide. The drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence."); *General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991)* ("Where there are disputed questions of fact or facts susceptible to opposing inferences as to when the statute of limitations for fraud commenced, summary judgment is not appropriate."). Therefore, the jury will determine whether Dean may successfully avail herself of the discovery rule or whether, as United contends, she [*35] was put on notice by remarks from her insurance agent and by the annual statements she received from United. These facts are subject to opposing inferences and are not sufficient to foreclose application of the discovery rule at this time. United's motion for summary judgment on the basis of the statute of limitations is **DENIED.**

**B. Fraud Claim**

Dean's fraud claim alleges that United "affirmatively represented and/or fraudulently implied" the COI charge "was a pure mortality charge" and that the class

"justifiably relied" on that representation. Complaint P 29, 32. United seeks summary judgment on this claim. United has not produced any evidence negating an essential element, nor has it shown that Dean does not have enough evidence of an essential element. *Celotex Corp., 477 U.S. at 325; Nissan Fire, 210 F.3d at 1102*. Rather, it bases its argument on its claim that the meaning of the Policy language allows for expense loads in the COI charge, which we reject. Therefore, United has not met its initial burden, and its motion for summary judgment as to the fraud claim, based on its interpretation of the policy language, is **DENIED**.

United also seeks summary judgment on the basis of the statute [*36] of limitations. The fraud claim is subject to a three year statute of limitations. *Cal. Code Civ. Proc. § 338(d)*. This limitations period is subject to the discovery rule. *Id*. ("An action for relief on the ground of fraud . . . is not deemed to have accrued until the discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action . . . ."). Because factual issues remain as to the application of the discovery rule, United's motion for summary judgment on the basis of the statute of limitations is **DENIED**.

**C. Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that United breached the implied covenant of good faith and fair dealing insofar as it included an "affirmative obligation to deal fairly and reasonably towards Class Plaintiff and Class Members in connection with premium calculations and billing." Complaint, P 36. United seeks summary judgment on this claim.

Again, United largely bases its argument for summary judgment on the assumption of success regarding the breach of contract claim. It does make one additional argument -- it contends that "a bad faith claim cannot be maintained '*unless policy benefits are due*.'" [*37] Joint Brief, 45 (citing *Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 35, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)*). United cites the standard for a tort action for breach of the covenant of good faith and fair dealing that, in California, exists in the context of an insurance contract. *See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683-85, 254 Cal. Rptr. 211, 765 P.2d 373 (1988)*. Here, Dean's bad faith claim sounds exclusively in contract. Therefore, United's motion for summary judgment based on its mistaken belief as to the nature of

this claim is **DENIED**. [6]

6  United has not raised the issue of whether the breach of covenant claim is duplicative of the breach of contract claim. *See, e.g., Bionghi v. Metro. Water Dist., 70 Cal. App. 4th 1358, 1370, 83 Cal. Rptr. 2d 388 (1999); Careau & Co. v. Sec. Pac. Bus. Credit, 222 Cal. App. 3d 1371, 1392-1401, 272 Cal. Rptr. 387 (1990); Aragon-Haas v. Family Sec. Ins. Servs., 231 Cal. App. 3d 232, 240, 282 Cal. Rptr. 233 (1991)*. If at trial Dean establishes liability on both claims, and United demonstrates that recovery under both theories would be duplicative, Dean may have to select one claim on which to pursue damages. We do not reach these matters at this time as the parties have not addressed them.

United also seeks summary judgment on the basis of the statute [*38] of limitations. The limitations period for the bad faith claim is four years. *Cal. Code Civ. Proc. § 337(1); Frazier v. Met. Life Ins. Co., 169 Cal. App. 3d 90, 102, 214 Cal. Rptr. 883 (1985)* (non-tortious bad faith claim is subject to *Section 337(1)*). Because factual issues remain as to the application of the discovery rule, United's motion for summary judgment on the basis of the statute of limitations is **DENIED**.

**D. CLRA Claim**

Plaintiff alleges violations of California's Consumer Legal Remedies Act ("CLRA"). United argues that summary judgment should be granted as to this claim, *inter alia*, because the CLRA applies only to "goods or services," *Cal. Civ. Code § 1770*, defined as "tangible chattels" and "work, labor, or services." *Cal. Civ. Code § 1761(a)-(b)*. United argues that insurance is neither "tangible chattels" or "work, labor, or services," citing *Civil Service Emp. Ins. Co. v. Sup. Ct., 22 Cal. 3d 362, 376, 149 Cal. Rptr. 360, 584 P.2d 497 (1978)*. There, the court stated, in dicta, that "insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA] . . . .").

We determine issues of state law as we believe the highest court of the state would do so. *West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S. Ct. 179, 85 L. Ed. 139 (1940)*. [*39] Though dicta by the California Supreme Court in *Civil Service* is not the law of California, it is highly probative of how that court would decide this issue. The cases cited by Dean, involving

claims regarding insurance policies brought under the CLRA, do not suggest the California Supreme Court would decide the issue differently than as stated in *Civil Service*. All but one of these cases involve the provision of medical or repair services. *See, e.g., Lebrilla v. Farmers, 119 Cal. App. 4th 1070, 16 Cal. Rptr. 3d 25 (2004)* (alleging the auto parts used in repairs were not of the quality required by the insurance policy); *Cruz v. Pacificare, 30 Cal. 4th 303, 133 Cal. Rptr. 2d 58, 66 P.3d 1157 (2003)* (alleging the misrepresentation and nondisclosure of internal policies that reduce the quality of the health care provided); *Broughton v. Cigna, 21 Cal. 4th 1066, 90 Cal. Rptr. 2d 334, 988 P.2d 67 (1999)* (alleging deceptive advertising as to the quality of health care services); *Smith v. Pacificare Behavioral Health of Cal., 93 Cal. App. 4th 139, 113 Cal. Rptr. 2d 140 (2001)* (alleging failure to provide promised benefits). In these instances, the insurance policies more directly provide "tangible chattels" and "work, labor, or services" readily cognizable as coming within the definitions provided in *Section 1761.* [*40] Moreover, none of the cases cited by Dean expressly address the applicability of the CLRA to insurance cases. Courts that have addressed the issue have followed the dicta in *Civil Service. See, e.g., Moroney v. Am. Int'l Group (In re Bacon), 415 F. Supp. 2d 1027, 1036 (N.D. Cal. 2006); Estate of Migliaccio v. Midland Nat'l Life Ins. Co., 436 F. Supp. 2d 1095, 1109 (C.D. Cal. 2006); Newland v. Progressive Corp., 2006 U.S. Dist. LEXIS 62359 (E.D. Cal. 2006).* In particular, a recent California Appellate Court decision addressed this issue in depth and concluded that insurance is neither a "good" nor a "service" within the meaning of the CLRA. *Fairbanks v. Superior Court, 154 Cal. App. 4th 435, 64 Cal. Rptr. 3d 623, 2007 Cal. App. LEXIS 1381 (2007).*

While it is possible that a court's formal holdings might deviate from prior dicta, we will not presume that the California Supreme Court would embrace a holding that is the direct opposite of its prior dicta. We therefore hold that insurance is neither a "good" nor a "service" as those terms are used in *Cal. Civ. Code § 1770*, so that Dean may not maintain a claim under the CLRA. United's motion for summary judgment is **GRANTED** [*41] as to the CLRA claim.

**E. UCL Claim Based on COI Charge**

**1. Challenge to Merits of Claim**

Claims under the *California Business and Professions Code § 17200 et seq.* may assert unlawful,

fraudulent, or unfair behavior. "Unlawful" practices must be violations of other statutes; here, the Plaintiff alleges a violation of *Insurance Code § 332*, which requires parties to an insurance contract to disclose material information. Complaint, P 41. *See Krumme v. Mercury Ins. Co., 123 Cal. App. 4th 924, 937, 20 Cal. Rptr. 3d 485 (2004)* ("A claim predicated on a violation of the Insurance Code not related to ratemaking may . . . be framed as a claim under the UCL."). "Fraudulent" practices are those "likely to deceive," *Comm. on Children's Television v. General Foods Corp., 35 Cal. 3d 197, 211, 197 Cal. Rptr. 783, 673 P.2d 660 (1983)*. Plaintiff alleges that Class Members were deceived by United's practice of loading expenses within the cost of insurance charges.

In arguing for summary judgment on this claim, United relies on the assumption that its reading of the COI charge is correct. Because we adopt Dean's reading of COI charge, United's motion for summary judgment as to this claim, based on its interpretation of the Policy language, is **DENIED**.

**2. Statute [*42] of Limitations Defense**

United also seeks summary judgment on the basis of the statute of limitations. The parties disagree as to whether the discovery rule applies to UCL claims. The Supreme Court of California recently "assumed for purposes of . . . discussion that the delayed discovery rule applies to unfair competition claims" but noted that "this point is currently not settled under California law." *Grisham v. Phillip Morris U.S.A., Inc., 40 Cal. 4th 623, 54 Cal. Rptr. 3d 735, 151 P.3d 1151 (2007).* Indeed, there are cases going in both directions. One California case held that "[t]he 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions." *Snapp & Associates Ins. Services, Inc. v. Robertson, 96 Cal. App. 4th 884, 891, 117 Cal. Rptr. 2d 331 (2002); see also Stutz Motor Car of Am. v. Reebok Int'l, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995)* (holding discovery rule inapplicable to UCL claim) [7]; *Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1164, 1184 (C.D. Cal. 2005)* (following *Snapp* decision and holding discovery rule inapplicable to UCL claim). Another case presumed the discovery rule applicable to [*43] UCL claims. *See Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1295, 119 Cal. Rptr. 2d 190 (2002)* (limitations period under UCL "probably" runs "from the time a

reasonable person would have discovered the basis for the claim"). [8]

  [7]  In holding the discovery rule inapplicable, the court in *Stutz Motor Car* cited opinions holding the discovery rule inapplicable to antitrust cases. *Id. at 891.* The court apparently understood the plaintiff's UCL claim to fall within the "unfair" prong of the UCL statute, which has since been tied directly to antitrust violations. *See Cel-Tech Communications v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999)* ("the word 'unfair' in [the UCL] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . ., or otherwise significantly threatens or harms competition.").
  [8]  Dean also cites *Glue-Fold, Inc. v. Slautterback Corp., 82 Cal. App. 4th 1018, 98 Cal. Rptr. 2d 661 (2000)* as a case presuming the discovery rule to be applicable to a UCL action. However, in that case, the court merely assumed "for purposes of argument" that the discovery rule was applicable. *Id. at 1030.*

  The coverage of the UCL statute is "sweeping, [*44] embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Rubin v. Green, 4 Cal. 4th 1187, 1200, 17 Cal. Rptr. 2d 828, 847 P.2d 1044 (1993)* (quotation marks and citation omitted). The appropriate question, therefore, is not whether the discovery rule applies to UCL actions generally, but whether the discovery rule applies to the particular type of UCL claim asserted here. The substance of Dean's UCL claim is analogous to a common law action for fraud, for which the discovery rule is applicable by statute. *See Cal. Code Civ. Proc. § 338(d).* We agree with Dean that "[p]roviding less consumer protection for UCL claims than for common law claims is inappropriate." Joint Brief 58. We note further that, of the above cited cases on this issue, the case with a UCL claim most analogous to Dean's found the discovery rule "probably" applicable. *Mass. Mut. Life. Ins. Co., 97 Cal. App. 4th at 1286* (involving suit challenging an insurer's advertising of the dividend rate paid by its life insurance policies).

  We therefore hold the discovery rule applicable to UCL actions. Because factual issues remain as to the application of the discovery rule, United's motion for

summary judgment [*45] on the basis of the statute of limitations is **DENIED.**

**F. UCL Claim Based on Lack of Senior Citizen Notice**

  Dean's UCL claim pertaining to the subclass alleges that United violated *Cal. Ins. Code § 10127.13,* which provides that:

>   All individual life insurance policies . . . for senior citizens that contain a surrender charge period shall . . . disclose the location of the surrender information in bold 12-point print on the cover page of the policy or printed on a sticker that is affixed to the cover page or to the policy jacket.

  United provided a notice stating that "the surrender period and the surrender charges will be found in the Policy contract." Ex. 3, at 141. Dean claims this notice is inadequate since it fails to state where within the policy the surrender information is located. United contends that the notice is adequate and alleges other deficiencies in Dean's claim.

**1. Statute of Limitations**

  United seeks summary judgment because, it alleges, the claim is barred by the applicable statute of limitations. Dean has the burden at trial of proving any claimed late discovery. *April Enterprises, 147 Cal. App. 3d at 832.* Therefore, to be entitled to summary judgement on the statute of limitations [*46] issue here, United must either produce evidence negating an essential element of the discovery rule or show that Dean does not have enough evidence of an essential element to carry her burden of persuasion at trial. *Celotex Corp, 477 U.S. at 323.*

  United's notice was sufficient to allow Dean to identify a violation of the statute, assuming she had knowledge of the statute. The discovery rule is concerned with the discovery of facts relating to the cause of action, not the realization of the legal grounds to assert a claim. *See April Enterprises, 147 Cal. App. 3d at 826* ("a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action" (emphasis added)). A plaintiff's ignorance as to the law (i.e., whether a particular set of known facts gives rise to a legal claim)

does not delay accrual of the cause of action. *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897-98, 218 Cal. Rptr. 313, 705 P.2d 886 (1985) ("[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns or should have learned, the facts essential to his claim. It is irrelevant that [*47] the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." (internal citations omitted) (emphasis in original)).

United has met its initial burden to negate the discovery rule by showing that Dean was provided a Policy that included a notice regarding the surrender charges. The burden then shifts to Dean to present specific facts showing that a genuine issue of fact remains for trial. *See Fed. R. Civ. P. 56(e)*; *British Airways*, 585 F.2d at 950-52. Dean has not presented any evidence to show there is a genuine issue of fact here. She merely asserts that she and Class Members did not have actual knowledge that they were not given the required notice and then states that it would be "absurd to say that senior citizens are on constructive notice" of the disclosure law. Joint Brief 60. However, if Dean had read the notice on her Policy, she would have identified the alleged violation of the statute because it is apparent that the notice does not state the page number of the surrender charge information. Moreover, it is not "absurd" to presume knowledge of the statute in this case. It is true that the statute assumes senior citizens do not have knowledge [*48] of surrender charges, but once the Policy informed her of such charges, she could have made efforts to learn of the laws applicable to such charges. Dean has therefore failed to demonstrate the existence of a genuine issue of fact relating to whether the delayed discovery rule applies to this claim. United's motion for summary judgment is **GRANTED** as to Dean's subclass claim and any Subclass Member's claim that is beyond the four-year limitations period.

**2. Merits of Claim**

United also seeks summary judgment on various theories attacking the merits of the claim. Although our ruling on the statute of limitations disposes of Dean's claim, we address one such theory because it may have implications for subclass maintainability.

United argues that any deficiency in the surrender charges notice has not caused Dean any injury. Joint Brief 53-54. Dean, "as the class representative, must meet

the standing requirements of [the UCL]; that is, [s]he must have suffered injury in fact and have lost money or property as a result of" United's allegedly unlawful activity. 9 *McAdams v. Monier, Inc.*, 151 Cal. App. 4th 667, 682, 60 Cal. Rptr. 3d 111 (2007) (citing Cal. Bus. & Prof. Code, §§ 17203, 17204). As evidence of causation, [*49] Dean submitted her declaration stating:

> During the application process for the universal life insurance policy ("Policy") at issue in this lawsuit, I was not aware of the Policy's surrender charges if I cancelled the Policy within the first 15 years. Had I known about these surrender charges, I would have asked the agent or United what I could do, if anything, to avoid those surrender charges. Had I been told by United or its agent that I could avoid exposure to surrender charges by purchasing more term rider, I would have done so.

Dean Decl. P 2.

> 9  We assume for purposes of this discussion that United's failure to identify the precise location of the surrender information constitutes a violation of the statute.

Therefore, according to her declaration, Dean's loss was caused because she "was not aware of the Policy's surrender charges." *Id.* However, it is undisputed that United did provide notice of the surrender charges. United's failure to identify the location of the details of the surrender charges did not result in Dean being unaware of the surrender charges themselves. *See Brown v. Bank of America*, 457 F.Supp. 2d 82, 89 (D. Mass. 2006) (granting summary judgment for defendant as to [*50] UCL claim because deficient notice did not cause loss where customer was made aware of charge elsewhere); *Meyer v. Sprint Spectrum*, 150 Cal. App. 4th 1136, 59 Cal. Rptr. 3d 309 (2007) (dismissing UCL claim because plaintiffs did not allege that they paid their bill *as a result of* the allegedly illegal terms in their customer service agreements).

Moreover, the fact that Dean was unaware of the surrender charges necessarily means she did not read the surrender charge notice. Any deficiency in that notice, therefore, would be harmless. *See Daro v. Superior*

*Court, 151 Cal. App. 4th 1079, 61 Cal. Rptr. 3d 716 (2007)* (the "causal connection [required for a UCL claim] is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").

Because Dean has provided no evidence that would establish standing for her to pursue this UCL claim, United's motion for summary judgment is **GRANTED** based on this theory as well.

## G. Subclass and Primary Class Issues

### 1. Subclass

Class Counsel is **ORDERED** to show cause, within thirty days of the date of this Order, why the Subclass should not be decertified given the lack of a Subclass Representative, the potential need for individualized showings regarding causation, [*51] [10] and the potential that numerosity is no longer met due to the exclusion of Subclass Members with time-barred claims. Although at the time we certified the subclass, Dean was unable to identify the precise number of Subclass Members, Class Counsel should now be able to do so, given the additional discovery since that time.

> 10  It appears that a similar causation analysis to that performed on Dean's claim will have to be done on each Subclass Member's claim. We may have to examine each such claim to determine whether any loss was actually caused by the failure of United to specify the precise page of the surrender charge information, even though it provided notice of the existence of surrender charges. At the time of class certification, United made a similar argument that individualized showings of causation would be required for the fraud and CLRA claims. We rejected this argument because an inference of reliance could be made as to those claims. *See* Order Re: Motion for Class Certification 5. However, it is not apparent that such an inference could be made as to the subclass UCL claim, or whether individualized showings must be made.

### 2. Primary Class

We also question the ability of [*52] Dean to continue to represent the primary class, given the somewhat unique facts pertaining to the statute of limitations defense asserted against her. United's principal argument against application of the discovery rule is based on the fact that Dean's Policy includes a term rider. But, as Dean notes, 99% of class members purchased no term rider. Joint Brief 59. Although the statute of limitations defense itself is not unique to Dean but is potentially applicable to many Class Members, the somewhat unique facts pertaining to Dean raise several questions. First, do the factual differences pertaining to the application of the discovery rule render Dean's claims atypical of the claims of Class Members? *See Fed. R. Civ. P. 23(a)(3); Newberg on Class Actions* §§ 3.15, 3.16 (Shepard's/McGraw-Hill 3rd ed 1992). Second, do the factual differences render Dean an inadequate class representative? *See Fed. R. Civ. P. 23(a)(4).* If so, does Class Counsel intend to move to substitute a new Class Representative to represent Class Members with no term riders, and attempt to maintain a new subclass of members with term riders? Even then, it is possible that factual differences among the claims of Class [*53] Members with term riders would preclude certification of a new subclass. For example, assume some Class Members have insurance configurations of 50% base policy and 50% term rider. In such an instance, comparing the base policy COI charge with the term rider COI charge may not involve as complex a calculation as it might with a configuration such as Dean's (75% base policy and 25% term rider). The strength of United's argument for application of the discovery rule might therefore depend on the particular insurance configuration of the Class Member. Dean **SHALL** file a brief addressing these questions within 30 days of the date of this Order. United **SHALL** respond within fourteen days thereafter. Dean may file a reply within fourteen days thereafter.

In the interim, the parties **SHALL** schedule and attend a mediation / settlement conference within thirty days hereof. Within fourteen days hereof, counsel **SHALL** file a joint status report identifying the person who has agreed to conduct such mediation or settlement conference, and the date cleared with that person for such mediation / settlement conference within the deadline set forth above.

**IT IS SO ORDERED.**

DATED: This 24 day of August, 2007.

/s/ [*54] George H. King

2007 U.S. Dist. LEXIS 99294, *54

GEORGE H. KING                                    United States District Judge

1

## **PROOF OF SERVICE**

2

3    STATE OF CALIFORNIA          )
                                  )    ss.:
4    COUNTY OF LOS ANGELES        )

5         I am employed in the County of Los Angeles, State of California.  I am over the age
     of 18 and not a party to the within action.  My business address is 5200 Lankershim
6    Boulevard, Suite 850, North Hollywood, California 91601.

7         On September 20, 2010, I served on interested parties in said action the within:

8         **REPLY IN SUPPORT OF DEMURRER TO COMPLAINT; MEMORANDUM OF**
     **POINTS AND AUTHORITIES; DECLARATION OF JULIA AZRAEL**
9

10

     __X__        **BY MAIL:**  By placing true copies thereof in sealed envelope(s) addressed as
11   stated on the attached mailing list, and placing it for collection and mailing following
     ordinary business practices.  I am readily familiar with this firm's practice of collection and
12   processing correspondence for mailing.  Under that practice it would be deposited with the
     U.S. postal service on that same day in the ordinary course of business.  I am aware that on
13   motion of party served, service is presumed invalid if postal cancellation date or postage
     meter date is more than 1 day after date of deposit for mailing in affidavit.
14

          _____        **BY PDF VIA EMAIL:**  I caused the above-referenced document(s) to be sent
15   via email in pdf format to the attached address(es).

16        _____        **BY OVERNIGHT COURIER:**  I caused the above-referenced document(s)
     to be delivered to FedEx for delivery to the attached address(es).
17

18        _____        **BY FAX:**  I transmitted a copy of the foregoing document(s) this date via
     telecopier to the facsimile numbers shown above.

19        _____        **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered by
     hand to the offices of the addressee(s).
20

21   __X__      **[State]**      I declare under penalty of perjury under the laws of the State of
                                 California that the foregoing is true and correct.
22

     _____      **[Federal]**    I declare that I am employed in the office of a member of the bar
23                               of this court at whose direction the service was made.

     Executed on September 20, 2010, at North Hollywood, California.
24

25

26   _____                    _____
     CHRISTINE M. TINKER                                  (Signature)
27       (Type or print name)

28

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No.  BC442039

Gary Rand, Esq.
Suzanne E. Rand-Lewis, Esq.
Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523

(818) 779-1720
(818) 779-1730 - FAX
randandlewislaw@gmail.com - EMAIL

Attorneys for Plaintiff

Huong V. Vu, Esq.
PROGRESSIVE CHOICE INSURANCE
COMPANY
10940 White Rock Road
Rancho Cordova, California  95670

(916) 864-6030
(916) 904-5563 - FAX
hvu2@progressive.com - EMAIL

[Courtesy Copy]

Progressive's Reply in Support of Demurrer to Complaint

1 Julia Azrael (Bar No. 109049)
John S. Curtis (Bar No. 50350)
Adam S. Feldman (Bar No. 262167)
2 **LAW OFFICES OF JULIA AZRAEL**
5200 Lankershim Boulevard, Suite 850
3 North Hollywood, California 91601
Telephone: (818) 766-5177
4 Facsimile: (818) 766-5047

5 Attorneys for Defendant
PROGRESSIVE CHOICE INSURANCE COMPANY

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **FOR THE COUNTY OF LOS ANGELES**

10

| | |
|---|---|
| 11 HAGOP BEKHLOYAN, | ) CASE NO. BC442039 |
| | ) |
| Plaintiff, | ) Case Assigned to the Honorable Abraham |
| 12 | ) Khan – Dept. 51 |
| vs. | ) |
| 13 | ) [Complaint Filed: March 26, 2010] |
| PROGRESSIVE CHOICE INSURANCE | ) |
| 14 COMPANY, PROGRESSIVE | ) |
| CASUALTY INSURANCE COMPANY, | ) **REQUEST FOR STATEMENT OF** |
| 15 PROGRESSIVE DIRECT HOLDING, | ) **DAMAGES** |
| INC., DOES 1 through 100; | ) |
| 16 | ) |
| Defendants. | ) Discovery Cutoff:   None |
| 17 | ) Motion Cutoff:      None |
| | ) Trial Date:          None |

18

19

20 TO PLAINTIFF, HAGOP BEKHLOYAN, AND TO HIS ATTORNEYS OF RECORD:

21

22    Pursuant to *Code of Civil Procedure*, Section 425.11, Defendant PROGRESSIVE

23 CHOICE INSURANCE COMPANY requests that Plaintiff HAGOP BEKHLOYAN state

24 within fifteen (15) days the damages being sought in this litigation by itemizing the special,

25 general and punitive damages Plaintiff is claiming.

26 / / /

27 / / /

28

Dated: September 28, 2010

LAW OFFICES OF JULIA AZRAEL

By: _____
JOHN S. CURTIS (for) JULIA AZRAEL
Attorneys for Defendant PROGRESSIVE
CHOICE INSURANCE COMPANY

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                        ) ss.:
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

    On September 28, 2010, I served on interested parties in said action the within:

**REQUEST FOR STATEMENT OF DAMAGES**

**_X_**        **BY MAIL:** By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

**_____**        **BY PDF VIA EMAIL:** I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

**_____**        **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

**_____**        **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

**_____**        **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

**_X_**        **[State]**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**_____**        **[Federal]**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

    Executed on September 28, 2010, at North Hollywood, California.

_____        _____
  CHRISTINE M. TINKER                  
   (Type or print name)                (Signature)

1

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
**Case No.  BC442039**

2

Gary Rand, Esq.                                Attorneys for Plaintiff
Suzanne E. Rand-Lewis, Esq.

3

Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations

4

5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523

5

(818) 779-1720

6

(818) 779-1730 - FAX
randandlewislaw@gmail.com - EMAIL

7

8

Huong V. Vu, Esq.                              [Courtesy Copy]
PROGRESSIVE CHOICE INSURANCE
COMPANY

9

10940 White Rock Road
Rancho Cordova, California  95670

10

(916) 864-6030

11

(916) 904-5563 - FAX
hvu2@progressive.com - EMAIL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Progressive's Request for Statement of Damages

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 09/27/10                                                              DEPT. 51

HONORABLE ABRAHAM KHAN              JUDGE | C. PRESCOTT              DEPUTY CLERK

HONORABLE                       JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
#
        M. CLARK,   C.A.        Deputy Sheriff | D. WHITESEL, CSR #6287    Reporter

| | | |
|---|---|---|
| 9:00 am | BC442039 | Plaintiff Counsel   TIMOTHY D. RAND-LEWIS (X) |
| | HAGOP BEKHLOYAN VS PROGRESSIVE CHOICE INSURANCE COMPANY ET AL | Defendant Counsel |

**NATURE OF PROCEEDINGS:**

DEMURRER OF DEFENDANT, PROGRESSIVE CHOICE INSURANCE
COMPANY, TO COMPLAINT

Court has read and considered all papers submitted
in opposition and support of demurrer.

The cour issues its tentative ruling.

Demurrer called for heaering.

Plaintiff's oral motion to strike or overrule the
demurrer is DENIED.

Court adopts its tentative ruling as its final order
SUSTAINING THE DEMURRER with 20 days leave to amend.

Previously set Case Management Conference date of
12/10/10 remains.

Plaintiff to give notice.

MINUTES ENTERED
09/27/10
COUNTY CLERK

1 | Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
2 | Suzanne E. Rand-Lewis, Esq., State Bar No. 126219
5990 Sepulveda Boulevard, Suite 330
3 | Sherman Oaks, California 91411-2523
(818) 779-1720
4

REC'D SEP 2 9 2010

5 | Attorney for Plaintiff, Hagop Bekhloyan

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11 | HAGOP BEKHLOYAN,                         CASE NO. BC442039

12 |        Plaintiff;                        Assigned for all purposes to
                                             Hon. Abraham Khan
13 | vs.                                      Department 51

14 | PROGRESSIVE CHOICE INSURANCE            **NOTICE OF RULING**
     COMPANY, PROGRESSIVE CASUALTY
15 | INSURANCE COMPANY,                       Date:   September 27, 2010
     PROGRESSIVE DIRECT HOLDING, INC.,       Time:   8:30 a.m.
16 | and DOES 1 through 100;                  Dept.:  51

17 |        Defendants.                       Complaint Filed:   July 22, 2010
                                             Trial Date:        None Set
18

19          TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

20          PLEASE TAKE NOTICE that on September 27, 2010, in Department 51 of the above

21 | captioned Court, the Demurrer of Defendant, PROGRESSIVE CHOICE INSURANCE COMPANY

22 | (hereinafter referred to as "Defendant"), came on regularly for hearing. Timothy D. Rand-Lewis

23 | appeared on behalf of Plaintiff. No appearance was made on behalf of Defendant. At that time the

24 | Court ruled as follows:

25 |        1.     Defendant's Demurrer is sustained with twenty (20) days leave to amend. A true and

26 |               correct copy of the Court's ruling is attached hereto as Exhibit "A."

27 | ///

28 | ///

2.      Plaintiff to give notice.

DATED: September 27, 2010

GARY RAND & SUZANNE E. RAND-LEWIS
PROFESSIONAL LAW CORPORATIONS

BY:
        SUZANNE E. RAND-LEWIS
        Attorney for Plaintiff
        Hagop Bekhloyan

11

*Superior Court of California*

*County of Los Angeles*

*Department 51*

Honorable Abraham Khan

BEKHLOYAN,

            Plaintiff(s),

      v.

PROGRESSIVE CHOICE INSURANCE
COMPANY,

            Defendant(s).

Case No.: BC442039

Hearing Date: 9/27/10

~~[TENTATIVE]~~ RULING RE:
DEMURRER OF DEFENDANT
PROGRESSIVE CHOICE INSURANCE
COMPANY TO COMPLAINT.

The demurrer is sustained, with 20 days' leave to amend.

Courts generally allow at least one time to amend a complaint, after sustaining a demurrer. McDonald v. Sup. Ct. (1986) 180 Cal. App 3d 297, 303.

   A.  Breach of Fiduciary Duties

The fiduciary claim does not lie against the insurer, as explained in the following treatise excerpt:

[11:146] Insurers Not Fiduciaries: The insurer-insured relationship is not a true "fiduciary relationship" in the same sense as the relationship between trustee and beneficiary, or attorney and client. [Vu v. Prudential Prop. & Cas. Ins. Co. (2001) 26 C4th 1142, 1150–



1

1151, 113 CR2d 70, 76–77 (citing text); Tran v. Farmers Group, Inc. (2002) 104 CA4th 1202, 1212, 128 CR2d 728, 735 (citing text)]

Nonetheless, courts impose fiduciary-like duties on insurers because of the insured's special dependence on the insurer's good faith and performance and the unequal bargaining power between them. These "special and heightened duties" arise "because of the unique nature of the insurance contract, not because the insurer is a fiduciary." [Vu v. Prudential Prop. & Cas. Ins. Co., supra, 26 C4th at 1151, 113 CR2d at 77 (citing text); see Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc. (2004) 115 CA4th 1145, 1158, 10 CR3d 582, 593 (citing text)]

Cal. Practice Guide: Ins. Litig. (The Rutter Group 2009) ¶ 11:146.

B.  Fraud, Negligent Misrepresentation and Concealment

All required details regarding fraud are not alleged.

With regard to fraud claims, pleadings must allege facts as to "'how, when, where, to whom, and by what means the representations were tendered.'" Stansfield v. Starkey (1990) 220 Cal. App. 3d 59, 73. *Accord* Wald v. Truspeed Motorcars, LLC (2010) _ Cal.App.4th _, _, 2010 WL 1744893, 7; Morgan v. AT & T Wireless Services, Inc. (2009) 177 Cal.App.4th 1235, 1262.

"If a fraud claim is based upon failure to disclose, and 'the duty to disclose arises from the making of representations that were misleading or false, then those allegations should be described.'" Morgan v. AT&T Wireless Services, Inc. (2009) 177 Cal. App. 4th 1235, 1262.

"'[M]ere conclusory allegations that the omissions were intentional and for the purpose of defrauding and deceiving plaintiffs and bringing about the purchase ... and that plaintiffs relied on the omissions in making such purchase are insufficient [to show fraud by concealment].'" Linear Technology Corp. v. Applied Materials, Inc. (2007) 152 Cal.App.4th 115, 132.

2

C. Negligence

The negligence theory is not available against insurers, as summarized in the following treatise quoted:

[11:205] Negligence: Negligence is not among the theories of recovery generally available against insurers. Delay or failure to pay policy benefits may be actionable as a breach of contract or bad faith, not negligence. [See Sanchez v. Lindsey Morden Claims Services, Inc., supra, 72 CA4th at 254, 84 CR2d at 802 (citing text); Benavides v. State Farm Gen. Ins. Co. (2006) 136 CA4th 1241, 1253–1254, 39 CR3d 650, 658 (J. Mosk concur.opn.) (citing text)]

....

[11:213.19] Compare—insurer's negligent claims handling: An insurer's negligent handling of its insured's claim may give rise to other causes of action (e.g., breach of contract), but it does not establish a breach of the covenant of good faith and fair dealing. [Adelman v. Associated Int'l Ins. Co., supra, 90 CA4th at 369–370, 108 CR2d at 800 (citing text); Tento Int'l, Inc. v. State Farm Fire & Cas. Co. (9th Cir. 2000) 222 F3d 660, 664 (applying Calif. law)—mere negligent claims handling not enough to establish breach of implied covenant; Everett Assocs., Inc. v. Transcontinental Ins. Co. (ND CA 2001) 159 F.Supp.2d 1196, 1204 (applying Calif. law)—insurer's alleged negligence in investigating third party claims against its insured did not give rise to separate negligence cause of action]

Cal. Practice Guide: Ins. Litig. (The Rutter Group 2009) ¶ 11:206.

D. Intentional Infliction of Emotional Distress

3

The allegations regarding insurance bad faith are inadequate to support a conclusion of outrageous conduct.

Allegations of insurer delay or denial of claims, or of violations of the Insurance Code, alone, are insufficiently outrageous, and do not state a cause of action for intentional infliction of emotional distress. Coleman v. Republic Indem. Ins. Co. of Cal. (2005) 132 Cal.App.4th 403, 417. As to a demurrer proceeding, a complaint was sufficient where it alleged that the insurer intentionally delayed payments vital to the support of the insured and her family. *See* Hernandez v. General Adjustment Bureau (1988) 199 Cal.App.3d 999, 1007.

Also, as to claims for intentional infliction of emotional distress, "[t]he complaint must plead specific facts that establish severe emotional distress resulting from defendant's conduct." Michaelian v. State Comp. Ins. Fund (1996) 50 Cal. App. 4th 1093, 1114.

E.   Violation of Business & Professions Code § 17200

The pleading impermissibly alleges insurer violations of the type included in Insurance Code Section 790.03. Allegations of wrongful conduct that are the type of activities covered by Insurance Code Section 790.03 cannot constitute unfair business practices, under the reasoning of *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287. Textron Financial Corp. v. National Union Fire Ins. Co. (2004) 118 Cal. App. 4th 1061, 1070. A violation of a provision of some Insurance Code sections can be a predicate statutory violation supporting a claim of unlawful business practices. Troyk v. Farmers Group, Inc. (2009) 171 Cal.App.4th 1305, 1336 n.18 (applying Insurance Code Section 381). *See also generally* 1-2 MB Practice Guide: CA Unfair Comp & Bus Torts 2.09 (MB 2010), *available at* www.Lexis.com .

F.   Violation of Consumer Legal Remedies Act [Civil Code § 1750, et seq.]

4

The CLRA does not apply in the insurance context. *See* <u>Fairbanks v. Sup. Ct.</u> (2009) 46 Cal. 4th 56, 65 (holding life insurance is not a good or service, and stating dicta that sellers of virtually all intangible goods like investment securities, bank deposit accounts, and loans, loans, are not covered by CLRA); <u>Broberg v. The Guardian Life Ins. Co. of Amer.</u> (2009) 171 Cal. App. 4th 912, 924 ("'Goods' are defined in the CLRA as tangible chattels bought or leased for personal, family or household use. (Civ. Code, § 1761, subd. (a).) Insurance is not a tangible item. 'Services' are defined as 'work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.' (Civ. Code, § 1761, subd. (b).)").

The *Broughton* opinion cited in opposition did not state any conclusion about whether the CLRA applies in the insurance context. *See* <u>Broughton v. Cigna Healthplans</u> (1999) 21 Cal. 4th 1066, 1077 ("In deciding whether CLRA claims are arbitrable...."). "'A decision, of course, does not stand for a proposition not considered by the court.'" <u>Flatley v. Mauro</u> (2006) 39 Cal. 4th 299, 320.

Additionally, the allegations regarding statutory compliance are insufficiently specific as to notice. *See* <u>Morgan v. AT & T Wireless Services, Inc.</u> (2009) 177 Cal.App.4th 1235, 1261 (to comply with CLRA notice requirements, it is sufficient to allege notice given to defendant more than 30 days before filing a complaint and failure to correct wrongs).

Dated: 9/27/10.

_____

                                    /s/

                                    Hon. Abraham Khan
                                    Superior Court Judge

5

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is located in the county where the mailing described below took place. I am over the age of 18 years and am not a party to this action.

On September 27, 2010, I served the following document(s) entitled: **NOTICE OF RULING** on all interested parties in this action as follows:

Julia Azrael, Esq.                          Attorney for Defendant,
Law Offices of Julia Azrael                 Progressive Choice Insurance Company
5200 Lankershim Boulevard
Suite 850
North Hollywood, California 91601
Fax: (818) 766-5047

☒    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to OVERNITE EXPRESS for delivery to the above address(es).

**BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

☒    [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 27, 2010, at Sherman Oaks, California.

Veronica Campos

REC'D NOV 1 5 2010

1   Gary Rand & Suzanne E. Rand-Lewis
    Professional Law Corporations
2   Gary Rand, Esq., State Bar No. 38184
    5990 Sepulveda Boulevard, Suite 330
3   Sherman Oaks, California 91411-2523
    (818) 779-1720
4

5   Attorney for Plaintiff, Hagop Bekhloyan

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  HAGOP BEKHLOYAN                         CASE NO. BC442039

12          Plaintiff;                      Assigned for all purposes to
                                            Hon. Abraham Khan
13  vs.                                     Department 51

14  PROGRESSIVE CHOICE INSURANCE            **NOTICE OF UNAVAILABILITY OF**
    COMPANY, PROGRESSIVE CASUALTY           **COUNSEL**
15  INSURANCE COMPANY,
    PROGRESSIVE DIRECT HOLDING, INC.,       Complaint Filed:    July 22, 2010
16  DOES 1 through 100;
                                            Trial Date:         None Set
17          Defendants.

18  _____

19  TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

20          **PLEASE TAKE NOTICE** that Plaintiff's counsel's office is closed for the

21  Thanksgiving Holiday beginning November 22, 2010 through November 26, 2010, and for the

22  Christmas holidays beginning December 23, 2010 through January 3, 2011.  Plaintiff's counsel's

23  office will be unavailable for any purpose including but not limited to, receiving notices of any

24  kind requiring time sensitive responses, responding to *ex parte* applications, court appearances,

25  depositions, law and motion hearings and/or any other nature on the above stated dates.

26  ///

27  ///

28  ///

                                            1
                        NOTICE OF UNAVAILABILITY OF COUNSEL

1    Knowingly and willfully scheduling a conflicting appearance or requiring a time sensitive

2    response during this period of unavailability without good cause or necessity may constitute

3    sanctionable conduct.  See *Tenderloin Housing Clinic v. Sparks*, 8 Cal. App. 4th 229 (1992).

4

5    DATED: November 11, 2010                    Gary Rand & Suzanne E. Rand-Lewis
                                                 Professional Law Corporations
6

7
                                                 BY: _____
8                                                    Suzanne E. Rand-Lewis
                                                     Attorney for Plaintiffs
9                                                    Hagop Bekhloyan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF UNAVAILABILITY OF COUNSEL

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

3

      I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business

4

address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is located in the county where the mailing described below took place. I am over the age of 18 years and am not a party to this action.

5

6

      On November 11, 2010, I served the following document(s) entitled: **"NOTICE OF UNAVAILABILITY"** on all interested parties in this action as follows:

7

Julia Azrael, Esq.                                          Attorney for Defendant,

8

Law Offices of Julia Azrael                    Progressive Choice Insurance Company
5200 Lankershim Boulevard

9

Suite 850
North Hollywood, California 91601

10

Fax: (818) 766-5047

11

  ☒  **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and

12

placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and

13

other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage

14

thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if

15

the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

16

**BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered

17

to OVERNITE EXPRESS for delivery to the above address(es).

18

**BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

19

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

20

  ☒  [State] I declare under penalty of perjury under the laws of the State of California that the

21

foregoing is true and correct.

22

[Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

23

Executed on November 11, 2010, at Sherman Oaks, California.

24

25

26

Jon Ramone

27

28

1

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Julia Azrael (109049)
LAW OFFICES OF JULIA AZRAEL
5200 Lankershim Boulevard, Suite 850
North Hollywood, California 91601

TELEPHONE NO.: (818) 766-5177   FAX NO. *(Optional):* (818) 766-5047
E-MAIL ADDRESS *(Optional):* jazrael@azraellaw.net
ATTORNEY FOR *(Name):* PROGRESSIVE CHOICE INSURANCE COMPANY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CALIFORNIA 90012
BRANCH NAME: CENTRAL DISTRICT

COPY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

NOV 29 2010

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Glorietta Robinson

PLAINTIFF/PETITIONER: HAGOP BEKHLOYAN

DEFENDANT/RESPONDENT: PROGRESSIVE CHOICE INSURANCE COMPANY, et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* [X] **UNLIMITED CASE** (Amount demanded exceeds $25,000)    [ ] **LIMITED CASE** (Amount demanded is $25,000 or less) | BC442039/Judge Khan-Dept. 51 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: DECEMBER 10, 2010   Time: 8:45 a.m.   Dept.: 51   Div.:   Room:

Address of court *(if different from the address above):*

[ ] **Notice of Intent to Appear by Telephone,** by *(name):*

---

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X] This statement is submitted by party *(name):* PROGRESSIVE CHOICE INSURANCE COMPANY
   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in [X] complaint [ ] cross-complaint *(Describe, including causes of action):*
      (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Breach of Fiduciary Duties; (4) Fraud, Negligent misrepresentation and Concealment; (5) Negligence; (6) Intentional Infliction of Emotional Distress; (7) Violation of Business & Professions Code 17200; and (8) Violation of Consumer Legal Remedies Act

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Legal
Solutions
Plus

Cal. Rules of Court,
rules 3.720–3.730

CM-110

| PLAINTIFF/PETITIONER: HAGOP BEKHLOYAN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: PROGRESSIVE CHOICE INSURANCE COMPANY, et al. | BC442039/Judge Khan-Dep |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Defendant asserts that Plaintiff's claim was properly denied because plaintiff did not cooperate in defendant's investigation of the claim.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request  ☒ a jury trial  ☐  a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐  The trial has been set for *(date):*
   b. ☒  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
   TRIALS: 01/19/11, 01/31/11, 03/07/11, 3/14/11, 3/23/11, 4/5/11, 4/11/11, 5/2/11, 5/9/11 and 8/23/11
   VACATION: 12/24/10 thru 12/31/10

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☒  days *(specify number):* 5 Days
   b. ☐  hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial  ☒ by the attorney or party listed in the caption  ☐  by the following:
   a.  Attorney:
   b.  Firm:
   c.  Address:
   d.  Telephone number:
   e.  Fax number:
   f.  E-mail address:
   g.  Party represented:
   ☐  Additional representation is described in Attachment 8.

9. **Preference**
   ☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
   a.  Counsel  ☒ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
   b. ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
   c. ☐  The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: HAGOP BELALOYAN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: PROGRESSIVE CHOICE INSURANCE COMPANY, et al. | BC442039/Judge Khan-Dep |

**10. d.** The party or parties are willing to participate in *(check all that apply):*

    (1) [X] Mediation

    (2) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) [ ] Binding judicial arbitration

    (5) [ ] Binding private arbitration

    (6) [ ] Neutral case evaluation

    (7) [ ] Other *(specify):*

    e. [ ] This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. [ ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

    [ ] The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

    a. [X] Insurance carrier, if any, for party filing this statement *(name):* Not Applicable

    b. Reservation of rights: [ ] Yes [ ] No

    c. [ ] Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    [ ] Bankruptcy     [ ] Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

    a. [ ] There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

        [ ] Additional cases are described in Attachment 14a.

    b. [ ] A motion to [ ] consolidate [ ] coordinate will be filed by *(name party):*

**15. Bifurcation**

    [ ] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

    [X] The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):* Defendant's motion to compel certain discovery is pending. Defendant contemplates filing a Motion for Summary Judgment or Summary Adjudication.

| | |
|---|---|
| PLAINTIFF/PETITIONER: HAGOP BEKHLOYAN | CASE NUMBER: |
| DEFENDANT/RESPONDENT: PROGRESSIVE CHOICE INSURANCE COMPANY, et al. | BC442039/Judge Khan-Dep |

**17. Discovery**

  a. ☐ The party or parties have completed all discovery.

  b. ☒ The following discovery will be completed by the date specified (describe all anticipated discovery):

| Party | Description | Date |
|---|---|---|
| Defendant PROGRESSIVE | Further Written Discovery to BEKHLOYAN | February 2011 |
| Defendant PROGRESSIVE | Deposition of BEKHLOYAN | March 2011 |
| Defendant PROGRESSIVE | Expert Discovery | Per Code |

  c. ☐ The following discovery issues are anticipated (specify):

**18. Economic Litigation**

  a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

  b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other issues**

  ☐ The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**

  a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain): Defense counsel has not yet been contacted by plaintiff's counsel.

  b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21.** Total number of pages attached (if any): – 0 –

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 24, 2010

| | |
|---|---|
| JOHN S. CURTIS (for) JULIA AZRAEL | ▶ _[signature]_ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ▶ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

# PROOF OF SERVICE

STATE OF CALIFORNIA              )
                                )   ss.:
COUNTY OF LOS ANGELES           )

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

     On November 24, 2010, I served on interested parties in said action the within:

## CASE MANAGEMENT STATEMENT

__X__       **BY MAIL:**  By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

_____      **BY PDF VIA EMAIL:**  I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

_____      **BY OVERNIGHT COURIER:**  I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

_____      **BY FAX:**  I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

_____      **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

__X__     **[State]**     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____     **[Federal]**     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Executed on November 24, 2010, at North Hollywood, California.

CHRISTINE M. TINKER
(Type or print name)

(Signature)

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No.  BC442039

1

2   Gary Rand, Esq.                                    Attorneys for Plaintiff
     Suzanne E. Rand-Lewis, Esq.
3   Gary Rand & Suzanne E. Rand-Lewis
     Professional Law Corporations
4   5990 Sepulveda Blvd., Ste 330
     Sherman Oaks, CA 91411-2523
5
     (818) 779-1720
6   (818) 779-1730 - FAX
     randandlewislaw@gmail.com - EMAIL
7
     Huong V. Vu, Esq.                                 [Courtesy Copy]
8   PROGRESSIVE CHOICE INSURANCE
     COMPANY
9   10940 White Rock Road
     Rancho Cordova, California  95670
10
     (916) 864-6030
11  (916) 904-5563 - FAX
     hvu2@progressive.com - EMAIL
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 'B'**

Julia Azrael (Bar No. 109049)
John S. Curtis (Bar No. 50350)
Adam S. Feldman (Bar No. 262167)
**LAW OFFICES OF JULIA AZRAEL**
5200 Lankershim Boulevard, Suite 850
North Hollywood, California 91601
Telephone:  (818) 766-5177
Facsimile:  (818) 766-5047

Attorneys for Defendant
PROGRESSIVE CHOICE INSURANCE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| HAGOP BEKHLOYAN, | ) CASE NO. BC442039 |
| Plaintiff, | ) Case Assigned to Abraham Kahn – Dept. 51 |
| vs. | ) [Complaint Filed:  July 22, 2010] |
| PROGRESSIVE CHOICE INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE DIRECT HOLDING, INC., DOES 1 through 100; | ) **REQUESTS FOR ADMISSION FROM DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY TO PLAINTIFF HAGOP BEKHLOYAN** |
| Defendants. | Discovery Cutoff:   None<br>Motion Cutoff:      None<br>Trial Date:           None |

PROPOUNDING PARTY:        Defendant PROGRESSIVE CHOICE INSURANCE

COMPANY

RESPONDING PARTY:        Plaintiff HAGOP BEKHLOYAN

SET NO.:                ONE

Defendant PROGRESSIVE CHOICE INSURANCE COMPANY ("Progressive")

requests that Plaintiff HAGOP BEKHLOYAN answer the following Requests for

1 │ Admission (Set One) under oath within 30 days, as required by *Code of Civil Procedure* §§

2 │ 2033.010.

3

4 │ **<u>REQUEST FOR ADMISSION NO. 1:</u>**

5 │     The total monetary damages you seek on all causes of action does not exceed

6 │ $75,000, according to the prayer of your complaint at page 23:4-15, which states

7 │ "WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them,

8 │ according to proof as follows:  1. For general damages; 2. For special damages; 3. Interest

9 │ on compensatory damages at the legal rate from the date of injury or pursuant to <u>Code of</u>

10 │ <u>Civil Procedure</u> § 3291;  4.  For other compensatory damages, emotional distress and other

11 │ economic and non-economic losses; 5.  Punitive and exemplary damages; 6.  Attorneys fees;

12 │ 7.  Costs and expenses of suit herein, and 8.  For any other just and proper relief as allowed

13 │ by statute and prevailing law."

14 │ Dated: August 12, 2010                    LAW OFFICES OF JULIA AZRAEL

15

16 │                                  By:

17 │                                  JULIA AZRAEL
                                 Attorneys for Defendants PROGRESSIVE

18 │                                  CHOICE INSURANCE COMPANY
                                 INC.

19

20

21

22

23

24

25

26

27

28

REQUESTS FOR ADMISSION TO PLAINTIFF

# PROOF OF SERVICE

STATE OF CALIFORNIA     )
                        )    ss.:
COUNTY OF LOS ANGELES   )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

     On August 12, 2010, I served on interested parties in said action the within:
**REQUESTS FOR ADMISSION FROM DEFENDANT PROGRESSIVE CHOICE INSURANCE COMPANY TO PLAINTIFF HAGOP BEKHLOYAN**

**__X__**      **BY MAIL:** By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

**_____**      **BY PDF VIA EMAIL:** I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

**_____**      **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

**_____**      **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

**_____**      **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

**__X__**      **[State]**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**_____**      **[Federal]**      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 12, 2010, at North Hollywood, California.

_____        _____
     Kristen Elze                              (Signature)
  (Type or print name)

REQUESTS FOR ADMISSION TO PLAINTIFF

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
Case No.  BC442039

Gary Rand & Suzanne E. Rand-Lewis          Attorneys for Plaintiff
Professional Law Corporations
5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523
Phone: (818) 779-1720
Fax: (818) 779-1730
randandlewislaw@gmail.com  - EMAIL

REQUESTS FOR ADMISSION TO  PLAINTIFF

**EXHIBIT 'C'**

1 | Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
2 | Suzanne E. Rand-Lewis, Esq., State Bar No. 126219
5990 Sepulveda Boulevard, Suite 330
3 | Sherman Oaks, California 91411-2523
(818) 779-1720
4

REC'D SEP 2 0 2010

5 | Attorney for Plaintiff, Hagop Bekhloyan

6

7

8 |         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |         FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11 | HAGOP BEKHLOYAN,                     CASE NO. BC442039

12 |        Plaintiff;                    Assigned for all purposes to
                                         Hon. Abraham Khan
13 | vs.                                 Department 51

14 | PROGRESSIVE CHOICE                   **PLAINTIFF'S RESPONSE TO**
INSURANCE COMPANY,                   **DEFENDANTS REQUEST FOR**
15 | PROGRESSIVE CASUALTY                 **ADMISSION**
INSURANCE COMPANY,
16 | PROGRESSIVE DIRECT HOLDING,          Date:   September 27, 2010
INC.,                                Time:  8:30 a.m.
17 | and DOES 1 through 100;              Dept.: 51

18 |        Defendants.                   Complaint Filed:   July 22, 2010
                                         Trial Date:        None Set
19

20

21 | Propounding Party   :   Defendant PROGRESSIVE CHOICE INSURANCE COMPANY

22 | Responding Party    :   Plaintiff HAGOP BEKHLOYAN

23 | Set No.             :   One

24 |        TO THE DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

25 |        Pursuant to California Code of Civil Procedure, §2033, Plaintiff HAGOP BEKHLOYAN

26 | (hereinafter referred to as BEKHLOYAN), for himself, and none other, hereby responds to the

27 | above-described discovery propounded by Defendant PROGRESSIVE CHOICE INSURANCE

28 | COMPANY (hereinafter referred to as Defendants).

---

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS REQUEST FOR ADMISSION**

1    While these responses are based upon diligent exploration and investigation by

2    BEKHLOYAN and his counsel, they reflect the current state of BEKHLOYAN'S knowledge

3    regarding the matters about which inquiry is made.  These responses are not intended to be final

4    and/or conclusive.

5    The information and/or documentation contained herein remains preliminary and, in making

6    these responses, BEKHLOYAN reserves the right to amend, supplement, delete from, alter, modify,

7    or otherwise change any response herein as further discovery may make appropriate, when

8    BEKHLOYAN ascertains all relevant facts, or in the event of error, inadvertent mistake or omission.

9    In making these responses, BEKHLOYAN fully reserves the right to introduce at trial any

10   and all subsequently discovered facts and all information from documents heretofore or hereafter

11   produced by any of the parties in this action, or by any third person, which support or tend to support

12   BEKHLOYAN'S contentions at the time of trial , or in support of or in opposition to any motion in

13   this matter.

14   To the extent that BEKHLOYAN herein identifies certain information or documents or

15   delineates any facts, or otherwise, BEKHLOYAN does so without prejudice to establishing at a later

16   date any additional facts which may be contained within or discovered subsequent to these responses,

17   or as a result of any additional investigation or discovery.   Without waving said objections,

18   BEKHLOYAN responds as follows:

19   Request No. 1:

20   Objection. This is not within the scope of CCP § 2033, is moot, not relevant to the subject

21   matter of this lawsuit and not calculated to lead to the discovery of admissible evidence. *Deaile v.*

22   *General Telephone*, 40 Cal.App.3d 341 (1974).

23   DATED: September 14, 2010

24                                   GARY RAND & SUZANNE E. RAND-LEWIS
                                     PROFESSIONAL LAW CORPORATIONS
25

26                                   BY: _____

27                                   SUZANNE E. RAND-LEWIS
                                     Attorney for Plaintiff
28                                   Hagop Bekhloyan

**PLAINTIFF'S RESPONSE TO DEFENDANTS REQUEST FOR ADMISSION**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is located in the county where the mailing described below took place. I am over the age of 18 years and am not a party to this action.

On September 16, 2010, I served the following document(s) entitled: **PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUEST FOR ADMISSION** on all interested parties in this action as follows:

Julia Azrael, Esq.                                     Attorney for Defendant,
Law Offices of Julia Azrael                            Progressive Choice Insurance Company
5200 Lankershim Boulevard
Suite 850
North Hollywood, California 91601
Fax: (818) 766-5047

☒   **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to OVERNITE EXPRESS for delivery to the above address(es).

**BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee(s).

☒   [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 16, 2010, at Sherman Oaks, California.

Veronica Campos

PROOF OF SERVICE

**EXHIBIT 'D'**

1 | Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
2 | Suzanne E. Rand-Lewis, Esq., State Bar No. 126219
5990 Sepulveda Boulevard, Suite 330
3 | Sherman Oaks, California 91411-2523
(818) 779-1720
4

RECD DEC 2 3 2010

5 | Attorney for Plaintiff, Hagop Bekhloyan

6

7

8 |          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11 | HAGOP BEKHLOYAN,                    CASE NO. BC442039

12 |          Plaintiff;                Assigned for all purposes to
                                         Hon. Abraham Khan
13 | vs.                                Department 51

14 | PROGRESSIVE CHOICE                 **PLAINTIFF'S SUPPLEMENTAL**
     INSURANCE COMPANY,                 **RESPONSE TO DEFENDANTS REQUEST**
15 | PROGRESSIVE CASUALTY               **FOR ADMISSION**
     INSURANCE COMPANY,
16 | PROGRESSIVE DIRECT HOLDING,
     INC.,
17 | and DOES 1 through 100;

18 |          Defendants.

19 | _____

20
     Propounding Party    :    Defendant PROGRESSIVE CHOICE INSURANCE COMPANY
21
     Responding Party     :    Plaintiff HAGOP BEKHLOYAN
22
     Set No.              :    One
23
24 |          TO THE DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

25 |          Pursuant to California <u>Code of Civil Procedure</u>, §2033, Plaintiff HAGOP BEKHLOYAN

26 | (hereinafter referred to as BEKHLOYAN), for himself, and none other, hereby provides his

27 | supplemental response to the above-described discovery propounded by Defendant PROGRESSIVE

28 | CHOICE INSURANCE COMPANY (hereinafter referred to as Defendants).

1

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS REQUEST FOR
ADMISSION**

1

2      While these responses are based upon diligent exploration and investigation by

3  BEKHLOYAN and his counsel, they reflect the current state of BEKHLOYAN'S knowledge

4  regarding the matters about which inquiry is made.  These responses are not intended to be final

5  and/or conclusive.

6      The information and/or documentation contained herein remains preliminary and, in making

7  these responses, BEKHLOYAN reserves the right to amend, supplement, delete from, alter, modify,

8  or otherwise change any response herein as further discovery may make appropriate, when

9  BEKHLOYAN ascertains all relevant facts, or in the event of error, inadvertent mistake or omission.

10      In making these responses, BEKHLOYAN fully reserves the right to introduce at trial any

11  and all subsequently discovered facts and all information from documents heretofore or hereafter

12  produced by any of the parties in this action, or by any third person, which support or tend to support

13  BEKHLOYAN'S contentions at the time of trial , or in support of or in opposition to any motion in

14  this matter.

15      To the extent that BEKHLOYAN herein identifies certain information or documents or

16  delineates any facts, or otherwise, BEKHLOYAN does so without prejudice to establishing at a later

17  date any additional facts which may be contained within or discovered subsequent to these responses,

18  or as a result of any additional investigation or discovery.   Without waving said objections,

19  BEKHLOYAN responds as follows:

20  Request No. 1:

21      Deny.

22

DATED: December 21, 2010

23                                          GARY RAND & SUZANNE E. RAND-LEWIS
                                           PROFESSIONAL LAW CORPORATIONS
24

25                                     BY: _____
26                                          SUZANNE E. RAND-LEWIS
                                           Attorney for Plaintiff
27                                          Hagop Bekhloyan

28

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS REQUEST FOR
ADMISSION**

VERIFICATION ( CCP 446 AND 2015.5 )

STATE OF CALIFORNIA, COUNTY OF

I have read the foregoing *Plaintiff Hagop Bekhloyan's Supplemental Responses to Defendants Request for Admission* and know its contents.

☐ CHECK APPLICABLE PARAGRAPHS

☑ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

☐ I am ☐ an officer ☐ a partner _____ ☐ a _____ of

_____
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

☐ I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on (date) *12/21/10*, at *Burbank*, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Hagop Bekhloyan*
Type or Print Name

_____
Signature

PROOF OF SERVICE
CCP 1013a(3) Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of _____, State of California. I am over the age of 18 and not a party to the within action; my business address is _____

_____

On (date)_____, **I served the foregoing document described as _____
_____ on _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ BY MAIL
☐ *I deposited such envelope in the mail at_____, California.
The envelope was mailed with postage thereon fully prepaid.

☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid at _____, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on (date)_____, at _____, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Type or Print Name

_____
Signature

* (BY MAIL, SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX OR BAG)
**FOR PERSONAL SERVICE, SIGNATURE MUST BE THAT OF MESSENGER)

967 (R.1/98)

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

3

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business
address is 5990 Sepulveda Boulevard, Suite 330, Sherman Oaks, California 91411-2523, which is

4

located in the county where the mailing described below took place. I am over the age of 18 years
and am not a party to this action.

5

On December 21, 2010, I served the following document(s) entitled: **PLAINTIFF'S**

6

**SUPPLEMENTAL RESPONSE TO DEFENDANTS REQUEST FOR ADMISSION** on all
interested parties in this action as follows:

7

8

Julia Azrael, Esq.                                      Attorney for Defendant,
Law Offices of Julia Azrael                             Progressive Choice Insurance Company

9

5200 Lankershim Boulevard, Suite 850
North Hollywood, California 91601

10

⊠    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and

11

placing it for collection and mailing following ordinary business practices. I am readily
familiar with the firm's practice of collection and processing correspondence, pleadings, and

12

other matters for mailing with the United States Postal Service. The correspondence,
pleadings and other matters are deposited with the United States Postal Service with postage

13

thereon fully prepaid in Sherman Oaks, California, on the same day in the ordinary course
of business. I am aware that on motion of the party served, service is presumed invalid if

14

the postal cancellation date or postage meter date is more than one day after date of deposit
for mailing in affidavit.

15

**BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered

16

to OVERNITE EXPRESS for delivery to the above address(es).

17

**BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the
facsimile numbers shown above.

18

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices

19

of the addressee(s).

⊠    [State]  I declare under penalty of perjury under the laws of the State of California that the

20

foregoing is true and correct.

21

[Federal]  I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

22

Executed on December 21, 2010, at Sherman Oaks, California.

23

24

Veronica Campos

25

26

27

28

1

**PROOF OF SERVICE**

STATE OF CALIFORNIA            )
                                         )   ss.:
COUNTY OF LOS ANGELES     )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5200 Lankershim Boulevard, Suite 850, North Hollywood, California 91601.

    On January 20, 2011, I served on interested parties in said action the within:

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)**

**_X_**      **BY MAIL:**  By placing true copies thereof in sealed envelope(s) addressed as stated on the attached mailing list, and placing it for collection and mailing following ordinary business practices.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

_____      **BY PDF VIA EMAIL:**  I caused the above-referenced document(s) to be sent via email in pdf format to the attached address(es).

_____      **BY OVERNIGHT COURIER:**  I caused the above-referenced document(s) to be delivered to FedEx for delivery to the attached address(es).

_____      **BY FAX:**  I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

_____      **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

_____      **[State]**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**_X_**      **[Federal]**    I declare that I am employed in the office of a member of bar of this court at whose direction the service was made.

    Executed on January 20, 2011, at North Hollywood, California.

CHRISTINE M. TINKER
(Type or print name)

_Christine M. Tinker_
(Signature)

- 5 -

Progressive's Notice of Removal of Action Under 28 U.S.C. § 1441(b)
(Diversity)

*Bekhloyan v. Progressive Choice Insurance Company, et. al.*
**Case No.**

Gary Rand, Esq.                                    Attorneys for Plaintiff
Suzanne E. Rand-Lewis, Esq.
Gary Rand & Suzanne E. Rand-Lewis
Professional Law Corporations
5990 Sepulveda Blvd., Ste 330
Sherman Oaks, CA 91411-2523

(818) 779-1720
(818) 779-1730 - FAX
randandlewislaw@gmail.com - EMAIL

Huong V. Vu, Esq.                                  [Courtesy Copy]
PROGRESSIVE CHOICE INSURANCE
COMPANY
10940 White Rock Road
Rancho Cordova, California  95670

(916) 864-6030
(916) 904-5563 - FAX
hvu2@progressive.com - EMAIL

Progressive's Notice of Removal of Action Under 28 U.S.C. § 1441(b)
(Diversity)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV11- 590 DMG (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| HAGOP BEKHLOYAN | PROGRESSIVE CHOICE INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE DIRECT HOLDING, INC., DOES 1 through 100 |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Los Angeles | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Suzanne E. Rand-Lewis, Esq. Gary Rand & Suzanne E. Rand-Lewis 5990 Sepulveda Boulevard, Suite 330 Sherman Oaks, California 91411-2523 (818) 779-1720; FAX (818) 779-1730 | Attorneys (If Known) Julia Azrael, Esq./John S. Curtis, Esq. LAW OFFICES OF JULIA AZRAEL 5200 Lankershim Boulevard, Suite 850 North Hollywood, California 91601 (818) 766-5177; FAX (818) 766-5047 |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☑ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** in excess of $75,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiffs are asserting causes of action for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Injunctive Relief and Restitution. There is diversity jurisdiction pursuant to 28 USC Section 1332.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: **CV 11 00590**

CV-71 (07/05)   CIVIL COVER SHEET   Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

    Los Angeles County

List the California County, or State if other than California, in which **EACH** named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

    Ohio

**List the California County,** or State if other than California, in which **EACH** claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

    Los Angeles County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _/s/ _____ Date _January 20, 2011_

    **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |